Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:    (973) 596-0545

Daniel M. Petrocelli (admitted *pro hac vice*)
Brett J. Williamson (admitted *pro hac vice*)
Jeffrey A. Barker (admitted *pro hac vice*)
David S. Almeling (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:    (212) 326-2061

*Attorneys for Plaintiffs Par Pharmaceutical,*
*Inc. and Par Sterile Products, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAR PHARMACEUTICAL, INC. and PAR STERILE PRODUCTS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI, <br><br> Defendants. | Civil Action No.  3:17-cv-06115-MAS-DEA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.     STATEMENT OF FACTS ....................................................................3

III.    LEGAL STANDARD ...........................................................................4

IV.     PAR HAS PROPERLY PLEADED ITS STATUTORY AND TORT
        CLAIMS (COUNTS II, III, VIII, IX, X, AND XI).................................5

        A.      The Economic Loss Doctrine Is Inapplicable .......................5

                1.      Where The Validity Of A Contract Is Disputed, A
                        Plaintiff Can Plead Separate Contract And Tort Causes
                        Of Action........................................................................5

                2.      Par's Statutory Claims Under The New Jersey Trade
                        Secret Act (Count II) Give Rise To A Duty Independent
                        Of Par's Contractual Claims ...........................................7

                3.      Par's Breach Of Duty Claims (Counts VIII, IX, and X)
                        Give Rise To A Duty Independent Of Par's Contractual
                        Claims .............................................................................9

        B.      Hinchen And Jenkins Owed And Continue To Owe Duties Of
                Loyalty And Fiduciary Duties, Including Duties To Maintain
                Confidential Information (Counts VIII and IX)...................14

        C.      Defendants' Egregious Conduct Constitutes Tortious
                Interference With Contract (Count XI)................................17

V.      PAR HAS PROPERLY PLEADED BREACH OF CONTRACT
        (COUNTS V, VI, AND VII) ................................................................20

        A.      Par's Complaint Adequately Pleads Breach Of Contract Based
                On Defendants' Breach Of The Non-Disclosure Provisions
                Alone ..................................................................................20

        B.      Par's Complaint Adequately Pleads Solicitation By Hinchen
                and Jenkins In Breach Of Contract ....................................22

        C.      Par's Complaint Adequately Pleads Solicitation By Rutkowski
                In Breach Of Contract ........................................................23

VI.     CONCLUSION...................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................4

*Auxton Computer Enters., Inc. v. Parker*,
174 N.J. Super. 418 (N.J. Super. Ct. App. Div. 1980) ......................................12

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
157 F. Supp. 3d 407 (D.N.J. 2016)...................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................4

*Biovail Corp. Intern. v. Hoechst Aktiengesellschaft*,
49 F. Supp. 2d 750 (D.N.J. 1999)...................................................................24

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
226 F. Supp. 2d. 557 (D.N.J. 2002)....................................................................6

*Cameco, Inc. v. Gedicke*,
157 N.J. 504 (1999) ................................................................................12

*Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.*,
135 N.J. 182 (1994) ................................................................................11

*Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*,
21 F. Supp. 3d 620 (W.D. Va. 2014)................................................................21

*Conley v. Gibson*,
355 U.S. 41 (1957)................................................................................4

*Ethypharm S.A. France v. Abbot Labs.*,
707 F.3d 223 (3rd Cir. 2013) ................................................................................4

*Florian Greenhouse, Inc. v. Cardinal IG Corp.*,
11 F. Supp. 2d. 521 (D.N.J. 1998)................................................................6, 8

*G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*,
18 F. Supp. 3d 583 (D.N.J. 2014)........................................................ 7, 8, 9, 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Guardian Life Ins. Co. of Am. v. Andaros*,
No. 07-cv-05732, 2008 WL 11338650 (C.D. Cal. Nov. 7, 2008).....................20

*Hedges v. United States*,
404 F.3d 744 (3d Cir. 2005) ................................................................................4

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
No. 11-cv-1857, 2012 WL 5554543 (D.N.J. Nov. 14, 2012)...........................13

*IDT Corp. v. Unlimited Recharge, Inc.*,
No. 11-cv-4992, 2012 WL 4050298 (D.N.J. Sept. 13, 2012) .......................6, 15

*Innes v. Marzano-Lesnevich*,
224 N.J. 584 (2016) .........................................................................................15

*James v. Bessemer Processing, Inc.*,
155 N.J. 279 (1998) .........................................................................................11

*Janis v. Nelson*,
No. 09-5019, 2009 WL 4505935 (D.S.D. Nov. 24, 2009) ................................21

*Johnson v. City of Shelby, Miss.*,
135 S.Ct. 346 (2014).........................................................................................21

*Kaye v. Rosefielde*,
223 N.J. 218 (2015) .........................................................................................12

*Lamonte Burns & Co v. Walters*,
167 N.J. 285 (2001) ............................................................................ 12, 16, 17

*McGrogan v. Till*,
167 N.J. 414 (2001) .........................................................................................11

