Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Facsimile: (973) 596-0545

Daniel M. Petrocelli (admitted *pro hac vice*)
Brett J. Williamson (admitted *pro hac vice*)
Jeffrey A. Barker (admitted *pro hac vice*)
David S. Almeling (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Plaintiffs Par Pharmaceutical,
Inc. and Par Sterile Products, LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAR PHARMACEUTICAL, INC. and PAR STERILE PRODUCTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI,<br><br>Defendants. | Civil Action No. 3:17-cv-06115-BRM-DEA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>**EVIDENTIARY HEARING REQUESTED** |


## TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I. | INTRODUCTION | 1 |
| II. | PAR HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS | 2 |
| | A. New Jersey Law Applies, and Michigan and Texas Law Are Substantially Similar in Any Event | 2 |
| | B. Par Has Shown It Will Likely Succeed on the Merits of Its Trade Secret Misappropriation Claims | 2 |
| |    1. Defendants Misappropriated Par's ▮▮▮▮ Trade Secrets | 2 |
| |    2. Defendants Misappropriated Par's Operational Trade Secrets | 4 |
| |    3. Defendants Misappropriated Par's Technical Trade Secrets | 6 |
| |    4. Defendants Misappropriated Par's Employment Trade Secrets | 8 |
| |    5. Defendants Destroyed Evidence to Hide Additional Misappropriation | 9 |
| |    6. Defendants Provide Insufficient, Self-Serving Declarations | 11 |
| | C. Par Has Shown It Will Likely Succeed on the Merits as to Its Breach of Contract Claims | 12 |
| III. | PAR WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION AGAINST DEFENDANTS | 13 |
| IV. | THE BALANCE OF EQUITIES TIPS STRONGLY IN PAR'S FAVOR | 14 |
| V. | THE PUBLIC INTEREST FAVORS AN INJUNCTION | 15 |


# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adolph Gottscho Inc. v. Am. Mktg. Corp.*,
   18 N.J. 467 (1955) ................................................................................................ 8

*Anacomp, Inc. v. Shell Knob Servs., Inc.*,
   No. 93-cv-4003, 1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) ..................................... 6

*Bolt Assocs., Inc. v. Alpine Geophysical Assocs., Inc.*,
   365 F.2d 742 (3d Cir. 1966) ................................................................................ 3, 8

*Chubb INA Holdings Inc. v. Chang*,
   No. 16-cv-2354, 2017 WL 499682 (D.N.J. Feb. 7, 2017) .................................... 11

*Everett Labs., Inc. v. Acella Pharm., LLC*,
   No. 13-cv-3470, 2013 WL 5179006 (D.N.J. Sept. 13, 2013) ............................... 13

*Metro. Life Ins. Co. v. Usery*,
   426 F. Supp. 150 (D.D.C. 1976) ............................................................................ 9

*Nat'l Reprographics, Inc. v. Strom*,
   621 F. Supp. 2d 204 (D.N.J. 2009) ...................................................................... 12

*Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*,
   219 N.J. Super. 158 (1987) .................................................................................... 7

*NVR, Inc. v. Davern*,
   No. 15-cv-5059, 2015 WL 9450831 (D.N.J. Dec. 23, 2015) ............................... 14

*Nw. Airlines v. Am. Airlines*,
   853 F. Supp. 1110 (D. Minn. 1994) ....................................................................... 6

*Parks LLC v. Tyson Foods, Inc.*,
   863 F.3d 220 (3d Cir. 2017) ................................................................................ 11

*Pre-Paid Legal Servs. v. Harrell*,
   No. 06-cv-019, 2008 U.S. Dist. LEXIS 1773 (W.D. Okla. Jan. 8,
   2008) ....................................................................................................................... 9

*RealPage, Inc. v. Enterprise Risk Control, LLC*
   No. 4:16-cv-00737, 2017 WL 33132729, at *12 (E.D. Tex. Aug. 3,
   2017) ..................................................................................................................... 10

...

