**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky, Esquire
David C. Kistler, Esquire
New Jersey Resident Partners
Leigh Ann Buziak, Esquire
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Orlofsky@blankrome.com
Kistler@blankrome.com
LBuziak@blankrome.com
*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**
Jeffrey S. Ward (*admitted pro hac vice*)
Wendy M. Ward (*admitted pro hac vice*)
Stephen R. Howe (*admitted pro hac vice*)
Emily M. Wessels (*admitted pro hac vice*)
10 E. Doty Street, Suite 600
Madison, WI 53703
Telephone: (608) 280-6751
Facsimile: (612) 332-9081
JWard@MerchantGould.com
WWard@MerchantGould.com
SHowe@MerchantGould.com
EWessels@MerchantGould.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAR PHARMACEUTICAL, INC., and PAR STERILE PRODUCTS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, MIKE RUTKOWSKI, DONNA KOHUT, DAVID SHORT, STEPHEN RHOADES, TRAVIS MCGRADY, and DAVID HARTLEY, <br><br> Defendants. | Civil Action No. 3:17-cv-06115-BRM-DEA <br><br> *Filed Electronically* <br><br> **HIGHLY CONFIDENTIAL FILED UNDER SEAL** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST DONNA KOHUT, TRAVIS MCGRADY, DAVID HARTLEY, AND DAVID SHORT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................1

II. BACKGROUND ....................................................................1

III. THE COURT LACKS PERSONAL JURISDICTION OVER THE
ADDED DEFENDANTS ...........................................................3

 A. Legal Standard for Personal Jurisdiction .............................3

 B. There is no General Personal Jurisdiction over the Added
  Defendants.............................................................................6

 C. There is no Specific Personal Jurisdiction over the Added
  Defendants.............................................................................8

  1. None of the Added Defendants has Purposefully
   Directed any Activities at New Jersey .............................8

  2. There is no Personal Jurisdiction under the
   "Calder Effects Test" ...................................................12

IV. CONCLUSION ....................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Am. Centennial Ins. Co. v. Handal*,
901 F.Supp. 892 (D.N.J. 1995) .......................................................................... 7

*Bangura v. Pennrose Mgmt. Co.*,
No. 9-4017, 2010 U.S. Dist. LEXIS 59450, *9-10 (D.N.J. June 15, 2010) ...... 10

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985.) ........................................................................... 5, 8, 10, 12

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ...................................................................................... 6, 7

*Fisher v. Teva PFC SRL*,
212 F. App'x 72 (3d Cir. 2006) .......................................................................... 7

*Goodman v. Goodman*,
No. 04-03869, 2010 U.S. Dist. LEXIS 20518, at *16 (D.N.J. Mar. 5, 2010) .........10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ......................................................................................... 4, 6

*Gov't Emples. Ins. Co. v. Nealey*,
262 F. Supp. 3d 153 (E.D. Pa. 2017) .................................................... 12-13, 13

*Hayes v. Wachovia Mortg.*,
*FSB*, No. 11-1622, 2011 LEXIS 121802, at *4-5 (D.N.J. Oct. 21, 2011)................9

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
466 U.S. 408 (1984) ......................................................................................... 4, 5

*IMO Industries v. Kiekert AG*,
155 F.3d 254 (3  Cir. 1998) ................................................................... 5, 12, 13

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .............................................................................................. 5

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 n.13, 104 S. Ct. 1473, 1482 (1984) ............................................. 12

*Knierim v. Siemens Corp.*,
  No. 06-4935, 2008 U.S. Dist. LEXIS 26571 (D.N.J. Mar. 31, 2008) .............. 10

*Kulko v. Superior Court of Cal.*,
  436 U.S. 84 (1978) ................................................................ 4

*MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*,
  65 Fed. Appx. 844 (3  Cir. 2003) .................................... 3, 4, 5, 11, 13

*Richcourt Allweather Fund, Inc. v. Midanek*,
  No. 13-4810, 2014 U.S. Dist. LEXIS 54679 (D.N.J. Apr. 17, 2014) ............ 7, 8

*Riedl v. McConchie*,
  No. 14-3925, 2015 U.S. Dist. LEXIS 60309, at *5-6 n.3
  (D.N.J. May 8, 2015) ........................................................... 7

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
  735 F.2d 61 n.9 (3d Cir. 1984) ................................................ 4, 8

Defendants Donna Kohut, Travis McGrady, David "Mike" Hartley, and David Short respectfully submit this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC ("Par").

## I.    INTRODUCTION

On January 12, 2018, nearly five months after Par initiated this lawsuit, it filed the FAC adding as Defendants QuVa Pharma, Inc. ("QuVa") employees Donna Kohut, Travis McGrady, Mike Hartley, and David Short (collectively "Added Defendants"), all of whom reside in Texas. The FAC, however, is utterly devoid of any allegations upon which personal jurisdiction over the Added Defendants can be based. Par *cannot* adduce any such facts because none of the Added Defendants have contacts with the State of New Jersey sufficient to support this Court's exercise of personal jurisdiction over them in a manner consistent with the Due Process Clause of the Fourteenth Amendment.  Accordingly, the FAC should be dismissed as to the Added Defendants.

## II.    BACKGROUND

Par's FAC asserts claims of breach of contract and breach of the duty of confidence (Counts VIII, IX, XI, XII, XV) against each of the Added Defendants. (Dkt. 114.) Par further asserts that Mr. Short, Mr. McGrady, and Mr. Hartley

1

breached their duty of loyalty to Par (Count XIV), and that Mr. Short and Ms. Kohut each misappropriated Par's trade secrets (Counts I-III). (Id.)

According to Par, this Court may properly exercise personal jurisdiction over each of the Added Defendants because they allegedly have "substantial and continuing contacts with New Jersey." (Dkt. 114 at ¶ 19). The FAC, however, does not provide any basis for this assertion. In fact, the FAC acknowledges that none of the Added Defendants are domiciled in New Jersey. (Id. at ¶¶ 12-13, 15-16.)

The FAC baldly alleges that jurisdiction is proper because the Added Defendants committed acts that "were expressly aimed at New Jersey, with knowledge that they would cause harm in New Jersey." (Id. at ¶ 19.) The sole allegation underlying this claim is that the Added Defendants, as "[QuVa employees], regularly travel[] to and communicate[] with QuVa employees at QuVa's Bloomsbury, New Jersey facility, and by doing so availed [themselves] of the privileges of New Jersey law." (Id. ¶¶ 12-13, 15-16.) Par admits that each of the Added Defendants' acts were performed "as the agents and/or employees of QuVa and working on its behalf." (Id. at ¶ 17.)

As stated above, the Added Defendants reside in Texas. (Declaration of Travis McGrady, dated March 8, 2018 (hereafter "McGrady Decl.") ¶ 3; Declaration of Donna Kohut, dated March 8, 2018 (hereafter "Kohut Decl.") ¶ 3; Declaration of David Short, dated March 9, 2018 (hereafter "Short Decl.") ¶ 3; Declaration of David

Hartley, dated March 9, 2018 (hereafter "Hartley Decl.") ¶ 3.) 

(Hartley Decl., ¶¶ 4, 6-9; McGrady Decl., ¶¶ 4, 6-8; Short Decl., ¶¶ 4, 6-9.)

(Kohut Decl., ¶¶ 5-8). Ms. Kohut's only other contact with New Jersey is that she owns a vacation property in Ocean City, New Jersey, which she inherited from her mother and visits infrequently. (Id. at ¶ 4.) With respect to the contracts allegedly breached by the Added Defendants, Par has not alleged that there is any connection between those contracts and New Jersey. And in fact, there are none. (Declaration of Stephen R. Howe, dated March 12, 2018 (hereafter "Howe Decl."), Exhibits A-D.; Hartley Decl., ¶ 4; McGrady Decl., ¶ 4; Short Decl., ¶ 4; Kohut Decl., ¶ 5.)

