**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky, Esquire
David C. Kistler, Esquire
Leigh Ann Buziak, Esquire
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Orlofsky@blankrome.com
Kistler@blankrome.com
LBuziak@blankrome.com
*Attorneys for Defendants*

**MERCHANT & GOULD P.C.**
Jeffrey S. Ward (*admitted pro hac vice*)
Wendy M. Ward (*admitted pro hac vice*)
Stephen R. Howe (*admitted pro hac vice*)
Emily Wessels (*admitted pro hac vice*)
10 E. Doty Street, Suite 600
Madison, WI 53703
Telephone:  (608) 280-6751
Facsimile:  (612) 332-9081
JWard@MerchantGould.com
WWard@MerchantGould.com
SHowe@MerchantGould.com
EWessels@MerchantGould.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAR PHARMACEUTICAL, INC. and PAR STERILE PRODUCTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, and MIKE RUTKOWSKI,<br><br>Defendants. | Civil Action No. 3:17-06115-BRM-DEA<br><br>**HIGHLY CONFIDENTIAL**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE UNDISCLOSED TRADE SECRETS** |

# TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................................1

II.   ARGUMENT...............................................................................................3

      A.    Par's interrogatory answers were materially incomplete and failed
            to disclose Par's current theory of Trade Secret No. 11. .....................3

            1.    Defendants' interrogatories sought all information that Par
                  considered its trade secrets, not just trade secrets that
                  Defendants allegedly misappropriated, and required no
                  discovery for Par to respond. .......................................................3

            2.    The full text of Par's interrogatory answer for Trade Secret
                  No. 11 confirms its narrow scope, and that it had nothing to
                  do with Par's APS, MP-EMPM, or FDA 483 Observation
                  procedures. ..................................................................................6

      B.    Par's disclosure of its current theory of Trade Secret No. 11 for
            the first time in its preliminary injunction motion and after the
            close of discovery is not a supplementation "during the discovery
            process" and does not satisfy Par's discovery obligations...................7

      C.    Par has not sustained its burden of showing its failure to disclose
            its trade secret theories was harmless or substantially justified..........10

            1.    Par fails to rebut the clear prejudice resulting from its
                  nondisclosure, asserting only irrelevant facts and erroneous
                  arguments about waiver. .......................................................10

            2.    Par cannot cure at this stage in the proceedings. ......................12

            3.    Full and fair consideration of new Trade Secret No. 11 will
                  significantly disrupt the preliminary injunction proceedings...13

            4.    Par's "excuses" for its nondisclosure evidence its bad faith. ...14

            5.    Exclusion of the substance of new Trade Secret No. 11
                  from the preliminary injunction proceedings will have no
                  effect on the ultimate merits of Par's claims at trial................14

III.  CONCLUSION............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajax Enters. v. Fay*,
   No. 04-cv-4539, 2007 U.S. Dist. LEXIS 38515 (D.N.J. May 15,
   2007) ................................................................................................. 10

*Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*,
   542 F. Supp. 2d 849 (N.D. Ill. 2008) ................................................ 9

*Newman v. GHS Osteopathic, Inc.*,
   60 F.3d 153 (3d Cir. 1995) ............................................................... 10

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*,
   133 F. Supp. 3d 721 (D.N.J. 2015) ................................................... 10

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
   22 F. Supp. 3d 1305 (N.D. Ga. 2014) ............................................... 14

*Safety Today, Inc. v. Roy*,
   No. 12-cv-510, 2014 U.S. Dist. LEXIS 17116 (S.D. Ohio Feb. 11,
   2014) ................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................... 3, 7, 8, 10

Fed. R. Civ. P. 37 ............................................................................... 10, 13

## I.    INTRODUCTION

Par's opposition to Defendants' motion to strike confirms that Par has approached this case exactly backwards. Rather than bring a legitimate lawsuit alleging claims for misappropriation based on information it considers genuine trade secrets, Par's insistence that it could not identify its trade secrets until it received discovery from Defendants reveals that Par intended to hunt through Defendants' documents and allege misappropriation of whatever it found there—regardless of whether Par previously considered that information to be its trade secrets or not.