*P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal*
*Superstore, L.L.C.*,
No. 04-cv-4554, 2007 WL 708978 (D.N.J. Mar. 5, 2007)................................15

*Pac. Coast Steel v. Leany*,
No. 2:09-cv-2190, 2012 WL 1098348 (D. Nev. Mar. 30, 2012)........................13

*Sahoury v. Meredith Corp.*,
No. 11-cv-5180, 2012 WL 3185964 (D.N.J. Aug. 2, 2012)................................6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Saltiel v. GSI Consultants,*
 170 N.J. 297 (2002) ....................................................................... 7, 9, 10, 11

*SRC Constr. Corp. v. Atl. City Hous. Auth.,*
 935 F. Supp. 2d 796 (D.N.J. 2013) ....................................................9

*State Capital Title & Abstract Co., v. Business Services, LLC,*
 646 F. Supp. 2d 668 (D.N.J. 2009) ...................................................13

*Sun Dial Corp. v. Rideout,*
 16 N.J. 252 (1954) ............................................................................15

*Trico Equipment, Inc. v. Manor,*
 No. 08-cv-5561, 2011 WL 705703 (D.N.J. Feb. 22, 2011) ..............13

*Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.,*
 832 F. Supp. 790 (D.N.J. 1993) .......................................................21

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,*
 210 F. Supp. 2d 552 (D.N.J. 2002) ...................................................24

*Walker Rogge, Inc. v. Chelsea Title & Gauar. Co.,*
 116 N.J. 517 (1989) ..........................................................................10

*Whitfield v. Kern,*
 122 N.J. Eq. 332 (1937) ....................................................................11

*Wolfe Tory Medical, Inc. v. C.R. Bard, Inc.,*
 No. 2:07-cv-378, 2008 WL 541346 (D. Utah Mar. 16, 2012) ............8

## Statutes

N.J.S.A. 56:15-1..................................................................................7

N.J.S.A. 56:15-2..................................................................................8

N.J.S.A. 56:15-3..................................................................................8

N.J.S.A. 56:15-4(a) .............................................................................8

N.J.S.A. 56:15-4(b)..............................................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

N.J.S.A. 56:15-9(a)-(b) ................................................................................9

**Other Authorities**

5 Wright & Miller, Fed. Prac. & Proc. § 1219 (3rd ed. 2017)................................21

Plaintiffs Par Pharmaceutical, Inc. ("Par Pharmaceutical") and Par Sterile Products, LLC ("Par Sterile") (collectively, "Par") respectfully submit this Brief in Opposition to Defendants QuVa Pharma, Inc. ("QuVa"), Stuart Hinchen, Peter Jenkins, and Mike Rutkowski's (collectively, "Defendants") Partial Motion to Dismiss ("Defendants' Motion") (Dkt. 47).

## I.   INTRODUCTION

This is a blatant case of trade secrets theft.  Defendants Hinchen, Jenkins, Rutkowski, and QuVa deliberately stole Par's confidential and trade secret information and poached key Par Sterile employees entrusted with such information to unfairly compete with Par, in particular by using Par's trade secrets to develop a copycat product to Par's life-saving Vasostrict® drug.  Defendants' actions, in breach of the trust that Par afforded to these officers and employees, give rise to numerous causes of action.  Now Defendants complain that there are too many charges against them, pleading the Court to dismiss some in its favor.  But Defendants alone are responsible for the number of claims in Par's Complaint, and the facts (as pleaded in great detail) properly allege that Defendants are liable under each of those claims.

As detailed below, the Court should deny Defendants' Motion as to each of its proposed grounds.  At the outset, the Court may quickly dispose of all of Defendants' arguments under the economic loss doctrine because, at a minimum,

Par is entitled to plead alternate theories of breach of contract and tort. This is particularly true given that Defendants spend six pages of their Motion denying the applicability of the contracts in question. If Defendants' malfeasance is not governed by contract, it is certainly prohibited under New Jersey tort and statutory laws.

In addition, Defendants' economic loss doctrine arguments are meritless because Par's statutory and tort claims are grounded in Defendants' duties that are independent of the contract. Defendants Hinchen, Jenkins, and Rutkowski were each officers and employees of Par Sterile, entrusted with Par's confidential, proprietary, and trade secret information. As leaders at Par Sterile, Defendants owed multiple duties, including: (1) statutory duties under the New Jersey Trade Secrets Act that are expressly distinct from common-law claims; (2) fiduciary duties as officers of Par Sterile; (3) duties of loyalty as employees of Par Sterile; (4) duties of confidence as trusted recipients of Par's confidential and trade secret information; and (5) common duties to act in accordance with law and accepted standards of morality. Under New Jersey law, each of these duties gives rise to a cause of action independent from any employment contract or other agreement between the parties.