## TABLE OF AUTHORITIES
## (continued)

Page

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*,
   808 F. Supp. 932 (E.D.N.Y. 1992) ................................................................. 6

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*,
   530 F.2d 508 (3d Cir. 1976) ......................................................................... 14

**STATUTES**

18 U.S.C. § 1839(5)(B) ........................................................................................ 5

Fed. R. Civ. P. 37(e)(2) ..................................................................................... 10

M.C.L.A § 445.1902 ............................................................................................ 2

N.J.S.A. 56:15-2 .............................................................................................. 2, 5

Tex. Civ. Prac. & Rem. Code § 134A.002 ......................................................... 2

## I.　INTRODUCTION

Defendants have it partly right—this is a battle of facts versus fiction. Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC (collectively, "Par") rely on the facts, having submitted page after page of documentary and testimonial proof demonstrating that Defendants and their cohorts misappropriated valuable trade secrets and improperly solicited numerous Par employees, in violation of both applicable law and their contractual obligations. Defendants are the ones relying on fiction, offering only self-serving, uncorroborated, and conclusory denials that are contradicted at every turn by the objective record. Indeed, the evidence in favor of a preliminary injunction is now even more compelling than when Par filed its moving papers. Just two days ago, Defendants revealed that one of the former Par employees identified in the motion as having misappropriated key trade secrets—Stephen Rhoades—has admitted stealing newly identified documents from Par, taking those documents with him when he joined QuVa in 2016, and then ***destroying them after the filing of this lawsuit***. QuVa has acknowledged the seriousness of the misdeeds done on its behalf by firing Rhoades.

As explained herein, Defendants have failed to rebut Par's demonstrated likelihood of success on the merits of its trade secrets and breach of contract claims. No room for doubt exists that Par will be irreparably harmed in the absence of a preliminary injunction, and that both the balance of the equities and the public interest favor an injunction. Par's Motion should be granted.

## II. PAR HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

### A. New Jersey Law Applies, and Michigan and Texas Law Are Substantially Similar in Any Event

Defendants' argument regarding a purported conflict of law is immaterial, because Par asserts not a presumption of harm (as Defendants claim) but actual, immediate harm. Further, New Jersey, Michigan, and Texas all rely on the Uniform Trade Secrets Act, and all have adopted the same elements for misappropriation. *Compare* N.J.S.A. 56:15-2, *with* M.C.L.A § 445.1902, and *with* Tex. Civ. Prac. & Rem. Code § 134A.002. Even if Defendants could identify a conflict, New Jersey is most impacted by all four defendants' misconduct: Rutkowski is a New Jersey resident who took Par's trade secrets with him to New Jersey; QuVa operates a New Jersey facility that produces pharmaceutical products in reliance on Par's trade secrets; and Hinchen and Jenkins breached contracts that select New Jersey law. *See* Ex. 5 ¶ 23; Ex. 6 ¶ 23.

### B. Par Has Shown It Will Likely Succeed on the Merits of Its Trade Secret Misappropriation Claims

#### 1. Defendants Misappropriated Par's ▮▮▮▮ Trade Secrets

Defendants do not dispute that Par's ▮▮▮▮▮▮▮, Ex. 53, and ▮▮▮▮ Ex. 144, were kept secret, derive value to Par from not being generally known, and were subject to reasonable secrecy efforts. Opp. at 20–23. Defendants instead seek to excuse their conduct by arguing that QuVa "independently developed" its own APS Master Plan and EM Master Plan and that certain information in Par's documents is publicly available. *Id.* Defendants are wrong on both the law and the facts.

Under New Jersey law, once the party asserting misappropriation demonstrates a prima facie case (as Par has indisputably done here), the burden shifts to the defendant to prove that it independently developed the trade secrets it is accused of having stolen. *See, e.g.*, *Bolt Assocs., Inc. v. Alpine Geophysical Assocs., Inc.*, 365 F.2d 742, 749 (3d Cir. 1966) (defendant "cannot rest on mere self-serving assertions, but rather" carries "a heavy burden of persuasion . . . to show that the production was the result of independent development and not from the use of information confidentially reposed"). Here, Defendants barely try to meet this burden; they did not, for example, produce drafts, correspondence, or lab notebooks demonstrating how and in what manner they independently developed the documents in question. Rather, Defendants rely entirely on inadequate self-serving declarations. *See infra* Part II.B.6.