## III. THE COURT LACKS PERSONAL JURISDICTION OVER THE ADDED DEFENDANTS

### A. Legal Standard for Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating contacts with the forum state sufficient to give the court *in personam* jurisdiction." *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 849 (3rd Cir. 2003). Although the court must accept a plaintiff's

allegations as true and construe disputed facts in favor of the plaintiff, the plaintiff may not rely on "bare pleadings," but instead must "establish[] jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). These facts must be based on a defendant's own actions, and not those of a third party. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 93-94 (1978).

Under New Jersey's long-arm statute, personal jurisdiction may be exercised to the extent authorized by the due process clause of the Fourteenth Amendment. *MoneyGram, 65 Fed. Appx.* at 849. Thus, the central inquiry is whether the Added Defendants have sufficient "minimum contacts" with New Jersey such that the maintenance of the suit against them does "not offend traditional notions of fair play and substantial justice." *Id.* at 849-50.

Personal jurisdiction over a non-resident defendant can arise in two ways. General jurisdiction exists where a defendant has such continuous and systematic contacts with the forum state that the defendant is generally subject to personal jurisdiction there without regard to the relationship between the cause of action and the forum. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414-416 (1984). The contacts must be "so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The essential foundation of specific personal jurisdiction is a relationship between the defendants, the forum and the litigation. *Helicopteros,* 466 U.S. at 414. Due process requires that a defendant have "fair warning" that a particular activity will subject him to the jurisdiction of a given state. *Burger King v. Rudzewicz,* 471 U.S. 462, 472 (1985.) This requires that (1) the defendant has purposefully directed his activities at residents of the forum state[1] and (2) that the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* If these two requirements are met, the Court may consider whether the exercise of jurisdiction would offend "notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *Burger King,* 471 U.S. at 476.

With respect to intentional torts, specific jurisdiction can also be found to exist over a defendant only if the tort has a sufficient impact on the forum state. *IMO Industries v. Kiekert AG*, 155 F.3d 254, 259-260 (3rd Cir. 1998). Jurisdiction is proper under this analysis, known as the "*Calder* effects test," only if:

> 1) The defendant committed an intentional tort,
> 2) The plaintiff felt the "brunt" of the harm in forum such that it is the focal point, and
> 3) Defendant expressly aimed tortious conduct at the forum.

*Id*.

---

[1] This standard is also sometimes stated as requiring that a defendant has "purposefully availed himself of the privilege of conducting activities in the forum state." *See Moneygram,* 65 Fed. Appx. 844 at 850, *citing Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Par cannot meet its burden to show personal jurisdiction. Neither general nor specific jurisdiction is present here with respect to any of the Added Defendants, as further explained below.

## B.    There is no General Personal Jurisdiction over the Added Defendants

For general personal jurisdiction to exist over the Added Defendants, Par must prove that Added Defendants have "continuous and systematic" contacts with New Jersey. *See Goodyear*, 564 U.S. at 924. This is a particularly high threshold. The Supreme Court has explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile*." Id.* at 760. None of the Added Defendants have contacts sufficient to meet this high standard, and Par has also not alleged sufficient facts to do so. Therefore, there is no general personal jurisdiction over the Added Defendants.

Par alleges, in conclusory fashion, that this Court has general jurisdiction over the Added Defendants because they have "substantial and continuing contacts with New Jersey." (Dkt. 114 at ¶ 19). Par, however, fails to set forth a single fact demonstrating any such contacts exist. The sole allegation in Par's complaint is that the Added Defendants have each traveled to and communicated with QuVa's Bloomsbury, New Jersey facility during their employment at QuVa. (Dkt. 114 at ¶¶

6

12-13, 15-16.) However, these occasional visits and correspondence do not constitute "substantial and continuing contact," or make any of the Added Defendants essentially at home in New Jersey, as required for general jurisdiction. *See, e.g.*, *Richcourt Allweather Fund, Inc. v. Midanek*, No. 13-4810, 2014 U.S. Dist. LEXIS 54679, at *19 (D.N.J. Apr. 17, 2014) ("In case after case, when an individual conducts business that requires their occasional presence in a state, courts have not found sufficient contact for general jurisdiction."); *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) ("correspondence alone will not establish general jurisdiction."); *see also Am. Centennial Ins. Co. v. Handal,* 901 F.Supp. 892, 898 (D.N.J. 1995).

Not only are Par's bare allegations regarding general jurisdiction insufficient to meet its burden, but no facts exist that would support the exercise of general personal jurisdiction over any of the Added Defendants. As discussed above, general jurisdiction in a given state typically requires that a defendant be domiciled in that state. *Daimler,* 134 S. Ct. 760; *Riedl v. McConchie*, No. 14-3925, 2015 U.S. Dist. LEXIS 60309, at *5-6 n.3 (D.N.J. May 8, 2015). Each of the Added Defendants are domiciled in Texas, and Par has admitted as much. (Dkt. 114 at ¶¶ 12-13, 15-16.) Furthermore, none of the Added Defendants are registered to vote in New Jersey or possess a New Jersey drivers' license. (Hartley Decl., ¶ 3; McGrady Decl., ¶ 3; Short

7

Decl., ¶ 3; Kohut Decl., ¶ 3.) And with the exception of Ms. Kohut,[2] none of the added Defendants own any real estate in New Jersey. (Hartley Decl., ¶ 6; McGrady Decl., ¶ 6; Short Decl., ¶ 6.)

Thus, none of the Added Defendants are "essentially at home" in New Jersey, and Par cannot meet its burden in this regard with bare allegations that the Added Defendants' contacts are substantial and continuing. *See Time Share*, 735 F.2d at 66 n.9. There is no general jurisdiction over the Added Defendants in New Jersey.

### C. There is no Specific Personal Jurisdiction over the Added Defendants

#### 1. None of the Added Defendants has Purposefully Directed any Activities at New Jersey

Specific jurisdiction is also not present. None of the Added Defendants have purposefully directed any activities at New Jersey, which is required for specific jurisdiction to properly lie. *Burger King,* 471 U.S. at 472.

First, the contracts allegedly breached by the Added Defendants do not provide any basis for the exercise of personal jurisdiction against them. Par does not

---

[2] The fact that Ms. Kohut owns a vacation home in Ocean City, New Jersey that she inherited from her mother and occasionally visits also does not satisfy the requirements for general jurisdiction. "Courts that have considered [this] issue have determined that ownership of a vacation house, coupled with occasional trips to the forum state is not sufficient to confer general jurisdiction." *Richcourt*, 2014 U.S. Dist. LEXIS 54679, at *12-13.

allege (nor can it) that those contracts have any relationship whatsoever to New Jersey:

- Par is not incorporated or headquartered in New Jersey. (Dkt. 114 ¶¶ 6-7.)

- Defendants David Short, Mike Hartley and Travis McGrady were employed by Par at its Rochester, Michigan site, and the contracts were presented to them and subsequently executed there. (Hartley Decl., ¶ 4; McGrady Decl., ¶ 4; Short Decl., ¶ 4.)

- Defendant Donna Kohut was a consultant for Par on an occasional basis at the Rochester facility. (Kohut Decl., ¶ 5.) Her "employment agreement" was neither presented to her nor executed in New Jersey.[3] (*Id.*)

Thus, New Jersey is entirely unrelated to the contracts at issue. (Howe Decl., Exs. A-D.)[4] Specific jurisdiction based on them is not proper.

This leaves only Par's allegation that personal jurisdiction is proper because each Added Defendant "[as a QuVa employee], regularly travels to and communicates with QuVa employees at QuVa's Bloomsbury, New Jersey facility,"

---

[3] Ms. Kohut also asserts that since she was never employed by Par other than as a consultant, her employment agreement is not valid, and cannot form the basis for a cause of action against her if in fact this Court finds she is subject to personal jurisdiction in New Jersey. (See Motion to Dismiss Count VIII of the Amended Complaint, filed concurrently.)