Par's approach to discovery is also backwards. According to Par, it was under no duty to provide complete discovery responses or disclose responsive information it intended to rely upon during discovery. Rather, according to Par, it had no need to inform Defendants of the requested bases for its alleged trade secrets until it filed its "post-discovery briefing" *after the close of expedited discovery*. Par then insists that it was Defendants' responsibility to remediate the prejudice from this surprise evidence by seeking an extension of discovery and demanding supplementation. This is not how discovery works, and it flies in the face of what the Rules require.

Par's assertion that it need not disclose its trade secrets prior to the close of discovery is even more illogical in the procedural context of this case. It was *Par* that demanded the parties engage in expedited discovery on the topic that would be the subject of Par's requested relief—QuVa's and the individual Defendants' alleged

theft of Par's supposed vasopressin trade secrets. For Par to withhold the very different trade secret theories on which it ultimately based its preliminary injunction motion until filing the motion itself, and then to suggest that *Defendants* are somehow at fault, is the epitome of blaming the victim.

The manifest injustice and resultant prejudice to Defendants alone is sufficient to hold that Par's failure to disclose its current theories of Trade Secret No. 11 was not substantially justified or harmless, and therefore should be excluded. The fact Defendants responded to Par's surprise trade secret theories in their opposition to Par's preliminary injunction motion has no bearing on the prejudice to them from being forced to respond without discovery from Par on these issues. Further, Par's argument there is no prejudice because Defendants somehow "waived" discovery on these issues is baseless. Par conditioned any further discovery after the filing of its motion on unreasonable and unrelated conditions, such as requiring Defendants to agree to postpone their product launch indefinitely pending resolution of Par's motion. Defendants' refusal to give in to Par's extortion tactics is not a waiver.

The other factors Par urges the Court to consider also weigh in favor of exclusion. Par willingly withheld its current trade secret theories until filing its preliminary injunction motion, despite receiving Defendants' documents almost a month before. The time to cure has passed. Allowing discovery on Par's new theories now will significantly disrupt the preliminary injunction proceedings and

cause Defendants additional prejudice. Defendants, in contrast, seek only to exclude the late-disclosed materials from consideration on Par's request for the extraordinary relief of a preliminary injunction—not from the case overall—which will have no effect on the ultimate disposition of Par's claims, and cause no prejudice to Par.

As the party failing to comply with Rule 26(e), it is ***Par's*** burden to establish its nondisclosure was substantially justified or is harmless, not the other way around. Par has not done so. Defendants' motion to strike should be granted.

## II.   ARGUMENT

### A.   Par's interrogatory answers were materially incomplete and failed to disclose Par's current theory of Trade Secret No. 11.

It is undisputed that Par's discovery responses did not disclose the APS, MP-EMPM, or procedures for responding to FDA 483 Observations that it now asserts constitute alleged Trade Secret No. 11. (Dkt. 116 at 3-4; Dkt. 119 at 9, 10-12.) Par's assertion that its original interrogatory answers nonetheless satisfied its discovery obligations is premised on a misrepresentation of Defendants' interrogatories and a misleading characterization of Par's answer. (*See* Dkt. 119 at 3, 9.)

#### 1. Defendants' interrogatories sought all information that Par considered its trade secrets, not just trade secrets that Defendants allegedly misappropriated, and required no discovery for Par to respond.

Par argues that the omission from its interrogatory response of the only documents it now relies on for Trade Secret No. 11 was unavoidable because it had

3

not yet received discovery from Defendants. (*Id.* at 10-11.) Par also asserts, based solely on attorney argument, that it had no obligation to fully disclose its alleged trade secrets "when the facts regarding misappropriation [we]re solely within the knowledge of the opposing party at the time the response [wa]s made." (*Id.* at 9.) These arguments fail for several reasons.