Finally, Defendants misapply the law in attempting to dismiss Par's breach of contract theories. First, Federal Rule of Civil Procedure 12(b)(6) allows a party

to seek dismissal only for "failure to state a claim," not failure to state a theory, and Defendants acknowledge that Par has stated a claim for breach of contract under the Parties' nondisclosure clauses.  Moreover, Defendants' arguments are directed to the factual and legal substance of Par's claims, and not whether Par has stated a plausible claim for relief.  A motion to dismiss is not the proper vehicle for resolving these disputes, especially given the wealth of evidence demonstrating that Defendants have, in fact, breached those provisions.

## II.   STATEMENT OF FACTS[1]

On August 14, 2017, Par filed this action against Defendants based on their brazen and unlawful conduct.   Par's allegations are explained in detail in its Complaint.  Dkt. No. 1.  On August 28, 2017, Par filed a motion seeking expedited discovery in anticipation of filing a Preliminary Injunction against QuVa.  Dkt. No. 12.   On October 4, 2017, the Court ordered expedited discovery and set a schedule for briefing on Par's forthcoming motion for preliminary injunction.  Dkt. No. 43.

On October 13, 2017, Defendants filed the instant Partial Motion to Dismiss. Dkt. No. 47.   Defendants also filed an Answer.  Dkt. No. 48.  Defendants' Answer admits many of the allegations in Plaintiff's Complaint, including allegations that

---

[1] As part of the expedited discovery process described below, Par has uncovered substantial evidence in support of its claims for relief that goes far beyond the facts alleged in the Complaint, which were based solely on Par's investigation of its own documents and systems.  But since this is a motion to dismiss portions of the existing Complaint, Par has limited its summary of the facts to those alleged in that pleading, and relies solely on those allegations in opposing the motion to dismiss.

Rutkowski exchanged emails with QuVa employees while still employed at Par Sterile.  *See* Answer at ¶¶ 42-47 (acknowledging the numerous exchanges of emails but denying Par's descriptions of those communications).  As explained in Par's Complaint, QuVa and Rutkowski conspired in those emails to steal Par's trade secret and confidential information and poach its key employees.  Compl. at ¶¶ 41-47.  Shortly before resigning from Par Sterile and joining QuVa, Rutkowski also downloaded numerous Par confidential and trade secret documents to a one-terabyte hard drive.  *Id*. at ¶ 48.

## III.  LEGAL STANDARD

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds on which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  The Court must accept as true all of a plaintiff's well-pled factual allegations and the reasonable inferences that can be drawn from those facts.  *Ethypharm S.A. France v. Abbot Labs.*, 707 F.3d 223, 231 n.14 (3rd Cir. 2013).  If the facts alleged in the complaint recite a plausible claim of relief, a motion to dismiss must be denied.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

## IV.  PAR HAS PROPERLY PLEADED ITS STATUTORY AND TORT CLAIMS (COUNTS II, III, VIII, IX, X, AND XI)

The Court should deny Defendants' motion to dismiss as to Par's statutory and tort claims for three reasons explained in detail below.  First, the economic loss doctrine does not bar a plaintiff from pleading alternate theories of breach of contract and tort claims.  Par's statutory New Jersey Trade Secret Act claims are expressly and implicitly distinct from any contract claim, and Par's fiduciary duty and duty of loyalty claims arise from Defendants' positions as officers and employees of Par Sterile, independent of any contract between the parties.  Second, Par adequately pleads breach of fiduciary duty and duty of loyalty.  Defendants breached their duty of loyalty and fiduciary duties while still employed with Par Sterile, and they further breached them based on their continuing obligation to preserve the confidentiality of Par's trade secret and confidential information even after employment.   Third, Par has pleaded a *prima facie* case of tortious interference with contract based at least on the actions of QuVa and Rutkowski in conspiring to steal Par's trade secret and confidential information and poach Par's key employees.

### A.    The Economic Loss Doctrine Is Inapplicable

#### 1.    Where The Validity Of A Contract Is Disputed, A Plaintiff Can Plead Separate Contract And Tort Causes Of Action

The Court should deny all portions of Defendants' motion to dismiss grounded on the economic loss doctrine.  The economic loss doctrine bars recovery

of economic losses in tort where the entitlement to losses only flows from contract. *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d. 557, 562 (D.N.J. 2002). For the economic loss doctrine to apply, there must exist a valid contract. Defendants deny the contracts are valid by asserting in their 22nd affirmative defense that Par's actions "render[] the agreements invalid and unenforceable under the applicable state law." Dkt. No. 48 at 52. Indeed, Defendants in this very Motion deny that the contracts govern Defendants' improper solicitation of Par Sterile employees. Mot. at 15. Because there is a dispute about the validity of the contracts, Par must at a minimum be permitted to proceed with its non-contract claims as an alternate basis for relief. This is precisely what happened in *IDT Corp. v. Unlimited Recharge, Inc.*, in which this Court denied a motion to dismiss a trade secret claim pleaded with a breach of contract claim where the validity of the contract was disputed, finding such early dismissal "would be prejudicial to Plaintiffs if the contract was found invalid." No. 11-cv-4992, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012). Numerous cases agree with this general principle. *See, e.g., Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 528 (D.N.J. 1998) (denying dismissal of fraud claims where "if defendant is successful with its defense that it had no contract with [the plaintiff] as claimed in its answer, the plaintiff may still recover under the alternate theories"); *Sahoury v. Meredith Corp.*, No. 11-cv-5180, 2012

WL 3185964, at *8 (D.N.J. Aug. 2, 2012) (denying dismissal of tort and fraud claims where application of economic loss doctrine "assumes . . . a valid and binding contract"). Accordingly, all of Defendants' arguments grounded on the economic loss doctrine are premature, and should be rejected, and Defendants' motion to dismiss Counts II, III, VIII, IX, and X should be denied on this ground alone.