Those declarations stands in stark contrast to the evidence that Par produced during discovery. *See, e.g.*, Exs. 52–53, 144. And the record is now even stronger. In their Opposition, Defendants produced for the first time QuVa's APS plan from the relevant time period. QuVa's plan blatantly copies ▮▮▮▮▮▮▮▮ examples of incontrovertible, verbatim or near-verbatim copying. *See* Miller Supp. Decl. ¶ 9. Thus, Defendants' argument that QuVa's APS plan is "uniquely tailored," "independently developed," and "significantly different" from Par's ▮▮▮▮▮▮▮▮, Opp. at 21–22, is pure fiction and demonstrably not true. Miller Supp. Decl. ¶¶ 9–11, 14. The scope of the misappropriation that Dr. Miller documents in his declaration is staggering,

especially in light of Defendants' representations to this Court. QuVa's EM plan is also remarkably similar to ▮▮▮▮▮ examples of incontrovertible, verbatim or near-verbatim copying. *Id.* ¶ 18. This information—▮▮▮▮▮—is confidential and unique to Par. *Id.* ¶¶ 12-13, 20–21.

The motive for Defendants' misappropriation is clear: Defendants copied Par's trade secrets because they were desperate to qualify their facility under FDA regulations. ▮▮▮▮▮ Miller Supp. Decl. ¶ 7; Ex. 435. As explained in a detailed timeline by Dr. Miller, Defendants' misappropriation was essential to QuVa staying in operation. Miller Supp. Decl. ¶ 24.

2. **Defendants Misappropriated Par's Operational Trade Secrets**

Defendants concede that Rutkowski regularly sent Par information to Defendants while employed at Par, *see* Opp. at 24, and downloaded approximately ▮ Par confidential documents onto his personal hard drive just before leaving Par. *See* Opp. at 27; Cooper Decl. ¶¶ 60–61. Defendants' conclusory argument that they did not use many of these documents fails as a matter of law—the acquisition and disclosure



-4-

of Par's trade secrets, regardless of use, constitutes misappropriation. 18 U.S.C. § 1839(5)(B); N.J.S.A. 56:15-2. Accordingly, Par has shown actionable misappropriation with regards to the confidential documents on the hard drive. Moreover, Defendants' forensic "evidence" that they did not use these documents is incorrect and completely unsubstantiated; documents can be and often are accessed without a resulting update to the last accessed date. Cooper Supp. Decl. ¶¶ 19–25. Defendants have also failed to rebut Par's showing that the information he took is valuable. *See* Miller Decl. ¶¶ 70–71. Upon receipt of data from Rutkowski comprising ███████████████████████████, Ex. 62, QuVa's Kohut stated, "I'll steal with pride just like you taught me." Ex. 63. Defendants' claim that this statement was an inside joke, *see* Opp. at 25, is simply not credible. *See infra* Part II.B.6. Also not credible are Defendants' self-serving claims that this information lacks value.[1] *Id.* The only expert to opine on the value of these trade secrets is Dr. Miller, whose testimony is unrebutted by Defendants' experts. Miller Decl. ¶¶ 64–76.

Defendants largely concede that Par took reasonable measures to protect its trade secrets. *See* Br. at 26–27, Miller Decl. ¶¶ 59–63. Defendants' two arguments to the contrary are meritless. First, courts roundly reject Defendants' assertion that documents must be marked "Confidential" in order to be reasonably protected when other

---

[1] Defendants' claim that the ███████████████ were not accessible to Defendants, Opp. at 25, n.13, borders on bad faith, since *they* produced this data as the attachments to Rutkowski's email to Kohut. *See* Ex. 62.