[4] Including the contracts as exhibits is appropriate since Par's claims against the Added Defendants relies on the contracts: "where the complaint explicitly refers to or relies upon a document, and the defendant attaches an undisputedly authentic copy of that document as an exhibit to a motion to dismiss, the Court may consider that document in deciding the motion under the incorporation by reference doctrine." *Hayes v. Wachovia Mortg., FSB*, No. 11-1622, 2011 LEXIS 121802, at *4-5 (D.N.J. Oct. 21, 2011).

and by doing so availed himself or herself of the privileges of New Jersey law. (Dkt. No. 114 at ¶¶ 12, 13, 15, 16.) This is also insufficient.

As Par admits, ███████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ (Hartley Decl., ¶¶ 6-9; McGrady Decl., ¶¶ 6-8; Short Decl., ¶¶ 6-9; Kohut Decl., ¶¶ 6-8.) It is well established that these activities, performed pursuant to the Added Defendants' employment, do not constitute purposeful direction of any activities on their part. *See Bangura v. Pennrose Mgmt. Co.*, No. 9-4017, 2010 U.S. Dist. LEXIS 59450, *9-10 (D.N.J. June 15, 2010); *Goodman v. Goodman*, No. 04-03869, 2010 U.S. Dist. LEXIS 20518, at *16 (D.N.J. Mar. 5, 2010); *Knierim v. Siemens Corp.*, No. 06-4935, 2008 U.S. Dist. LEXIS 26571, at *20-23 (D.N.J. Mar. 31, 2008).

The fact that QuVa chose to purchase a New Jersey facility and ████████ ██████████████████████████████████████████████ is purely fortuitous from the Added Defendants' perspective, and therefore cannot support specific jurisdiction over these individuals. *See Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.")

This issue has been previously analyzed by the Third Circuit on a very similar set of facts, with the court finding that such circumstances cannot support exercise

of personal jurisdiction. *MoneyGram*, 65 Fed. Appx. at 845-850. In *MoneyGram*, a plaintiff sued a corporation, as well as several of its employees in their individual capacities, for breach of contract and related tort claims. *Id*. Plaintiff argued that although the individuals lived and primarily worked outside of New Jersey, the Court could exercise personal jurisdiction over them because they regularly visited New Jersey as part of their job. *Id*. The court rejected this argument, and drew a distinction between purposeful activity by a defendant and activity done at the request of the employer. *Id*. at 850. The Court found that Plaintiff's argument was nothing more than an "attempt to ensnare [the individual defendants] in a jurisdictional web by reciting [the corporate defendant's] contacts with New Jersey." According to the Court, this "both ignores and obfuscates [the corporate defendant's] separate legal identity," and while the complaint "asserted a sufficient basis for *in personam* jurisdiction over [the corporate defendant] . . . [it] falls woefully short of establishing the nexus necessary to extend that jurisdiction to [the individual defendants]." *Id*.

In the FAC, Par improperly attempts to conflate personal jurisdiction over QuVa, the Added Defendants' employer, with personal jurisdiction over the Added Defendants. Par alleges that personal jurisdiction over the Added Defendants is proper because they "have acted and are presently acting as the agents and/or employees of QuVa and working on their behalf." (Dkt. 114 at ¶¶ 12-13, 15-17.)

11

However, Par's allegations fail because jurisdiction over an employee "does not automatically follow from jurisdiction over the corporation which employs him, . . . each defendant's contacts must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 1482 (1984).  A court cannot obtain specific jurisdiction over one defendant based on "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475. When the proper test is conducted using the correct legal standard, it is clear that the Added Defendants have not purposefully directed any activities against the state of New Jersey in their individual capacities.

## 2.   There is no Personal Jurisdiction under the "Calder Effects Test"

Finally, there is no personal jurisdiction with respect to any intentional torts allegedly committed by the Added Defendants under the "*Calder* effects test." The brunt of the alleged harm is not felt in New Jersey, and the Added Defendants did not intentionally expressly aim tortious conduct at New Jersey. *See IMO,* 155 F.3d at 259-260.

The brunt of the harm caused by misappropriation of trade secrets is considered to be felt where the trade secrets reside, i.e., where the plaintiff is headquartered or incorporated. *Gov't Emples. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 166 (E.D. Pa. 2017) ("It is well-established that any trade secrets possessed by

12

an owner are possessed where the trade-secret owner is a resident. This rule of law has led courts to find the 'brunt of the harm,' under *Calder*, to occur in the states where the trade-secret owner is incorporated or headquartered.) As Plaintiffs admit in the FAC, Par Sterile is a Delaware limited liability company, while Par Pharmaceuticals is a New York corporation. (Dkt. 114 at ¶¶ 6-7.) Both are headquartered in Chestnut Ridge, New York. (*Id.*) Thus, as a matter of law, the brunt of the harm for any claim arising out of the alleged use/disclosure of trade secrets was felt some place other than New Jersey.

Similarly, the brunt of the harm for the other intentional torts alleged in the FAC is not felt in New Jersey. Again, Par has no corporate presence in New Jersey. It is not enough for Par to claim that it was harmed to some extent in New Jersey. It must prove that the *brunt* of the harm was felt there. *See IMO*, 155 F.3d at 263. Par cannot credibly assert that this is the case.

In addition, for the reasons set forth above in Section III.C.1., none of the Added Defendants has expressly aimed tortious conduct at New Jersey. Any activities by the Added Defendants in New Jersey were performed as a result of their employment by QuVa. *See Moneygram,* 65 Fed. App'x at 851.

## IV.   CONCLUSION

Since there is no general or specific jurisdiction over the Added Defendants with respect to the FAC, each Added Defendant respectfully requests that this Court

13

dismiss the FAC as to him or her.

<u>s/ Stephen M. Orlofsky</u>

Stephen M. Orlofsky
David C. Kistler
New Jersey Resident Partners
Leigh Ann Buziak
**BLANK ROME LLP**
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone:  (609) 750-7700
Facsimile:  (609) 750-7701
Orlofsky@BlankRome.com
Kistler@BlankRome.com
LBuziak@BlankRome.com

Jeffrey S. Ward (*pro hac vice*)
Wendy M. Ward (*pro hac vice*)
Stephen R. Howe (*pro hac vice*)
Emily M. Wessels *(pro hac vice)*
**MERCHANT & GOULD, P.C.**
10 East Doty Street, Suite 600
Madison, WI 53703
Telephone:  (608) 280-6750
*Attorneys for Defendants*

Dated:  March 12, 2018

**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky, Esquire
David C. Kistler, Esquire
Leigh Ann Buziak, Esquire
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Orlofsky@blankrome.com
Kistler@blankrome.com
LBuziak@blankrome.com
*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**
Jeffrey S. Ward (*admitted pro hac vice*)
Wendy M. Ward (*admitted pro hac vice*)
Stephen R. Howe (*admitted pro hac vice*)
Emily Wessels (*admitted pro hac vice*)
10 E. Doty Street, Suite 600
Madison, WI  53703
Telephone:  (608) 280-6751
Facsimile:  (612) 332-9081
JWard@MerchantGould.com
WWard@MerchantGould.com
SHowe@MerchantGould.com
EWessels@MerchantGould.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAR PHARMACEUTICAL, INC. and PAR STERILE PRODUCTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI, DONNA KOHUT, TRAVIS MCGRADY, DAVID HARTLEY, and DAVID SHORT<br><br>Defendants. | Civil Action No. 3:17-06115-BRM-DEA<br><br>*Filed Electronically*<br><br>**CONFIDENTIAL**<br><br>**FILED UNDER SEAL** |

## DECLARATION OF STEPHEN R. HOWE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AGAINST DONNA KOHUT, TRAVIS MCGRADY, DAVID HARTLEY, AND DAVID SHORT

I, Stephen R. Howe, Esq., declare as follows:

1.     I am an attorney-at-law and associate at the law firm Merchant & Gould, P.C.

2.     I am admitted to practice in the states of Illinois and Wisconsin.

3.     I am making this declaration in support of Defendants' Motion to Dismiss the Amended Complaint Against Donna Kohut, Travis McGrady, David Hartley, and David Short.

4.     Attached hereto as Exhibit A is a true and correct copy of the document produced by Par in this litigation bearing bates numbers Par-0001767-770.