First, contrary to Par's allegations, Defendants' interrogatories did not ask Par to identify only those trade secrets Par was alleging had been misappropriated. (*See id.* at 3 (wrongly asserting "Defendants' interrogatories asked Par to identify the trade secrets it believed Defendants misappropriated").) Defendants' interrogatories asked Par to identify "***each*** Par trade secret with respect to your Vasostrict® vasopressin product and/or other vasopressin products" and "***each*** Par trade secret set forth in the emails between Michael Rutkowski and Donna Kohut described at paragraphs 42-47 of the Complaint." (Dkt. 115-1, Ex. A at 10 (emphasis added).)

Second, Par required no discovery from Defendants to identify that information which Par legitimately considered to be its trade secrets in response to Defendants' interrogatories. *See, e.g.*, *Safety Today, Inc. v. Roy*, No. 12-cv-510, 2014 U.S. Dist. LEXIS 17116, at *10 (S.D. Ohio Feb. 11, 2014) (explaining the information a plaintiff considers its trade secrets is uniquely within the plaintiff's possession). Indeed, Par's thirty-three page response to Defendants' Interrogatory No. 1 contained 52 alleged trade secrets and identified dozens of documents, the

great majority of which Par has not asserted in its preliminary injunction papers after conducting expedited discovery. (*See* Dkt. 115-1, Ex. C at 6-39.) This further shows Par was not merely identifying trade secrets it thought Defendants had misappropriated, but instead included what it considered to be its legitimate trade secrets regardless of whether Par had any evidence of misappropriation. Had Par truly believed the information in documents such as its APS and MP-EMPM constituted its trade secrets, Par had those documents in its possession and could have disclosed them along with the others. The truth is those documents are not—and Par at the time of its response did not consider them—trade secrets.

Third, even if Par's obligation to identify its trade secrets in discovery was somehow contingent on information in Defendants' possession (which it is not), Par's assertion that "it was not possible" (Dkt. 119 at 10) to list documents such as its APS Master Plan in its discovery responses is easily refuted. As Defendants noted in their moving brief and Par does not deny, Par was in possession of all the documents it relied on in its motion since at least October 20, and in the case of ██ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Par twice served revised interrogatory answers during discovery, but never identified these documents. (*Id.* at 4.)

5

### 2. The full text of Par's interrogatory answer for Trade Secret No. 11 confirms its narrow scope, and that it had nothing to do with Par's APS, MP-EMPM, or FDA 483 Observation procedures.

Par's mischaracterization of its interrogatory response demonstrates the inadequacy of that response for disclosing its currently alleged theory of Trade Secret No. 11. Not once does Par fully and accurately cite the actual text of its interrogatory answer in its brief. Instead, Par misleadingly paraphrases and uses ellipses (or simply omits most of the response altogether) to suggest that it disclosed more than it really did. But as shown in the chart below, what Par now *says* it disclosed is a distortion of Par's actual interrogatory response:



Notwithstanding Par's present efforts to include within Trade Secret No. 11 information and documents it was never intended to cover, the only "trade secret" Par identified with specificity ████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████

**B.**     **Par's disclosure of its current theory of Trade Secret No. 11 for the first time in its preliminary injunction motion and after the close of discovery is not a supplementation "during the discovery process" and does not satisfy Par's discovery obligations.**

Even if Par had no duty to fully respond to Defendants' interrogatories prior to receiving Defendants' discovery (as Par incorrectly argues), it is indisputable that a duty to supplement its incomplete answers accrued when that information was obtained. Fed. R. Civ. P. 26(e)(1)(A). Par provides no explanation why, in the almost month between receiving Defendants' documents and filing its preliminary injunction motion, Par did nothing to supplement or otherwise notify Defendants of its changed theory of Trade Secret No. 11. This is despite Par twice changing or supplementing its interrogatory answers in other respects. (Dkt. 116 at 4.)