2. **Par's Statutory Claims Under The New Jersey Trade Secret Act (Count II) Give Rise To A Duty Independent Of Par's Contractual Claims**

In addition, the economic loss doctrine does not apply here for the independent reason that Defendants breached duties "owed to the plaintiff that is independent of the duties that arose under the contract." *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 589 (D.N.J. 2014) (quoting *Saltiel v. GSI Consultants*, 170 N.J. 297, 317 (2002)). Here, the statutory New Jersey Trade Secret Act ("NJTSA") sets forth additional duties and remedies, providing a cause of action for misappropriation of trade secrets. N.J.S.A. 56:15-1 et seq. Cases interpreting New Jersey law have found that analogous statutory claims entitle a party to relief independent of its contractual claims. In *G & F Graphic Servs.*, for example, the court held that the statutory Consumer Fraud Act ("CFA") claims were not barred by the economic loss doctrine. 18 F. Supp. 3d at 589. The Court noted that the CFA provided special tort remedies, and therefore

that applying the economic loss doctrine to foreclose such statutory claims would thwart legislative intent.  "To hold that this statutory claim is subsumed by plaintiff's breach of contract cause of action would be contrary to legislative intent and would preclude consumer fraud claims in far too many circumstances." *Id.* (citing *Florian*, 11 F. Supp. 2d at 528).

The NJTSA, which came into effect in 2012, is analogous and should be treated similarly to the CFA.  Like the CFA, the NJTSA expressly provides special remedies, including injunctive relief (N.J.S.A. 56:15-3), recovery of both actual loss and unjust enrichment damages (§ 56:15-4(a)), and double damages for willful and malicious misappropriation (§ 56:15-4(b)).  Moreover, given that the vast majority of trade secret misappropriation claims involve contractual non-disclosure agreements, applying the economic loss doctrine to such claims would reduce the NJTSA to a virtual nullity, contrary to legislative intent.  *Compare Florian*, *supra*, 11 F. Supp. 2d at 528.  Indeed, the NJTSA defines trade secret misappropriation as including the "breach of an express or implied duty" to preserve the trade secret. N.J.S.A. 56:15-2 (emphasis added).  An express duty to preserve a trade secret would most often arise in contract.  Thus, other jurisdictions considering this issue have concluded that statutory trade secret claims are not subsumed by the economic loss doctrine.  *See, e.g.*, *Wolfe Tory Medical, Inc. v. C.R. Bard, Inc.*, No. 2:07-cv-378, 2008 WL 541346, at *3 (D. Utah Mar. 16, 2012) (holding that claims

under the Utah Uniform Trade Secrets Act were not precluded by the economic loss doctrine).

If there is any doubt, the NJTSA states in unequivocal terms that the rights under the NJTSA are cumulative of other rights and remedies:

> a. The rights, remedies and prohibitions provided under this act ***are in addition to and cumulative of*** any other right, remedy or prohibition provided under the common law or statutory law of this State and nothing contained herein shall be construed to deny, abrogate or impair any common law or statutory right, remedy or prohibition except as expressly provided in subsection b. of this section.

> b. This act shall supersede conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.

N.J.S.A. 56:15-9(a)-(b) (emphasis added).  To apply the common law economic loss doctrine to foreclose the rights and remedies afforded by the NJTSA would be contrary to this express statutory language.  Under its express and implied terms, the NJTSA creates an additional, cumulative remedy in addition to Par's breach of contract claims.  Defendants' motion to dismiss Count II as to the NJTSA claims should be denied.

### 3.    Par's Breach Of Duty Claims (Counts VIII, IX, and X) Give Rise To A Duty Independent Of Par's Contractual Claims

Finally, the economic loss doctrine does not apply if the defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract."  *G & F Graphic Services*, 18 F. Supp. 3d at 589 (quoting *Saltiel*, 170

N.J. at 317).  The purpose of the economic loss doctrine is to distinguish between tort and contract claims, and eliminate recovery on "a contract claim in tort clothing."  *Id.* (quoting *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013)).  Thus, if through its tort claim, a plaintiff "simply seeks to enhance the benefit of the bargain [it] contracted for," the economic loss doctrine applies.  *Id.* (quoting *Saltiel*, 170 N.J. at 317).  If, however, a plaintiff asserts that a defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract," the economic loss doctrine does not apply.  *Id.* (quoting *Saltiel*, 170 N.J. at 317).