-5-

safeguards are in place. *See Nw. Airlines v. Am. Airlines*, 853 F. Supp. 1110, 1115 (D. Minn. 1994); *Anacomp, Inc. v. Shell Knob Servs., Inc.*, No. 93-cv-4003, 1994 WL 9681, at *10 (S.D.N.Y. Jan. 10, 1994). Second, Defendants' claim that the ▇▇▇▇ was disclosed publicly is incorrect. ▇▇▇▇

▇▇▇▇

▇▇▇▇ Ex. 222, 79:16-81:6. Even as to those summaries, Par took reasonable security measures by requiring further badge access, *see id.*, and Defendants presented no evidence that any visitors actually saw any of these particular pieces of information. *See Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 808 F. Supp. 932, 937 (E.D.N.Y. 1992) (failure "to require secrecy or confidentiality agreements to maintenance people and visitors [is not] a failure to take reasonable precautions to maintain secrecy") (applying New Jersey law).

### 3. **Defendants Misappropriated Par's Technical Trade Secrets**

It is indisputable that Defendants' vasopressin premix formulations ▇▇▇▇

▇▇▇▇ ▇▇▇▇

▇▇▇▇

▇▇▇▇

▇▇▇▇

▇▇▇▇

▇▇▇▇

-6-

-7-

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████ *Id.*

¶ 43; *see Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 219 N.J. Super. 158, 162 (1987) (granting injunction "where multiple complex chemical compounds are involved" and facts demonstrate "more than a 'mere suspicion'" of misappropriation).

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ After-the-fact publication cannot excuse Defendants' misappropriation, as Defendants took full advantage of Par's trade secrets prior to any purported disclosure. *See Adolph Gottscho Inc. v. Am. Mktg. Corp.*, 18 N.J. 467, 440-41 (1955) (public disclosure of trade secret in later-issued patent does not terminate pre-existing claim of trade secret misappropriation).

Defendants' attempt to demonstrate "independent development" of these trade secrets also fails. As explained above, Defendants carry a "heavy burden of persuasion" to show that their trade secrets were independently developed. Here, *after* Par filed its Motion, Defendants selectively produced and cited a few documents showing the status of their development efforts in an attempt to show that QuVa's formulations and methods differ from Par's. Exs. 209, 226, 227. When Par immediately requested a complete production, Defendants produced only three more cherry-picked documents, refusing on the grounds that "the discovery cut-off has long passed" to produce all vasopressin development documents describing how QuVa arrived at these results. Ex. 428. Defendants cannot meet their burden of persuasion by unilaterally introducing an issue after discovery was concluded and then refusing to produce the full record that would test their claim of independent development. *Bolt*, 365 F.2d at 749.

### 4. Defendants Misappropriated Par's Employment Trade Secrets

Defendants concede nearly all aspects of misappropriation of Trade Secrets Nos.

43, 45, 47, and 49. They do not dispute knowing about the confidential work that Rhoades, McGrady, Short, and Kohut did at Par. As explained by Par's expert, such information is a secret, has value in preventing poaching of Par's sensitive employees, and is subject to reasonable protections, including non-disclosure requirements that would require employees not to disclose their confidential work. Miller Decl. ¶¶ 111–112; *see also* Br. at 30. Defendants also do not dispute using this information to target, recruit, and hire precisely the employees they needed to mimic Par's processes and operations at its Rochester facility, *see, e.g.*, Ex. 7, and fail to offer any evidence, fact testimony, or expert testimony to rebut Par's showing. Courts have agreed that confidential employee information usable by a competitor to raid a company's employees constitutes valuable trade secrets. *See Pre-Paid Legal Servs. v. Harrell*, No. 06-cv-019, 2008 U.S. Dist. LEXIS 1773, at *28 (W.D. Okla. Jan. 8, 2008); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 160 (D.D.C. 1976).

        5.    **Defendants Destroyed Evidence to Hide Additional Misappropriation**

The mounting evidence of Defendants' cover-up of their misappropriation is staggering. Aside from the showing made in the moving papers, Defendants revealed two days ago that one of the former employees who took confidential materials, Rhoades, was in possession of a thumb drive containing Par confidential documents after leaving Par for QuVa in 2015, that he used some of these documents, and that he deleted information from this thumb drive after the litigation commenced. Ex. 429.