5.     Attached hereto as Exhibit B is a true and correct copy of the document produced by Par in this litigation bearing bates numbers Par-0001805-807.

6.     Attached hereto as Exhibit C is a true and correct copy of the document produced by Par in this litigation bearing bates numbers Par-0003463-465.

7.     Attached hereto as Exhibit D is a true and correct copy of the document produced by Par in this litigation bearing bates numbers Par-0001780-783.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 12, 2018.

_____

Stephen R. Howe, Esq.

# EXHIBIT A



## TRADE SECRET, NON-DISCLOSURE AND
## RESTRICTIVE COVENANT AGREEMENT

In consideration of your continuing employment by Par Pharmaceutical, Inc. or any of its affiliates (collectively, "Par"), you agree as follows:

1.     As part of your employment at Par, you acknowledge that you have had and will continue to have access to Par's confidential and trade secret information, including formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Par's Proprietary Information"), and that such information is of a confidential and secret character and is vital to the continued success of Par's business.   You further acknowledge that, in order to guard the legitimate interest of Par in such information, it is necessary to Par to protect such information by holding it secret and confidential.

2.     Prior to your employment with Par, you may have been employed by one or more companies or organizations that are not affiliated with Par (each, a "Former Employer").

     a.     During your employment with any Former Employer, you may have learned or acquired knowledge about such Former Employer's confidential and secret information, including without limitation   formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Former Employer's Proprietary Information").   You agree that upon termination of your employment with such Former Employer, you delivered to such Former Employer all property that you were obligated to return.   To guard the legitimate interest of Par, you agree that you have not and will not divulge to anyone at Par, nor use for any purpose whatsoever, including your required duties here at Par, any Former Employer's Proprietary Information or any other non-public information of any Former Employer which information you know or reasonably believe is such Former Employer's Proprietary Information or non-public information of such Former Employer.

     b.     During your employment with any Former Employer, you may have signed agreements related to the Former Employer's Proprietary Information and/or non-competition. You acknowledge and represent that you have disclosed to Par any and all such agreements. You represent that any agreement you may have with any Former Employer does not prevent you from being employed by Par provided you abide by the terms of your agreement(s).   You

Rev. 01/2015
Existing Employees
Page 1 of 3

CONFIDENTIAL                                                          Par-0001767

agree strictly to comply with all of the terms of any such agreement(s). You further represent that you have not signed any non-competition or other contract that prohibits you from being employed by Par or assigning right, title, and interest in Work Product to Par as per paragraph 4 below.

3.    You agree that during your employment with Par and at all times thereafter, regardless of the reason for your termination of employment, you will use Par's Proprietary Information solely in the course of your duties for Par and solely for the benefit of Par and not for any other purpose whatsoever, whether or not such Par Proprietary Information is produced by your own efforts. You agree not to divulge, disclose, or communicate to anyone or any entity, directly or indirectly either during or after the termination of your employment with Par, any of Par's Proprietary Information, and agree not to use Par's Proprietary Information in your required duties for any subsequent employer. Upon the termination of your employment, or upon request, you agree forthwith to deliver to Par all of Par's property in your possession or under your custody and control, and all notebooks, documents, records and other data or information in whatever form and on whatever media that pertain to Par's Proprietary Information. You further agree not to retain any copies, in any format, of those materials.

4.    You agree that Par shall own all ideas, inventions, methods, know-how, discoveries, processes, works of authorship, designs, analyses, drawings, reports, trademarks, service marks, slogans, logos, trade dress, and technical or business innovations, including computer software that: (i) were made or conceived by you during the period of your employment (whether or not during regular working hours); and/or (ii) arose out of or with the use of Par facilities, equipment, supplies, funds, financing, materials, Par's Proprietary Information, or personnel (either solely or jointly, whether during the period of your employment or at any time thereafter) ("Work Product"). You further agree that you shall exclusively grant to Par all royalty rights to such Work Product and hereby irrevocably assign to Par all proprietary rights therein, based thereon, or related thereto (including, but not limited to, applications for United States and foreign letters patent and resulting letters patent, all other forms of registered or otherwise enforceable intellectual property, supplementary protection certificates, inchoate patent rights, know-how, and trade secrets). Further, at Par's request and expense, you shall execute such documents and provide such assistance as may be deemed necessary by Par to have assigned, apply for, defend, or enforce any United States and foreign letters patent or any and all other registered or otherwise enforceable intellectual property or confidential or proprietary information based on or related to such inventions. Finally, unless expressly set forth in detail and in an attachment hereto, you waive any and all rights to claim that any Work Product has been made, acquired, conceived, or reduced to practice prior to your employment by Par and are therefore not subject to the terms and conditions of this Agreement.

5.    You agree that, for a period of one (1) year following termination of your employment with Par for any reason, voluntary or involuntary, with or without cause (or following the entry of judgment in a court of competent jurisdiction enforcing Par's rights hereunder), you shall not directly or indirectly (1) interfere with Par's employees; (2) solicit, induce, encourage or attempt to solicit, induce or encourage any employee of Par to leave his/her employment with Par; or (3)

CONFIDENTIAL                                                     

hire, attempt to hire, assist in the hire or, or attempt to assist in the hire of an employee of Par. You agree that the temporal restrictions set forth in this Section are fair and are reasonably required to protect Par's legitimate business interests.

6.     You acknowledge that your failure to abide by this Agreement will result in immediate and irreparable damage to Par, will entitle Par to injunctive relief from a court having appropriate jurisdiction, and is grounds for immediate termination of your employment with Par.  In the event that Par seeks injunctive relief hereunder and is successful in obtaining such relief, you agree to pay any and all court costs, filing fees, discovery expenses, and reasonable attorney's fees incurred by Par in enforcing its rights hereunder.

7.     You agree that this Agreement will be interpreted and construed in accordance with the laws of the State of New York, without applying New York's choice of law provisions. Should any portion of this Agreement by judicially held to be invalid, unenforceable or void, such holding(s) shall not have the effect of invalidating or voiding the remainder of this Agreement.

8.     This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matters herein and supersedes all prior oral or written agreements, negotiations, and understandings relating to the subject matters herein. If, however, it is determined by a court or other competent authority that the terms of paragraph 4 do not apply to particular ideas, inventions, etc., the most recently executed agreement related to the subject matter herein shall govern. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

The undersigned employee acknowledges reading, understanding, agreeing to and receiving a signed copy of this Agreement.

09 MAR 2015
_____
Date

_____
Company Officer or Witness

David Hartley
_____
Employee Name

_____
Employee Signature

Technical Support
_____
Department Name and Number

Rev. 01/2015
Existing Employees
Page 3 of 3

CONFIDENTIAL                                                                          Par-0001769



## APPENDIX A
### CERTIFICATION

I hereby acknowledge that I have received, read, understood, and shall abide by this:

- CODE OF CONDUCT

- PAR'S POLICIES AND PROCEDURES.

I agree to comply fully with the standards set forth in this Code of Conduct and all laws, rules, and regulations that may be applicable.

I understand that I have an obligation to report any violations or potential violations of this Code of Conduct and related policies and procedures. I confirm that if I should learn of information suggesting a violation or potential violation of this Code or its related policies and procedures, I shall immediately use one of the reporting channels provided in this Code to advise Par of my knowledge and suspicion.

Signature: _____  Date: _09 MAR 2015_

Print Name: _David Hartley_

Employee ID: _000357_

# EXHIBIT B



## TRADE SECRET, NON-DISCLOSURE AND
## RESTRICTIVE COVENANT AGREEMENT

In consideration of your continuing employment by Par Pharmaceutical, Inc. or any of its affiliates (collectively, "Par"), you agree as follows:

1.      As part of your employment at Par, you acknowledge that you have had and will continue to have access to Par's confidential and trade secret information, including formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Par's Proprietary Information"), and that such information is of a confidential and secret character and is vital to the continued success of Par's business. You further acknowledge that, in order to guard the legitimate interest of Par in such information, it is necessary to Par to protect such information by holding it secret and confidential.