Instead of timely supplementing its responses after receiving Defendants' production, Par waited until after depositions were taken and discovery was closed before disclosing its current theory of Trade Secret No. 11 "in the opening papers in

support of the preliminary injunction motion." (Dkt. 119 at 10.) This is not the supplementation "envisioned by the Federal Rules." (*See id.* at 9-10.)

As Par acknowledges, Rule 26 expressly requires supplementation unless the additional or corrective information has otherwise been made known "***during the discovery process.***" (*Id.* at 10 (emphasis added).) It was Par that requested the Court issue a Scheduling Order setting deadlines for discovery on Par's preliminary injunction motion. (*Id.* at 3.) Those deadlines passed and discovery on the motion closed, without Par ever disclosing the requested bases for its currently alleged Trade Secret No. 11 to Defendants. Indeed, Par concedes that its APS, MP-EMPM, and unidentified "procedures" for responding to FDA 483 Observations were not identified as part of Trade Secret No. 11 until its "post-discovery briefing." (*Id.* at 13-14.) This undisputed "post-discovery" disclosure cannot satisfy the requirement under Rule 26 that the information be made known "during the discovery period."

Par's expanded version of Trade Secret No. 11 based on its APS, MP-EMPM, and unspecified procedures for responding to FDA 483 Observations also were not "otherwise made known" prior to Par's motion. In fact, just the opposite is true. Par's 30(b)(6) witness Mr. Crist confirmed during his deposition that the subject matter of Trade Secret No. 11 was set forth in Par's interrogatory response, and that he had no knowledge of any trade secrets not listed therein. (Dkt. 116 at 5.) Par's questioning of Defendants' witnesses about certain documents similarly provided no notice that

8

Par considered any of those documents to contain trade secrets, much less notice of what it considered to be the supposedly secret information therein. *See, e.g.*, *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 542 F. Supp. 2d 849, 854 (N.D. Ill. 2008) (excluding components of plaintiff's alleged trade secrets because it failed to sufficiently disclose those aspects of its trade secrets during discovery).

Contrary to Par's argument, Defendants' request that the Court hold Par to its discovery obligations and strike Par's undisclosed theories and evidence for the limited purpose of the preliminary injunction proceedings is no double standard. (*See* Dkt. 119 at 12.) The only reason Defendants' opposition to Par's preliminary injunction motion included documents ███████████ not previously produced was because ***Par's*** last minute change in trade secret theories kept those issues from being the subject of discovery, and Defendants were attempting to respond for the first time to these newly alleged trade secrets. Indeed, none of the previously unproduced documents Defendants included with their opposition ████████ ████████████ was responsive to any of Par's expedited discovery requests. (Dkt. 119-2, Ex. A.) If there was any surprise from Defendants' response to Par's changed theories, the surprise was entirely of Par's own making. It is no basis to deny Defendants' motion.

9

**C.    Par has not sustained its burden of showing its failure to disclose its trade secret theories was harmless or substantially justified.**

Par urges the Court to deny Defendants' motion under a standard recited nowhere in the relevant Federal Rules based on a case that has nothing to do with Rule 37. (Dkt. 119 at 14); *see* Fed. R. Civ. P. 37(c); *Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 133 F. Supp. 3d 721, 725-26, 728 n.9 (D.N.J. 2015) (addressing an alleged violation of the Local Rules relating to expert discovery in patent cases). By its plain terms, Rule 37(c) mandates that undisclosed evidence is to be excluded "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *Ajax Enters. v. Fay*, No. 04-cv-4539, 2007 U.S. Dist. LEXIS 38515, at *7-8 (D.N.J. May 15, 2007). The provisions of this Rule are "designed to provide a strong inducement for disclosure of [Rule 26] material." *Id.* at *7 (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995)).