Here, each of the individual Defendants owed independent duties—the duty of loyalty, the duty of confidence, and fiduciary duties—as both former employees and former executives of Par.  As explained below, decisions of the New Jersey state courts hold that the duties arising from a fiduciary relationship or an employer-employee relationship are distinct from the duties owed under an employment contract.  Under *Saltiel*, claims arising from such independent duties are not foreclosed by the economic loss doctrine.

*Saltiel* establishes that the existence of a fiduciary duty forms the basis for a tort remedy separate from a contractual claim, and lists a number of exemplary duties "that are specifically imposed by law in New Jersey, which can be enforced separately and apart from contractual obligations":

-10-

- the duty of physicians to act with a "degree of care, knowledge, and skill ordinarily possessed and exercised" by a physician.  *Saltiel*, 170 N.J. at 311, 317 (citing *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 540 (1989))

- an attorney's duty of care in acting on behalf of a client.  *See id.* at 317  (citing *McGrogan v. Till*, 167 N.J. 414 (2001))

- an insurance broker's duty of care when acting on behalf of the insured.   *See id.* (citing *Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 135 N.J. 182, 189 (1994))

- a manufacturer's duty to warn.  *See id.* (citing *James v. Bessemer Processing, Inc.*, 155 N.J. 279, 297-98 (1998))

In each of the foregoing examples, a common law duty exists apart from any contract between the parties.

Defendants' fiduciary duty likewise exists independent of any contract.  In this action, the individual Defendants are former corporate officers of Par Sterile. Under New Jersey law, corporate officers have a well-established fiduciary duty to their corporations that is enforceable under common law.  *See, e.g., Whitfield v. Kern*, 122 N.J. Eq. 332, 345 (1937).  Accordingly, these fiduciary duties are "duties that are specifically imposed by law in New Jersey, which can be enforced separately and apart from contractual obligations."  *Saltiel*, 170 N.J. at 317.  Par's

claims sound in New Jersey tort law prohibiting corporate officers from taking advantage of their corporations; thus, the economic loss doctrine does not bar these claims.  To hold otherwise is to suggest that the existence of a contract with a corporate officer extinguishes the fiduciary duties owed by that corporate officer. Such a ruling would undermine well-settled corporate law.

Defendants' duty of loyalty also arises independently of a contract.  New Jersey state courts have consistently held that "the employee owes a duty of loyalty to the employer, and the employee must not, while employed, act contrary to the employer's interests." *Auxton Computer Enters., Inc. v. Parker*, 174 N.J. Super. 418, 425 (N.J. Super. Ct. App. Div. 1980).  Under New Jersey law, this too is a duty that is separate from any employment agreement that may or may not exist between an employer and employee.  For example, the New Jersey Supreme Court has established a four-factor test to determine "whether an employee-agent breached his or her duty of loyalty," and factor #1 is the "existence of contractual provisions" relevant to the employee's actions.  *Kaye v. Rosefielde*, 223 N.J. 218, 230 (2015) (quoting *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 521-22 (1999)).  If duty of loyalty claims merged with contract claims, this factor would make no sense.  In another case, the New Jersey Supreme Court allowed recovery based on both contractual breach of an employment agreement and tortious breach of the duty of loyalty, among other claims. *Lamorte Burns & Co v. Walters*, 167 N.J. 285

(2001) (information provided to employee in confidence is protectable, even if the information does not rise to the level of a trade secret).  Other jurisdictions considering the question have been more explicit in distinguishing contract and duty of loyalty claims and determining that the economic loss rule does not bar independent tort claims.  *See Pac. Coast Steel v. Leany*, No. 2:09-cv-2190, 2012 WL 1098348, at *7 (D. Nev. Mar. 30, 2012) (economic loss rule does not bar tort claims based on "independent fiduciary duties of loyalty owed by employees of a corporation that arise separate and apart from their contractual obligations").  Par's claims sound in New Jersey tort law that prohibits employees from being disloyal to their employers.  Because Par's duty of loyalty claims arise from duties independent of Par's contract claims, they are not barred by the economic loss doctrine.

Defendants' argument to the contrary rests on a pair of unpublished cases holding that the economic loss doctrine barred breach of duty of loyalty claims: *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 11-cv-1857, 2012 WL 5554543, at *8 (D.N.J. Nov. 14, 2012), and *Trico Equipment, Inc. v. Manor*, No. 08-cv-5561, 2011 WL 705703 at *5 (D.N.J. Feb. 22, 2011).  These cases, however, expressly rely on an earlier decision, *State Capital Title & Abstract Co., v. Business Services, LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009), where no independent duty of loyalty existed.  In *State Capital Title*, the parties were not employer-employee or

officer-corporation; rather, the parties were companies, and plaintiff had retained defendant to negotiate with potential vendors. *Id.* at 677-78. Plaintiff pleaded no duty of loyalty under New Jersey common law; instead, plaintiff alleged, "[t]his duty of loyalty is *implicit in the agreement between [Plaintiff] and Defendants*." *Id.* (emphasis in original). But unlike between companies whose relationship arises solely from being mutual parties to an agreement, a common law duty of loyalty *does* exist between employees and employers, regardless of whether they are parties to an employment contract. To hold that the economic loss doctrine forecloses Par's duty of loyalty claim would be to suggest that employees have no duty of loyalty to their employers if they sign an employment contract. That is not and cannot be correct. Because the duty of loyalty of an employee is extrinsic to and independent of any employment agreement, the economic loss doctrine does not bar these claims.