██████████

██████████

██████████ Earlier today, counsel for QuVa informed Plaintiffs that QuVa has terminated Mr. Rhoades. Ex. 449. While his firing is an admission of the seriousness of Mr. Rhoades's misdeeds, it does not remedy the misappropriation, as his misuse of ██████

██████████

██████████ Nor does firing Rhoades redress his spoliation of critical evidence, for which Par will seek adverse inferences. *See RealPage, Inc. v. Enterprise Risk Control, LLC*, No. 4:16-cv-00737, 2017 WL 33132729, at *12 (E.D. Tex. Aug. 3, 2017) (adverse inference "establishe[s] a prima facie case of misappropriation of trade secrets" for a preliminary injunction); *see also* Fed. R. Civ. P. 37(e)(2). Mr. Rhoades's firing also demonstrates that Defendants' misconduct is more serious than we yet know; while QuVa continues to defend its use of Par's ██████████, it fired Rhoades, signaling that there is indefensible evidence of misconduct not yet known to Par or this Court.

    As part of their opposition, Defendants make a new, truly incredible claim that Rutkowski's Lenovo hard drive was damaged not by Rutkowski ██████

██████████

██████████ *See* Cooper Supp.

-10-

Decl. ¶¶ 4–12; Cooper Decl. ¶ 32; Lee Decl. ¶ 9. ███████████████

███████████████████████████████████████████████

███████████; certainly, it is not Par's fault that it has been deprived of access to this critical evidence. These two recent revelations establish that Defendants continue to conceal their misdeeds. *See also* Br. at 16–21.

### 6. **Defendants Provide Insufficient, Self-Serving Declarations**

Finding themselves without any reliable, objective evidence to rebut Par's comprehensive presentation of proof in support of the motion, Defendants rely heavily on 14 declarations from current QuVa employees, *see* Exs. 410–23, who could not, under the limited, expedited discovery schedule, be challenged through depositions. These declarations were tactically drafted by counsel, as shown by the fact that each contains identical, boilerplate language ████████████████████

████████████████████████████████[2] It is for these reasons that courts find such employee declarations "self-serving and of little probative value." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 236 (3d Cir. 2017); s*ee also Chubb INA Holdings Inc. v. Chang*, No. 16-cv-2354, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017) (a defense "based entirely on [defendants'] own self-serving denials" is "insufficient").

---

[2] The subsequent disclosure that one of those declarants—Rhoades—now admits bringing Par documents to QuVa, and then destroying the evidence of that misappropriation after the lawsuit was filed, *see supra* Part II.B.5, is all the Court needs to know about the value of these attorney-drafted declarations.

### C. Par Has Shown It Will Likely Succeed on the Merits as to Its Breach of Contract Claims

Defendants' defense to Par's breach of the nondisclosure contracts claim consists of a single sentence that they did not breach the nondisclosure obligations "[f]or the same reasons" they claim not to have stolen Par's trade secrets. Br. at 30. But the contractual confidentiality provisions also protect "information that is not a trade secret or proprietary information" but is nevertheless "unique and not generally known in the industry." *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 226 (D.N.J. 2009); *See* Exs. 5-6, 14-15, 19-20, 78. Regardless of their arguments on the trade secret claims, Defendants are liable for their breach of the nondisclosure promises in their contracts.

Defendants also recruited and hired Par employees in breach of contract. *See* Br. at 5–10. Exhibit 448 is a demonstrative chart identifying each of the prohibited acts, including prohibited emails, conversations, and interviewing. While Defendants contend that the Par employees approached Defendants first and had their own reasons for leaving, *see* Opp. at 9, this does not excuse the breach even if true. Defendants' contracts prohibit directly or indirectly soliciting or hiring Par's employees ***in any manner***. Ex. 5 ¶ 8; Ex. 6 ¶ 8. Defendants Hinchen and Jenkins make a final argument that they did not discuss hiring Short, Kohut, and Rutkowski until their 12-month non-solicitation agreements expired. This assertion is not credible, as documents submitted with Par's motion unequivocally show. Exs. 7–13; Br. at 5-8. The only rebuttal to this damning documentary proof is (once again) the ▬▬▬▬▬▬▬▬▬▬

▆▆▆▆ *See* Ex. 421, Hinchen Decl. ¶ 7.