2.      Prior to your employment with Par, you may have been employed by one or more companies or organizations that are not affiliated with Par (each, a "Former Employer").

        a.      During your employment with any Former Employer, you may have learned or acquired knowledge about such Former Employer's confidential and secret information, including without limitation formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Former Employer's Proprietary Information"). You agree that upon termination of your employment with such Former Employer, you delivered to such Former Employer all property that you were obligated to return. To guard the legitimate interest of Par, you agree that you have not and will not divulge to anyone at Par, nor use for any purpose whatsoever, including your required duties here at Par, any Former Employer's Proprietary Information or any other non-public information of any Former Employer which information you know or reasonably believe is such Former Employer's Proprietary Information or non-public information of such Former Employer.

        b.      During your employment with any Former Employer, you may have signed agreements related to the Former Employer's Proprietary Information and/or non-competition. You acknowledge and represent that you have disclosed to Par any and all such agreements. You represent that any agreement you may have with any Former Employer does not prevent you from being employed by Par provided you abide by the terms of your agreement(s). You

Rev. 01/2015
Existing Employees
Page 1 of 3

agree strictly to comply with all of the terms of any such agreement(s). You further represent that you have not signed any non-competition or other contract that prohibits you from being employed by Par or assigning right, title, and interest in Work Product to Par as per paragraph 4 below.

3.    You agree that during your employment with Par and at all times thereafter, regardless of the reason for your termination of employment, you will use Par's Proprietary Information solely in the course of your duties for Par and solely for the benefit of Par and not for any other purpose whatsoever, whether or not such Par Proprietary Information is produced by your own efforts. You agree not to divulge, disclose, or communicate to anyone or any entity, directly or indirectly either during or after the termination of your employment with Par, any of Par's Proprietary Information, and agree not to use Par's Proprietary Information in your required duties for any subsequent employer. Upon the termination of your employment, or upon request, you agree forthwith to deliver to Par all of Par's property in your possession or under your custody and control, and all notebooks, documents, records and other data or information in whatever form and on whatever media that pertain to Par's Proprietary information. You further agree not to retain any copies, in any format, of those materials.

4.    You agree that Par shall own all ideas, inventions, methods, know-how, discoveries, processes, works of authorship, designs, analyses, drawings, reports, trademarks, service marks, slogans, logos, trade dress, and technical or business innovations, including computer software that: (i) were made or conceived by you during the period of your employment (whether or not during regular working hours); and/or (ii) arose out of or with the use of Par facilities, equipment, supplies, funds, financing, materials, Par's Proprietary Information, or personnel (either solely or jointly, whether during the period of your employment or at any time thereafter) ("Work Product"). You further agree that you shall exclusively grant to Par all royalty rights to such Work Product and hereby irrevocably assign to Par all proprietary rights therein, based thereon, or related thereto (including, but not limited to, applications for United States and foreign letters patent and resulting letters patent, all other forms of registered or otherwise enforceable intellectual property, supplementary protection certificates, inchoate patent rights, know-how, and trade secrets). Further, at Par's request and expense, you shall execute such documents and provide such assistance as may be deemed necessary by Par to have assigned, apply for, defend, or enforce any United States and foreign letters patent or any and all other registered or otherwise enforceable intellectual property or confidential or proprietary information based on or related to such inventions. Finally, unless expressly set forth in detail and in an attachment hereto, you waive any and all rights to claim that any Work Product has been made, acquired, conceived, or reduced to practice prior to your employment by Par and are therefore not subject to the terms and conditions of this Agreement.

5.    You agree that, for a period of one (1) year following termination of your employment with Par for any reason, voluntary or involuntary, with or without cause (or following the entry of judgment in a court of competent jurisdiction enforcing Par's rights hereunder), you shall not directly or indirectly (i) interfere with Par's employees; (2) solicit, induce, encourage or attempt to solicit, induce or encourage any employee of Par to leave his/her employment with Par; or (3)

Rev. 01/2015
Existing Employees
Page 2 of 3

CONFIDENTIAL

hire, attempt to hire, assist in the hire or, or attempt to assist in the hire of an employee of Par. You agree that the temporal restrictions set forth in this Section are fair and are reasonably required to protect Par's legitimate business interests.

6.      You acknowledge that your failure to abide by this Agreement will result in immediate and irreparable damage to Par, will entitle Par to injunctive relief from a court having appropriate jurisdiction, and is grounds for immediate termination of your employment with Par.  In the event that Par seeks injunctive relief hereunder and is successful in obtaining such relief, you agree to pay any and all court costs, filing fees, discovery expenses, and reasonable attorney's fees incurred by Par in enforcing its rights hereunder.

7.      You agree that this Agreement will be interpreted and construed in accordance with the laws of the State of New York, without applying New York's choice of law provisions.  Should any portion of this Agreement by judicially held to be invalid, unenforceable or void, such holding(s) shall not have the effect of invalidating or voiding the remainder of this Agreement.

8.      This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matters herein and supersedes all prior oral or written agreements, negotiations, and understandings relating to the subject matters herein. If, however, it is determined by a court or other competent authority that the terms of paragraph 4 do not apply to particular ideas, inventions, etc., the most recently executed agreement related to the subject matter herein shall govern. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

The undersigned employee acknowledges reading, understanding, agreeing to and receiving a signed copy of this Agreement.

_March 2, 2015_
Date

_Signature_
Company Officer or Witness

_Donna M Kohut_
Employee Name

_Donna M Kohut_
Employee Signature

_PSO Consultant/Contractor_
Department Name and Number

Rev. 01/2015
Existing Employees
Page 3 of 3

CONFIDENTIAL

# EXHIBIT C



## TRADE SECRET, NON-DISCLOSURE AND
## RESTRICTIVE COVENANT AGREEMENT

In consideration of your continuing employment by Par Pharmaceutical, Inc. or any of its affiliates (collectively, "Par"), you agree as follows:

1.    As part of your employment at Par, you acknowledge that you have had and will continue to have access to Par's confidential and trade secret information, including formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Par's Proprietary Information"), and that such information is of a confidential and secret character and is vital to the continued success of Par's business.  You further acknowledge that, in order to guard the legitimate interest of Par in such information, it is necessary to Par to protect such information by holding it secret and confidential.

2.    Prior to your employment with Par, you may have been employed by one or more companies or organizations that are not affiliated with Par (each, a "Former Employer").

    a.    During your employment with any Former Employer, you may have learned or acquired knowledge about such Former Employer's confidential and secret information, including without limitation   formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Former Employer's Proprietary Information").  You agree that upon termination of your employment with such Former Employer, you delivered to such Former Employer all property that you were obligated to return.  To guard the legitimate interest of Par, you agree that you have not and will not divulge to anyone at Par, nor use for any purpose whatsoever, including your required duties here at Par, any Former Employer's Proprietary Information or any other non-public information of any Former Employer which information you know or reasonably believe is such Former Employer's Proprietary Information or non-public information of such Former Employer.

    b.    During your employment with any Former Employer, you may have signed agreements related to the Former Employer's Proprietary Information and/or non-competition.  You acknowledge and represent that you have disclosed to Par any and all such agreements.  You represent that any agreement you may have with any Former Employer does not prevent you from being employed by Par provided you abide by the terms of your agreement(s).  You

Rev. 01/2015
Existing Employees
Page 1 of 3

CONFIDENTIAL

Par-0003463

agree strictly to comply with all of the terms of any such agreement(s). You further represent that you have not signed any non-competition or other contract that prohibits you from being employed by Par or assigning right, title, and interest in Work Product to Par as per paragraph 4 below.

3.      You agree that during your employment with Par and at all times thereafter, regardless of the reason for your termination of employment, you will use Par's Proprietary Information solely in the course of your duties for Par and solely for the benefit of Par and not for any other purpose whatsoever, whether or not such Par Proprietary Information is produced by your own efforts. You agree not to divulge, disclose, or communicate to anyone or any entity, directly or indirectly either during or after the termination of your employment with Par, any of Par's Proprietary Information, and agree not to use Par's Proprietary Information in your required duties for any subsequent employer. Upon the termination of your employment, or upon request, you agree forthwith to deliver to Par all of Par's property in your possession or under your custody and control, and all notebooks, documents, records and other data or information in whatever form and on whatever media that pertain to Par's Proprietary information. You further agree not to retain any copies, in any format, of those materials.

4.      You agree that Par shall own all ideas, inventions, methods, know-how, discoveries, processes, works of authorship, designs, analyses, drawings, reports, trademarks, service marks, slogans, logos, trade dress, and technical or business innovations, including computer software that: (i) were made or conceived by you during the period of your employment (whether or not during regular working hours); and/or (ii) arose out of or with the use of Par facilities, equipment, supplies, funds, financing, materials, Par's Proprietary Information, or personnel (either solely or jointly, whether during the period of your employment or at any time thereafter) ("Work Product"). You further agree that you shall exclusively grant to Par all royalty rights to such Work Product and hereby irrevocably assign to Par all proprietary rights therein, based thereon, or related thereto (including, but not limited to, applications for United States and foreign letters patent and resulting letters patent, all other forms of registered or otherwise enforceable intellectual property, supplementary protection certificates, inchoate patent rights, know-how, and trade secrets). Further, at Par's request and expense, you shall execute such documents and provide such assistance as may be deemed necessary by Par to have assigned, apply for, defend, or enforce any United States and foreign letters patent or any and all other registered or otherwise enforceable intellectual property or confidential or proprietary information based on or related to such inventions. Finally, unless expressly set forth in detail and in an attachment hereto, you waive any and all rights to claim that any Work Product has been made, acquired, conceived, or reduced to practice prior to your employment by Par and are therefore not subject to the terms and conditions of this Agreement.

5.      You agree that, for a period of one (1) year following termination of your employment with Par for any reason, voluntary or involuntary, with or without cause (or following the entry of judgment in a court of competent jurisdiction enforcing Par's rights hereunder), you shall not directly or indirectly (1) interfere with Par's employees; (2) solicit, induce, encourage or attempt to solicit, induce or encourage any employee of Par to leave his/her employment with Par; or (3)

Rev. 01/2015
Existing Employees
Page 2 of 3

CONFIDENTIAL

hire, attempt to hire, assist in the hire or, or attempt to assist in the hire of an employee of Par. You agree that the temporal restrictions set forth in this Section are fair and are reasonably required to protect Par's legitimate business interests.

6.      You acknowledge that your failure to abide by this Agreement will result in immediate and irreparable damage to Par, will entitle Par to injunctive relief from a court having appropriate jurisdiction, and is grounds for immediate termination of your employment with Par.  In the event that Par seeks injunctive relief hereunder and is successful in obtaining such relief, you agree to pay any and all court costs, filing fees, discovery expenses, and reasonable attorney's fees incurred by Par in enforcing its rights hereunder.

7.      You agree that this Agreement will be interpreted and construed in accordance with the laws of the State of New York, without applying New York's choice of law provisions.  Should any portion of this Agreement by judicially held to be invalid, unenforceable or void, such holding(s) shall not have the effect of invalidating or voiding the remainder of this Agreement.

8.      This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matters herein and supersedes all prior oral or written agreements, negotiations, and understandings relating to the subject matters herein.  If, however, it is determined by a court or other competent authority that the terms of paragraph 4 do not apply to particular ideas, inventions, etc., the most recently executed agreement related to the subject matter herein shall govern.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

The undersigned employee acknowledges reading, understanding, agreeing to and receiving a signed copy of this Agreement.

| | |
|---|---|
| 02 MAR 2015 | Travis McGrady |
| Date | Employee Name |
| | |
| cmut 03/04/15 | T M |
| Company Officer or Witness | Employee Signature |
| | |
| | Quality Assurance |
| | Department Name and Number |

Rev. 01/2015
Existing Employees
Page 3 of 3

CONFIDENTIAL                                                                                   Par-0003465

# EXHIBIT D



## TRADE SECRET, NON-DISCLOSURE AND
## RESTRICTIVE COVENANT AGREEMENT

In consideration of your continuing employment by Par Pharmaceutical, Inc. or any of its affiliates (collectively, "Par"), you agree as follows:

1.      As part of your employment at Par, you acknowledge that you have had and will continue to have access to Par's confidential and trade secret information, including formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Par's Proprietary Information"), and that such information is of a confidential and secret character and is vital to the continued success of Par's business.  You further acknowledge that, in order to guard the legitimate interest of Par in such information, it is necessary to Par to protect such information by holding it secret and confidential.

2.      Prior to your employment with Par, you may have been employed by one or more companies or organizations that are not affiliated with Par (each, a "Former Employer").

        a.      During your employment with any Former Employer, you may have learned or acquired knowledge about such Former Employer's confidential and secret information, including without limitation   formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identify of customers including customer lists ("Former Employer's Proprietary Information").  You agree that upon termination of your employment with such Former Employer, you delivered to such Former Employer all property that you were obligated to return.  To guard the legitimate interest of Par, you agree that you have not and will not divulge to anyone at Par, nor use for any purpose whatsoever, including your required duties here at Par, any Former Employer's Proprietary Information or any other non-public information of any Former Employer which information you know or reasonably believe is such Former Employer's Proprietary Information or non-public information of such Former Employer.

        b.      During your employment with any Former Employer, you may have signed agreements related to the Former Employer's Proprietary Information and/or non-competition.  You acknowledge and represent that you have disclosed to Par any and all such agreements.  You represent that any agreement you may have with any Former Employer does not prevent you from being employed by Par provided you abide by the terms of your agreement(s).  You

Rev. 01/2015
Existing Employees
Page 1 of 3

Par-0001780

agree strictly to comply with all of the terms of any such agreement(s). You further represent that you have not signed any non-competition or other contract that prohibits you from being employed by Par or assigning right, title, and interest in Work Product to Par as per paragraph 4 below.

3. You agree that during your employment with Par and at all times thereafter, regardless of the reason for your termination of employment, you will use Par's Proprietary Information solely in the course of your duties for Par and solely for the benefit of Par and not for any other purpose whatsoever, whether or not such Par Proprietary Information is produced by your own efforts. You agree not to divulge, disclose, or communicate to anyone or any entity, directly or indirectly either during or after the termination of your employment with Par, any of Par's Proprietary Information, and agree not to use Par's Proprietary Information in your required duties for any subsequent employer. Upon the termination of your employment, or upon request, you agree forthwith to deliver to Par all of Par's property in your possession or under your custody and control, and all notebooks, documents, records and other data or information in whatever form and on whatever media that pertain to Par's Proprietary information. You further agree not to retain any copies, in any format, of those materials.

4. You agree that Par shall own all ideas, inventions, methods, know-how, discoveries, processes, works of authorship, designs, analyses, drawings, reports, trademarks, service marks, slogans, logos, trade dress, and technical or business innovations, including computer software that: (i) were made or conceived by you during the period of your employment (whether or not during regular working hours); and/or (ii) arose out of or with the use of Par facilities, equipment, supplies, funds, financing, materials, Par's Proprietary Information, or personnel (either solely or jointly, whether during the period of your employment or at any time thereafter) ("Work Product"). You further agree that you shall exclusively grant to Par all royalty rights to such Work Product and hereby irrevocably assign to Par all proprietary rights therein, based thereon, or related thereto (including, but not limited to, applications for United States and foreign letters patent and resulting letters patent, all other forms of registered or otherwise enforceable intellectual property, supplementary protection certificates, inchoate patent rights, know-how, and trade secrets). Further, at Par's request and expense, you shall execute such documents and provide such assistance as may be deemed necessary by Par to have assigned, apply for, defend, or enforce any United States and foreign letters patent or any and all other registered or otherwise enforceable intellectual property or confidential or proprietary information based on or related to such inventions. Finally, unless expressly set forth in detail and in an attachment hereto, you waive any and all rights to claim that any Work Product has been made, acquired, conceived, or reduced to practice prior to your employment by Par and are therefore not subject to the terms and conditions of this Agreement.

5. You agree that, for a period of one (1) year following termination of your employment with Par for any reason, voluntary or involuntary, with or without cause (or following the entry of judgment in a court of competent jurisdiction enforcing Par's rights hereunder), you shall not directly or indirectly (1) interfere with Par's employees; (2) solicit, induce, encourage or attempt to solicit, induce or encourage any employee of Par to leave his/her employment with Par; or (3)

Rev. 01/2015
Existing Employees
Page 2 of 3

hire, attempt to hire, assist in the hire or, or attempt to assist in the hire of an employee of Par. You agree that the temporal restrictions set forth in this Section are fair and are reasonably required to protect Par's legitimate business interests.

6.      You acknowledge that your failure to abide by this Agreement will result in immediate and irreparable damage to Par, will entitle Par to injunctive relief from a court having appropriate jurisdiction, and is grounds for immediate termination of your employment with Par. In the event that Par seeks injunctive relief hereunder and is successful in obtaining such relief, you agree to pay any and all court costs, filing fees, discovery expenses, and reasonable attorney's fees incurred by Par in enforcing its rights hereunder.

7.      You agree that this Agreement will be interpreted and construed in accordance with the laws of the State of New York, without applying New York's choice of law provisions. Should any portion of this Agreement by judicially held to be invalid, unenforceable or void, such holding(s) shall not have the effect of invalidating or voiding the remainder of this Agreement.

8.      This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matters herein and supersedes all prior oral or written agreements, negotiations, and understandings relating to the subject matters herein. If, however, it is determined by a court or other competent authority that the terms of paragraph 4 do not apply to particular ideas, inventions, etc., the most recently executed agreement related to the subject matter herein shall govern. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

The undersigned employee acknowledges reading, understanding, agreeing to and receiving a signed copy of this Agreement.

06 Mar 2015

Date

Company Officer or Witness

David Short

Employee Name

David Short

Employee Signature

Quality Systems 5308

Department Name and Number

Rev. 01/2015
Existing Employees
Page 3 of 3

CONFIDENTIAL



## APPENDIX A
### CERTIFICATION

I hereby acknowledge that I have received, read, understood, and shall abide by this:

- CODE OF CONDUCT

- PAR'S POLICIES AND PROCEDURES.

I agree to comply fully with the standards set forth in this Code of Conduct and all laws, rules, and regulations that may be applicable.

I understand that I have an obligation to report any violations or potential violations of this Code of Conduct and related policies and procedures. I confirm that if I should learn of information suggesting a violation or potential violation of this Code or its related policies and procedures, I shall immediately use one of the reporting channels provided in this Code to advise Par of my knowledge and suspicion.

Signature: _David Short_               Date: _06 Mar 2015_

Print Name: _David Short_

Employee ID: _000133_

CONFIDENTIAL                                         Par-0001783

**BLANK ROME LLP**

*A Pennsylvania LLP*

Stephen M. Orlofsky, Esquire

David C. Kistler, Esquire

Leigh Ann Buziak, Esquire

300 Carnegie Center, Suite 220

Princeton, NJ 08540

Tel.: (609) 750-7700

Fax: (609) 750-7701

Email: Orlofsky@blankrome.com

Kistler@blankrome.com

LBuziak@blankrome.com

*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**

Jeffrey S. Ward (*admitted pro hac vice*)

Wendy M. Ward (*admitted pro hac vice*)

Stephen R. Howe (*admitted pro hac vice*)

Emily M. Wessels (*pro hac vice pending*)

10 E. Doty Street, Suite 600

Madison, WI 53703

Tel.: (608) 280-6751

Fax: (612) 332-9081

Email: JWard@MerchantGould.com

WWard@MerchantGould.com

SHowe@MerchantGould.com

EWessels@MerchantGould.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAR PHARMACEUTICAL, INC., and PAR STERILE PRODUCTS, LLC, | : : : | Civil Action No.: 3:17-cv-06115- BRM-DEA |
| Plaintiffs, | : : | **Filed Electronically** |
| v. | : : : | |
| QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI, DONNA KOHUT, DAVID SHORT, STEPHEN RHOADES, TRAVIS MCGRADY and DAVID HARTLEY, | : : : : : : : | **HIGHLY CONFIDENTIAL** **OUTSIDE COUNSELS'** **EYES ONLY** |
| Defendants. | : : | |

## DECLARATION OF DONNA KOHUT IN SUPPORT OF
## MOTION TO DISMISS

I, Donna Kohut, declare as follows:

1.      I am currently the Vice President of Operations and Logistics of QuVa Pharma, Inc. ("QuVa"). I am not a corporate officer of QuVa.

2.      I am making this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. I made a previous declaration in Opposition to Plaintiffs' Motion for Preliminary Injunction dated December 4, 2017, which is hereby incorporated.

3.      I live in Houston, Texas and I work for QuVa at its headquarters in Sugar Land, Texas. I have an Arizona driver's license and I am registered to vote there.

4.      I am originally from the Philadelphia area and after spending many family summers at the Jersey Shore, my mother purchased a beach house in Ocean City, New Jersey. After my mother passed away in 2011, it was decided that I would hold the title to the house, though, living in Texas, I do not get to use it very often and was probably there approximately 10-12 days in 2017. My sisters and their families continue to use and enjoy it, however.

5.      While I was a consultant with Par, the only work I performed for Par occurred at its facility in Rochester, Michigan. I did not do any work for Par in New Jersey, and I never signed or negotiated any agreement with Par in New Jersey.

-2-

6.      All of the rest of my contacts with New Jersey are a result of my employment with QuVa, and all of my contact with New Jersey described in this declaration were at QuVa's request. QuVa has two manufacturing facilities in Texas, one in Sugar Land and one in Temple, Texas and one manufacturing facility in Bloomsbury, New Jersey.

7.      I visited the site initially when QuVa purchased it in late 2016 for an initial site visit. After that, I visited the Bloomsbury facility once a quarter in 2017 ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████ I have not yet been to Bloomsbury in 2018 and, though I would like to visit, it appears my schedule for 2018 is not going to allow time for that.

8.      No one at the Bloomsbury facility officially reports to me, however, I am responsible for ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████

-3-

9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 08 MAR 2018

DONNA KOHUT

**BLANK ROME LLP**

*A Pennsylvania LLP*

Stephen M. Orlofsky, Esquire

David C. Kistler, Esquire

Leigh Ann Buziak, Esquire

300 Carnegie Center, Suite 220

Princeton, NJ  08540

Tel.:  (609) 750-7700

Fax:  (609) 750-7701

Email:  Orlofsky@blankrome.com

        Kistler@blankrome.com

        LBuziak@blankrome.com

*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**

Jeffrey S. Ward (*admitted pro hac vice*)

Wendy M. Ward (*admitted pro hac vice*)

Stephen R. Howe (*admitted pro hac vice*)

Emily M. Wessels (*pro hac vice pending*)

10 E. Doty Street, Suite 600

Madison, WI  53703

Tel.:  (608) 280-6751

Fax:  (612) 332-9081

Email:  JWard@MerchantGould.com

        WWard@MerchantGould.com

        SHowe@MerchantGould.com

        EWessels@MerchantGould.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAR PHARMACEUTICAL, INC., and PAR STERILE PRODUCTS, LLC, | : : : | Civil Action No.: 3:17-cv-06115- BRM-DEA |
| Plaintiffs, | : : | **Filed Electronically** |
| v. | : : : | |
| QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI, DONNA KOHUT, DAVID SHORT, STEPHEN RHOADES, TRAVIS MCGRADY and DAVID HARTLEY, | : : : : : : | **HIGHLY CONFIDENTIAL** <u>**OUTSIDE COUNSELS'**</u> <u>**EYES ONLY**</u> |
| Defendants. | : : | |

## DECLARATION OF DAVID HARTLEY IN SUPPORT OF
## MOTION TO DISMISS

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY

I, David Michael ("Mike") Hartley, declare as follows:

1.      I am the Director of Facilities Engineering at QuVa Pharma, Inc. ("QuVa"). I am not a QuVa corporate officer.

2.      I am making this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. I made a previous declaration in Opposition to Plaintiffs' Motion for Preliminary Injunction dated December 7, 2017, which is hereby incorporated.

3.      I live in Katy, Texas with my family and I work for QuVa at its headquarters in Sugar Land, Texas. I have a Texas driver's license and I am registered to vote there.

4.      When I worked for Par, all of my work had to do with its facility located in Rochester, Michigan. I signed the Par Trade Secret, Non-Disclosure and Restrictive Covenant Agreement in Michigan when it was presented to me there. I never had any contact with New Jersey in the course of my employment with Par.

5.      QuVa currently has three manufacturing facilities. Two are located in Texas, one in Sugar Land and one in Temple, Texas and one manufacturing facility in Bloomsbury, New Jersey.

6.      Any of my contacts with New Jersey have occurred because of my job responsibilities with QuVa, and were made at QuVa's request to accomplish these

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

job responsibilities. Outside of my employment with QuVa, I have not had any

other contacts with New Jersey; I certainly don't own any property there.

7.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████

8.  ████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████████████████

██████████████

9.      The last time I visited Bloomsbury was around August 24, 2017, after

which the scope of my responsibilities for Bloomsbury changed dramatically. I no

longer support the site directly. ████████████████████████████

████████████████████████████

████████████████████████████

████████

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

10.    As I mentioned in my initial Declaration, aside from overseeing a



I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Date: *09MAR2018*

MIKE HARTLEY

**BLANK ROME LLP**

*A Pennsylvania LLP*

Stephen M. Orlofsky, Esquire

David C. Kistler, Esquire

Leigh Ann Buziak, Esquire

300 Carnegie Center, Suite 220

Princeton, NJ 08540

Tel.:  (609) 750-7700

Fax:  (609) 750-7701

Email:  Orlofsky@blankrome.com

  Kistler@blankrome.com

  LBuziak@blankrome.com

*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**

Jeffrey S. Ward (*admitted pro hac vice*)

Wendy M. Ward (*admitted pro hac vice*)

Stephen R. Howe (*admitted pro hac vice*)

Emily M. Wessels (*pro hac vice pending*)

10 E. Doty Street, Suite 600

Madison, WI  53703

Tel.:  (608) 280-6751

Fax: (612) 332-9081

Email:  JWard@MerchantGould.com

  WWard@MerchantGould.com

  SHowe@MerchantGould.com

  EWessels@MerchantGould.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PAR PHARMACEUTICAL, INC., and PAR STERILE PRODUCTS, LLC, | : | Civil Action No. 3:17-cv-06115- BRM-DEA |
|  | : |  |
|  | : |  |
| Plaintiffs, | : | *Filed Electronically* |
|  | : |  |
| v. | : |  |
|  | : |  |
| QUVA PHARMA, INC., *et al.* | : | **HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY** |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## DECLARATION OF DAVID SHORT IN SUPPORT OF
## MOTION TO DISMISS

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

I, David Short, declare as follows:

1.      I am currently the Vice President of Quality at QuVa Pharma, Inc. ("QuVa"). I am not a corporate officer of the company.

2.      I am making this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. I made a previous declaration in Opposition to Plaintiffs' Motion for Preliminary Injunction dated December 5, 2017, which is hereby incorporated.

3.      I live in Sugar Land, Texas with my family and I work for QuVa at its headquarters in Sugar Land, Texas. I have a Texas driver's license and I am registered to vote in Texas.

4.      When I worked for JHP and then Par as a Quality Director, I lived in Michigan and performed all of my work for Par at its Rochester, Michigan site. I visited Par's headquarters in New York a few times, but never visited New Jersey in the course of my work for Par.  The Trade Secret, Non-Disclosure and Restrictive Covenant Agreement I signed with Par was presented to me in Michigan and I signed it there.

5.      ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████ We currently have two facilities in Texas, in Sugar Land and Temple, and one facility in New Jersey, in Bloomsbury.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

6.     Any of the contacts I have had with New Jersey in the past few years are as a result of my job responsibilities at QuVa, and were the result of QuVa's request that I visit or speak with QuVa personnel in New Jersey.

7.     In 2017, I visited the Bloomsbury site approximately once a month as the space within the facility was being built, designed, and we began to hire personnel to staff the site. ███████████████████████ that occurred in late November and into December 2017, ████████████████████████████

████████████████████████████████████████

8.     In 2018, I provided further support ███████████████████

████████████████████████████ I expect to be in Bloomsbury for a week and half per month through March 2018, after which I expect to visit the site approximately once a month for a few days at a time.

9.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████ and I am in telephone contact with the Bloomsbury facility in the course of fulfilling my job responsibilities in that regard.

10.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

████████████████████████████████████████████

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _9/Mai 2018_

_David Short_ (signature)

DAVID SHORT

**BLANK ROME LLP**

*A Pennsylvania LLP*

Stephen M. Orlofsky, Esquire

David C. Kistler, Esquire

Leigh Ann Buziak, Esquire

300 Carnegie Center, Suite 220

Princeton, NJ 08540

Tel.: (609) 750-7700

Fax: (609) 750-7701

Email: Orlofsky@blankrome.com

Kistler@blankrome.com

LBuziak@blankrome.com

*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**

Jeffrey S. Ward (*admitted pro hac vice*)

Wendy M. Ward (*admitted pro hac vice*)

Stephen R. Howe (*admitted pro hac vice*)

Emily M. Wessels (*pro hac vice pending*)

10 E. Doty Street, Suite 600

Madison, WI 53703

Tel.: (608) 280-6751

Fax: (612) 332-9081

Email: JWard@MerchantGould.com

WWard@MerchantGould.com

SHowe@MerchantGould.com

EWessels@MerchantGould.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAR PHARMACEUTICAL, INC., and PAR STERILE PRODUCTS, LLC, | : : : | Civil Action No.: 3:17-cv-06115- BRM-DEA |
| Plaintiffs, | : : | **Filed Electronically** |
| v. | : : : | |
| QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE | : : | **HIGHLY CONFIDENTIAL OUTSIDE COUNSELS' EYES ONLY** |
| RUTKOWSKI, DONNA KOHUT, DAVID SHORT, STEPHEN RHOADES, TRAVIS MCGRADY and DAVID HARTLEY, | : : : | |
| Defendants. | : : : | |

## DECLARATION OF TRAVIS MCGRADY IN SUPPORT OF
## MOTION TO DISMISS

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

I, Travis McGrady, declare as follows:

1.      I am currently the Director of Site Quality for QuVa Pharma, Inc.'s manufacturing ("QuVa") facility in Sugar Land, Texas, a position I took in December 2017. Prior to that, I was the Director of Quality Systems. I am not a corporate officer of QuVa.

2.      I am making this declaration in support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. I made a previous declaration in Opposition to Plaintiffs' Motion for Preliminary Injunction dated December 1, 2017, which is hereby incorporated.

3.      I live in Houston, Texas with my family and I work for QuVa at its manufacturing facility in Sugar Land, Texas. I have a Texas driver's license and I am registered to vote there.

4.      When I worked for King Pharmaceuticals and later JHP and Par, my job responsibilities included Quality Control testing and manufacturing at the Rochester, Michigan site. In the course of my employment with Par, I did not have any contacts with New Jersey. The Trade Secret, Non-Disclosure and Restrictive Covenant Agreement I signed with Par was presented to me in Michigan where I signed it.

5.      QuVa has two manufacturing facilities in Texas, in Sugar Land and Temple, and one facility in New Jersey, in Bloomsbury. Up until December 2017,

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY



6.     Any of the contacts I have had with New Jersey have been in connection with my job responsibilities at QuVa and I was in contact with the Bloomsbury plant at QuVa's request. I do not own any property in New Jersey and have no reason to have any contacts with New Jersey.

7.

8.

-3-

HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY

9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _08MAR2018_

_(signature)_

TRAVIS MCGRADY

-4-