Even considering the five prejudice factors identified by Par, it is ***Par's*** burden to establish that its nondisclosure is substantially justified or harmless. *Id.* Par has not done so for the following reasons.

**1. Par fails to rebut the clear prejudice resulting from its nondisclosure, asserting only irrelevant facts and erroneous arguments about waiver.**

Par argues an absence of prejudice because Defendants responded to Par's surprise trade secrets in opposing Par's preliminary injunction motion. (Dkt. 119 at 15.) Whether Defendants were able to address the fact there was no misappropriation

10

of Par's documents (due to independent development of QuVa's plans and/or the public nature of the alleged trade secret information) is of no relevance to whether Defendants were prejudiced by their inability to obtain discovery on Par's bases for its alleged trade secrets based on documents like Par's APS and MP-EMPM, or to require Par to identify the allegedly secret information contained therein. As previously noted, Defendants' prejudice stems from their inability to take full and fair discovery to develop and support *all* defenses available to them.

Par also wrongly asserts there is no prejudice because Defendants waived the discovery to which they were entitled. (*Id.* at 16.) Not so. After receiving Par's motion greatly expanding the scope of Par's requested relief, Defendants promptly objected to Par's reliance on information not previously produced without Defendants having the benefit of discovery on those subjects. (Dkt. 119-2, Ex. E at 1.) Despite Defendants' good faith efforts to negotiate a schedule for obtaining discovery on these previously undisclosed issues, Par refused to allow such additional discovery unless Defendants agreed to postpone the launch of their vasopressin product indefinitely pending resolution of the preliminary injunction motion and give Par an extra 3.5 weeks to brief its reply.[1] (*Id.*, Ex. G at 1-5.)

---

[1] Indeed, directly contrary to Par's claims in its brief, at no time did Par "agree[] to make Dr. Miller available" without conditions. (Dkt. 119 at 16; *see* Dkt. 119-2, Ex. G.)

With no date set for the preliminary injunction hearing, much less any indication of when a decision following that hearing would issue, Par's demands for an indefinite delay of QuVa's product launch, which had nothing to do with the requested discovery, were unacceptable. Having already lost four days of their response period to these unsuccessful negotiations, Defendants had no choice but to table the issue and focus their efforts on their opposition. In that opposition, Defendants again objected to Par's reliance on information not produced in discovery and Par's previously undisclosed expansion of Trade Secret No. 11. (Dkt. 88 at 20.) Defendants' refusal to give in to Par's unreasonable demands and their continued objections to Par's tactics are not a waiver of the discovery to which they were entitled. Nor have Defendants waived anything since, as this motion was filed shortly after the holiday period that followed completion of the parties' briefing on Par's preliminary injunction motion. (Dkt. 115.)

### 2. Par cannot cure at this stage in the proceedings.

With respect to any ability to cure, Par concedes that "[t]here is nothing left for Par to cure." (Dkt. 119 at 18.) Defendants agree, inasmuch as the preliminary injunction proceedings are nearing completion at this point. Defendants gave Par the chance to remedy the prejudice from Par's reliance on previously undisclosed information in its preliminary injunction motion by asking Par to provide discovery on those issues before Defendants were required to respond. Par unreasonably

refused, and Defendants were forced to expend significant time and expense responding to Par's new theories without that discovery. The time to cure has passed.

### 3. Full and fair consideration of new Trade Secret No. 11 will significantly disrupt the preliminary injunction proceedings.

Closely related to Par's inability to cure is the disruption to the proceedings. Here, Par curiously asserts that "consideration [of] documents that ***both*** parties produced during expedited discovery . . . will not disrupt the efficient administration of this case." (*Id.* (emphasis added).) This argument has no relevance to the pending motion because it is undisputed that Par did not produce its APS, MP-EMPM, or other documents underlying its current theory of Trade Secret No. 11 during expedited discovery. (*Id.* at 10.) Nor is this argument correct. Par's failure to produce these documents and identify its corresponding trade secret theories during expedited discovery is precisely the reason that the information should be struck from use during the preliminary injunction proceedings. Fed. R. Civ. P. 37(c).

Allowing Defendants discovery now that they should have received from Par before the discovery cutoff and before responding to Par's motion would cause significant disruption. Defendants would need additional time to obtain all documents that should have been produced earlier (not just the ones Par decided to include in its motion) and to take depositions regarding this new disclosure. The information from that discovery is likely to impact the preparations Defendants have already completed for the upcoming hearing, and is likely to necessitate additional

13

briefing. It is implausible that, with all of this extra work, the preliminary injunction hearing would be able to proceed as currently scheduled. Not only would this greatly disrupt the case, it would cause Defendants additional significant prejudice from the continued uncertainty looming over them pending resolution of Par's motion.

### 4. Par's "excuses" for its nondisclosure evidence its bad faith.

The evidence of Par's bad faith and willfulness in withholding its theories of Trade Secret No. 11 is noted in Defendants' initial brief, and is demonstrated throughout Par's response. Rather than owning up to its nondisclosure, Par makes repeated false claims to the Court in attempting to cover it up, including: (1) misrepresenting the information Par had at the time of its initial and supplemental interrogatory responses; and (2) mischaracterizing its description of Trade Secret No. 11 in those interrogatory responses. (Dkt. 119 at 4, 10, 9 n.3.)

### 5. Exclusion of the substance of new Trade Secret No. 11 from the preliminary injunction proceedings will have no effect on the ultimate merits of Par's claims at trial.

Finally, Par misapplies the question of the importance of the evidence that Defendants seek to exclude. Unlike the cases Par cites,[2] Defendants' motion is

---

[2] The cases Defendants cite in their opening brief, in contrast, are specific to the importance of a plaintiff disclosing its trade secrets early, and the resultant prejudice if it does not. Further, the decision vacating *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 22 F. Supp. 3d 1305 (N.D. Ga. 2014), was based on grounds unrelated to Defendants' motion, and is not included in the LEXIS "Shepherd's" report of subsequent appellate history for the case.

limited to exclusion for the discrete phase of the case directed at Par's motion for preliminary injunction. Exclusion of the evidence at this stage will have no impact whatsoever on whether or not Par can ultimately prove the merits of its claims.

The grant of a preliminary injunction is an extraordinary remedy. From the very beginning, Par has done everything in its power to disrupt the launch of QuVa's vasopressin product in order to protect Par's monopoly market. As part of those efforts, it was Par who demanded the parties exchange expedited discovery directed at the motion for preliminary injunction that Par would file. While the Court granted Par's request, it was not only Par who was entitled to discovery. The Court allowed a limited discovery period with clear discovery deadlines during which Defendants were also entitled to seek discovery on the theories that would be the bases for Par's requested relief. Par's incredible assertion that it had no obligation to respond during that discovery period with the actual trade secret theories it would rely on or to disclose that information until it filed its motion papers is the antithesis of fair play.

## III.   CONCLUSION

For the foregoing reasons and those set forth in their moving brief (Dkt. 116), Defendants respectfully request that the Court grant the motion to strike.

*s/ David C. Kistler*
David C. Kistler
Stephen M. Orlofsky
Leigh Ann Buziak
**BLANK ROME LLP**
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
Telephone: (609) 750-7700

Jeffrey S. Ward (*pro hac vice*)
Wendy M. Ward (*pro hac vice*)
Stephen R. Howe (*pro hac vice*)
Emily M. Wessels *(pro hac vice)*
**MERCHANT & GOULD, P.C.**
10 East Doty Street, Suite 600
Madison, WI 53703
Telephone (608) 280-6750
*Attorneys for Defendants*

Dated:  January 29, 2018

16