Defendants' motion to dismiss Counts VIII, IX, and X should be denied.

**B.     Hinchen And Jenkins Owed And Continue To Owe Duties Of Loyalty And Fiduciary Duties, Including Duties To Maintain Confidential Information (Counts VIII and IX)**

Par has fairly pleaded that Hinchen and Jenkins breached their duty of loyalty and their fiduciary duty. Defendants claim that these duties only apply to an employee "while employed." Mot. at 12. That is incorrect. Hinchen and Jenkins continued to retain a duty to maintain the confidentiality of Par's trade

-14-

secrets and other confidential information even after their resignation from Par.  In addition, Hinchen and Jenkins each had a duty not to act contrary to Par's interest or compete with Par during the period of time they were employees and officers of Par.  Hinchen and Jenkins breached these duties.  Compl. at ¶¶ 32-37, 50-55.

First, Hinchen and Jenkins each retained a fiduciary duty and a duty of loyalty to protect the confidentiality of Par's trade secret and other confidential information, even after termination of their employment.  The law has long been clear that "[t]he employee's common law duty [of loyalty] also precludes him from disclosing trade secrets or confidential information of his employer, ***even after his employment has ended***."  *P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*, No. 04-cv-4554, 2007 WL 708978, at *12 (D.N.J. Mar. 5, 2007) (citing *Sun Dial Corp. v. Rideout*, 16 N.J. 252, 259 (1954)) (emphasis in original).  Even if Hinchen and Jenkins did not divulge confidential information while they were employed, the subsequent disclosure and use of such information constitutes a breach of the duty of loyalty.  *See, e.g., Yonkers*, 2007 WL 708978 at *13 (denying motion to dismiss where defendant allegedly gathered by stealth plaintiff's legally protected information to seek an advantage once he resigned); *IDT*, 2012 WL 4050298, at *16 (denying motion to dismiss where defendant allegedly used proprietary information to target customers and create confusion in the market).  These cases apply with equal force to Hinchen and

Jenkins' breaches of their fiduciary duty and duty of confidence. *See Innes v. Marzano-Lesnevich*, 224 N.J. 584, 598 ("fiduciary's obligations . . . include a duty of loyalty"); *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 422 n.41 (D.N.J. 2016) (discussing employee's fiduciary duty to safeguard confidential information).

Second, Par alleges that Hinchen and Jenkins began competing with Par while they were still employees and officers of Par, contrary to their duty of loyalty and fiduciary duty. At, about, or before the time of their resignations, Hinchen and Jenkins began secretly planning and preparing to launch a new pharmaceutical company that would compete with Par, using a hybrid "compound manufacturing" model to avoid the time and expense of going through the rigorous FDA new drug approval process. Compl. at ¶ 32. Hinchen and Jenkins had detailed knowledge of and access to Par's trade secrets and other Par confidential information that would benefit the company that Hinchen and Jenkins planned to launch. *Id.* at ¶¶ 29, 50. In June 2014, both Hinchen and Jenkins resigned their employment from Par Sterile. *Id.* at ¶¶ 30-31. Thereafter, Hinchen and Jenkins formally incorporated QuVa, acquired a sterile drug compounding facility in Sugar Land, Texas, and announced a majority equity investment from Bain Capital Private Equity. *Id.* at ¶ 33. These facts support a reasonable inference that, while they were still employed as officers, Hinchen and Jenkins used their access to Par's

confidential and trade secret information to compete unfairly with Par, in breach of their duty of loyalty and fiduciary duties. *See Lamorte*, 167 N.J. at 305 (2001) (affirming trial court decision that defendants breached the duty of loyalty where defendants misappropriated protected information from plaintiff to effect an advantage in competing against plaintiff upon their resignation and commencement of a new business).

Defendants' motion to dismiss Counts VIII, IX, and X should be denied.

### C. Defendants' Egregious Conduct Constitutes Tortious Interference With Contract (Count XI)

A claim of tortious interference requires conduct that is both "injurious and transgressive of generally accepted standards of common morality or of law." *Lamorte*, 167 N.J. at 306. "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Id.* at 307. Par adequately pleaded that Defendants crossed that line. Defendants engaged in a deliberate campaign to steal Par's confidential and trade secret information for their own use, and they induced others to do so. Compl. at ¶¶ 41-51. Defendants also intentionally and aggressively poached Par's employees, furthering their campaign of theft while simultaneously undermining Par's business operations. Compl. at ¶¶ 35-37, 45, 52-55. These actions more than plausibly plead a claim for tortious interference with contract.

The facts known by Par demonstrate the kind of egregious misconduct by QuVa that the law requires for this claim.  By claiming that "Par does not identify a single act by QuVa that induced a breach of an employee's confidentiality obligations to Par" or "even a *single* breach of *any* employee's non-disclosure agreement[,]" *see* Mot. at 13-14, Defendants ignore that they conspired with Rutkowski while he was still employed at Par Sterile to obtain Par's trade secrets and solicit Par's employees.  Indeed, long before he resigned from Par, Rutkowski exchanged numerous emails with Donna Kohut, a former Par Sterile consultant who had by then joined QuVa, in which Rutkowski would regularly deliver confidential Par documents and information to QuVa.  Compl. at ¶¶ 41-49.  QuVa encouraged and endorsed these continuing breaches.  For instance, in a March 9, 2017 email, Rutkowski sent to Kohut Par trade secrets and other confidential information relating to how to pass an FDA facility inspection, and Kohut responded "[a]ppreciate the tip."  *Id.* at ¶ 44.  On March 13, 2017, Rutkowski and Kohut exchanged correspondence regarding their joint efforts to recruit Par Sterile employees while Rutkowski was still at Par, where Rutkowski admitted, "I spoke to him but he elected to go elsewhere."  *Id.* at ¶ 45.  On March 15, 2017—just prior to giving notice to Par Sterile that he was leaving the company—Rutkowski forwarded to Kohut at QuVa three detailed, internal Par PowerPoint presentations containing confidential and trade secret information including supply chain

metrics, monthly finances and budgets, training and personnel developments, and future business plans; in reply, QuVa's Kohut candidly announced "I'll steal with pride just like you taught me!" *Id.* at ¶ 47. These facts directly allege that QuVa induced Rutkowski to breach his contractual obligations and that Rutkowski did breach these obligations. In addition, these facts plausibly suggests that Defendants engaged in a willful, dishonest, and illegal pattern of activity that flouts both agreed business norms and unequivocal tort and contract laws.[2] Par thus properly pleads tortious interference with both Rutkowski's non-disclosure agreements and with Par Sterile employees' employment agreements under these facts.

Par further alleges that Defendants solicited at least seven other Par Sterile employees, hiring each of them to perform roles similar to those they performed at Par Sterile. Compl. at ¶¶ 36, 52. QuVa's solicitation of these individuals was not random; rather, QuVa targeted the specific Par employees necessary for QuVa to duplicate what Par had already done. *Id.* And Rutkowski and Kohut were integral to QuVa's poaching campaign. *Id.* at ¶ 47. Par already has knowledge of

---

[2] While this plausible suggestion of tortious interference with contract as plead in the Complaint is more than sufficient to state a claim, it has now been further confirmed by discovery. Recently produced documents show that on multiple occasions while Rutkowski was still employed at Par, Kohut would send him QuVa confidential documents for review, which Rutkowski then revised. Rutkowski's revisions, feedback, and insights were then shared within QuVa and attributed to Rutkowski.

Defendants' efforts to obtain Par's confidential and trade secret evidence through Rutkowski, suggesting that Defendants were keenly interested in obtaining Par's confidential and trade secret information from other Par Sterile employees.   Under *Twombly* and *Iqbal*, Par is entitled to the reasonable inference that Defendants have tortiously induced breach of confidentiality agreements from other solicited Par employees.  The Court should allow Par to proceed with its tortious interference of contract claims under Count XI.

## V.  PAR HAS PROPERLY PLEADED BREACH OF CONTRACT (COUNTS V, VI, AND VII)

### A.  Par's Complaint Adequately Pleads Breach Of Contract Based On Defendants' Breach Of The Non-Disclosure Provisions Alone

Defendants' motion to dismiss Par's breach of contract claims is actually not a motion to dismiss a claim, but rather a motion to dismiss a theory of the case, which is not authorized by the Federal Rules.   Defendants do not dispute the adequacy of Par's ***claim*** that Defendants breached of contract, implicitly admitting that Par adequately pleaded that Defendants breached the non-disclosure provisions of their contracts by failing to even address those allegations.  Rather, Defendants challenge Par's additional ***theory*** that Defendants breached the non-solicitation agreements in their contract.  A motion to dismiss is not the proper vehicle for challenging this theory.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss for "failure to state a ***claim*** upon which relief can be granted." (Emphasis added.) Interpreting this plain language, other jurisdictions have concluded that a defendant cannot move to dismiss only a portion of a claim. *See Guardian Life Ins. Co. of Am. v. Andaros*, No. 07-cv-05732, 2008 WL 11338650, at *5 (C.D. Cal. Nov. 7, 2008) (where Plaintiff adequately pled breach of contract and other claims, denying motion to dismiss alter ego theory); *see also, Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) ("A plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety.") (citing *Janis v. Nelson*, No. 09-5019, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009)). This rule, which is apparent from the plain text, is also supported by the intent of the Federal Rules. Prior to the adoption of the Federal Rules, a number of jurisdictions developed and adhered to a "theory of the pleadings doctrine" in which a complaint must proceed on some definite theory. *See* 5 Wright & Miller, Fed. Prac. & Proc. § 1219 (3rd ed. 2017). But, as the Supreme Court has confirmed, "[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (quoting Wright & Miller, § 1219). Even under *Twombly* and *Iqbal*, a plaintiff must merely plead sufficient

-21-

*factual* allegations to support a claim, not sufficient theories. *Id.* Decisions of this District are in accord. *See Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 803 (D.N.J. 1993). Here, Par has pleaded sufficient facts to support its claim for breach of contract. No more is required and there is no basis upon which a theory—which need not have been alleged in the first place—can be dismissed.

Because Rule 12(b)(6) only permits dismissal of claims and not theories, the Court should deny Defendants' motion to dismiss a portion of Par's contract claim.

## B.     Par's Complaint Adequately Pleads Solicitation By Hinchen and Jenkins In Breach Of Contract

Even if the Court were to entertain Defendants' improper motion to dismiss Par's theory, Par has pleaded sufficient facts to plausibly claim breach of the non-solicitation provisions by Hinchen and Jenkins. Even if one accepts Defendants' allegations that Hinchen's and Jenkins' non-solicitation provisions expired in June 2015 and that Hinchen and Jenkins hired David Short four months later, in October 2015, these allegations do not absolve Defendants of liability for solicitation. Par plausibly states facts suggesting that Hinchen and Jenkins were "soliciting" David Short in the months before he was hired, including during the term of Defendants' one year non-solicitation period, since the prohibited conduct is not just ***hiring*** a Par employee, but rather any effort to "directly or indirectly . . . . solicit, hire, induce or attempt to induce . . . any director, officer, employee, contractor,

consultant or agent of [Par Sterile] . . . to either (i) leave or terminate his or her employment, consulting or other position or business relationship with [Par Sterile] or (ii) breach his or her employment, consulting, or other agreement with [Par]. . . .'' Compl. at ¶¶ 107, 125.   Par has adequately pleaded facts supporting its solicitation claims as to Hinchen and Jenkins.

### C.   Par's Complaint Adequately Pleads Solicitation By Rutkowski In Breach Of Contract

Defendants' motion to dismiss the non-solicitation breach of contract theory with respect to Rutkowski—based on the fact that he was soliciting other Par employees to join QuVa *while still himself employed by Par*—is equally spurious. Defendants essentially allege that Rutkowski's conduct in soliciting Par Sterile employees was so egregious that it was not prohibited by the contract.   However, this argument fails to account for either the facts or the law.

First, as a factual matter, the fact that Rutkowski was soliciting Par Sterile employees while he was employed leads to the very reasonable inference that Rutkowski continued to solicit some of these same employees after he left Par Sterile, when Defendants claim the non-solicitation provisions came into effect. Rutkowski's complete disregard for his contractual, tort, and statutory duties in general (Compl. at ¶¶ 41-49) only bolsters this conclusion.

Second, Defendants assert disputed interpretations of the terms of the contract.   For instance, the phrase "for a period of one (1) year following

termination of your employment" may define the end period of Rutkowski's obligation not to solicit without defining the start time for that obligation.  Where there is a possibility that a term is ambiguous, "it is simply too early [in a Rule 12(b)(6) motion] to determine whose interpretation of the relevant provision is correct."  *Biovail Corp. Intern. v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 775 (D.N.J. 1999).  And where a dispute "calls for consideration of facts extrinsic to the pleadings," it is "beyond the scope" of a Rule 12(b)(6) motion.  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 562 (D.N.J. 2002) (denying motion to dismiss state law breach of contract claim).  Adjudicating the applicability and validity of Par's contracts with Rutkowski is thus far beyond the relief that may be granted through a Rule 12(b)(6) motion.  Par has adequately pleaded facts supporting its theory that Rutkowski breached the provisions of his non-solicitation agreements.

## VI.  CONCLUSION

Par has pleaded more than enough facts to plausibly claim that Defendants disregarded the terms of their non-solicitation and non-disclosure agreements, violated statutory laws prohibiting misappropriation of trade secrets, and breached their fiduciary duty and duty of loyalty as trusted officers and employees at Par. Given the startling breadth of Defendants' misconduct, Par has grounds to seek relief for each of its asserted claims.  For these reasons, the Court should deny Defendants' Partial Motion to Dismiss in full.

DATED:     November 6, 2017        Respectfully submitted,

By:  s/  Lawrence S. Lustberg
Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:   (973) 596-0545

Daniel M. Petrocelli (admitted *pro hac vice*)
Brett J. Williamson (admitted *pro hac vice*)
Jeffrey A. Barker (admitted *pro hac vice*)
David S. Almeling (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

*Attorneys for Plaintiffs Par Pharmaceutical,*
*Inc. and Par Sterile Products, LLC*

-25-