### III. PAR WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION AGAINST DEFENDANTS

Par submitted detailed evidence with its motion of the irreparable harm it is likely to suffer due to Defendants' conduct. *See* Br. at 30–36. Defendants' response is to claim that Par is asking the Court to "presume" irreparable harm from the egregious acts of misappropriation and unlawful solicitation. No presumption whatsoever is necessary; Par has demonstrated actual, ongoing irreparable harm from Defendants' unlawful solicitation and misappropriation of trade secrets.

And despite Defendants' unsupported claim that QuVa's vasopressin product would not compete with Par, *see* Opp. at 33, Defendants' own retained expert concedes the obvious—▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆ *See* Rao Decl. ¶¶ 24, 26. Dr. Rao only disputes whether the harm caused by QuVa's product is irreparable. Meanwhile, Dr. Meyer's well-grounded opinions establish the unquantifiable, irreparable harms to Par, leaving Defendants with only an attack on the supposed "speculative" nature of the harm. *See* Opp. at 34–35. But the premise of Defendants' argument is wrong; this Court expressly recognizes that in forecasting future events, "there will be some speculation as to irreparable harm" due to the "very nature of a preliminary injunction." *Everett Labs., Inc. v. Acella Pharm., LLC*, No. 13-cv-3470, 2013 WL 5179006, at *7 (D.N.J. Sept. 13, 2013).

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

They are now preparing to launch a product that will compete with Par based on the confidential knowledge of these employees. The irreparable harm is manifest.

## IV. THE BALANCE OF EQUITIES TIPS STRONGLY IN PAR'S FAVOR

Defendants' rank speculation as to Par's motivation for filing this action is irrelevant and would be improper even without the mountains of evidence demonstrating their widespread theft of Par's trade secrets. The law is clear that demonstrated misappropriation shapes the balance of equities, *see NVR, Inc. v. Davern*, No. 15-cv-5059, 2015 WL 9450831, at *3 (D.N.J. Dec. 23, 2015) (a defendant "can claim no harm by being obligated to compete only by lawful means"), and equally clear that a company is allowed to price its products based on legitimate business factors, *see Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 513 n.9 (3d Cir. 1976) (one can sell an article "at any price he wishes, however low or high" (citation omitted)). It is highly ironic that Defendants (falsely) claim that Par has somehow engaged in "irresponsible litigation tactics" by accusing Defendants of concealing evidence, while being forced to admit five days later that one of the ex-Par employees they solicited has destroyed stolen Par information that constitutes proof of misappropriation. Ex. 429.

Par's request to enjoin all competing QuVa products is proper given the breadth

of Defendants' misappropriation. Defendants admit ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████ Moreover, there is no equitable harm in being obligated to compete by lawful means. *See* Br. at 37. Even if this Court determines there is undue hardship, it can limit the injunction to QuVa's yet-to-be released vasopressin product, which of course represents ***no*** portion of QuVa's revenue.

## V.   THE PUBLIC INTEREST FAVORS AN INJUNCTION

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████ Defendants' arguments with respect to drug prices do not alter this conclusion. Only Par followed FDA regulations to obtain an NDA for Vasostrict®, obtaining the benefit of higher prices that were the intended incentive for compliance with stringent rules including demonstrated product safety. There is absolutely no public interest in the illegal shortcuts that QuVa has taken.

DATED:  December 15, 2017          Respectfully submitted,

By: s/ Lawrence S. Lustberg
Lawrence S. Lustberg

Lawrence S. Lustberg
Daniel J. McGrady
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:   (973) 596-4500
Facsimile:   (973) 596-0545

Daniel M. Petrocelli (admitted *pro hac vice*)
Brett J. Williamson (admitted *pro hac vice*)
Jeffrey A. Barker (admitted *pro hac vice*)
David S. Almeling (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-2061

*Attorneys for Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC*