NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PAR PHARMACEUTICAL, INC. and PAR STERILE PRODUCTS, LLC, | : : : : : | |
| Plaintiffs, | : : | Civil Action No. 3:17-cv-6115-BRM-DEA |
| v. | : : : : | OPINION |
| QUVA PHARMA, INC., STUART HINCHEN, PETER JENKINS, MIKE RUTKOWSKI, DONNA KOHUT, DAVID SHORT, STEPHEN RHOADES, TRAVIS MCGRADY, and DAVID HARTLEY, | : : : : : : : : | |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant QuVa Pharma, Inc.'s ("QuVa") Motion for Reconsideration (ECF No. 219), seeking reconsideration of this Court's April 27, 2018 Opinion and Order granting QuVa's Motion to Set the Required Bond Amount and setting the bond at $18,400,000. (ECF Nos. 210 & 211.) Plaintiffs Par Pharmaceutical, Inc. ("Par Pharmaceutical") and Par Sterile Products, LLC ("Par Sterile") (collectively "Plaintiffs" or "Par") oppose the Motion. (ECF No. 241.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, QuVa's Motion for Reconsideration is **DENIED**.

I. PROCEDURAL AND FACTUAL BACKGROUND[1]

On January 12, 2018, Par filed its First Amended Complaint (the "Amended Complaint") asserting the following causes of action: (1) a violation of the FDTA against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count One"); (2) a violation of the NJTA against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count Two"); (3) misappropriation of trade secrets under New Jersey law against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count Three"); (4) unfair competition under New Jersey law against QuVa ("Count Four"); (5) breach of contract under New Jersey law against Defendant Hinchen ("Count Five"); (6) breach of contract under New Jersey law against Defendant Jenkins ("Count Six"); (7) breach of contract under New Jersey law against Defendant Rutkowski ("Count Seven"); (8) breach of contract under New Jersey law against Defendant Kohut ("Count Eight"); (9) breach of contract under New Jersey law against Defendant Short ("Count Nine"); (10) breach of contract under New Jersey law against Defendant Rhoades ("Count Ten"); (11) breach of contract under New Jersey law against Defendant McGrady ("Count Eleven"); (12) breach of contract under New Jersey law against Defendant Hartley ("Count Twelve"); (13) breach of fiduciary under New Jersey law against Defendants Hinchen, Jenkins, and Rutkowski ("Count Thirteen"); (14) breach of the duty of loyalty under New Jersey law against Defendants Hinchen, Jenkins, Rutkowski, Short, Rhoades, McGrady, and Hartley ("Count Fourteen"); (15) breach of the duty of confidence under New Jersey law against Defendants Hinchen, Jenkins, Rutkowski, Kohut, Short, Rhoades, McGrady, and Hartley ("Count Fifteen"); and (16) tortious interference with contractual relations under

---

[1] The factual background of this dispute is more fully set out in this Court's March 1, 2018 Opinion granting in part and denying in part Par's Motion for a Preliminary Injunction. (ECF No. 157.) Accordingly, the facts are supplemented herein as necessary for this opinion.

New Jersey law against QuVa ("Count Sixteen"). (ECF No. 114.)

Par alleges QuVa and the named defendants – who are former Par Sterile executives and/or employees – misappropriated Par's intellectual property and trade secrets to create products to compete with Par. (Br. in Supp. of Plaintiffs' Mot. For Prelim. Inj. (ECF No. 69 at 14).) Specifically, Par claims QuVa created products containing vasopressin to compete with Vasostrict® ("Vasostrict"), Par's vasopressin-based product is used to treat adults with vasodilatory shock. (*Id.* at 21.) Par also contends QuVa misappropriated Par's trade secrets related to the aseptic manufacture of pharmaceuticals. (*Id.* at 11.) Par sought an indefinite injunction in three categories: (1) an injunction against QuVa's sale of aseptic products that directly compete with Par; (2) an injunction against QuVa's further solicitation of Par employees in breach of non-solicitation agreements; and (3) an injunction against former Par employees from working on QuVa products that compete with Par products. (*Id.* at 30-36.)

On March 1, 2018, this Court issued an Opinion and Order granting Par an injunction on the marketing and sale of QuVa's vasopressin products through the conclusion of trial and denying Par's request for an injunction on all aseptic products and on solicitation of Par employees by QuVa. (ECF Nos. 157 & 158.)

On March 2, 2018, Defendants QuVa, Hinchen, Jenkins, and Rutkowski filed a letter with the Court requesting a briefing schedule on the issue of an appropriate amount of a security bond for Par to post pursuant to Federal Rule of Civil Procedure 65(c). (ECF No. 159.) On the same day, Par filed a letter with the Court proposing to confer with opposing counsel on the bond issue and then report to the Court within seven days. (ECF No. 160.) On March 9, 2018, this Court held a telephone conference with all counsel, who informed the Court they had not agreed on a bond amount. (ECF No. 163.) On March 12, 2018, this Court issued an Order temporarily

vacating without prejudice the Court's Order of March 1, 2018, which enjoined QuVa from manufacturing or marketing its vasopressin products through the conclusion of trial, solely to determine an appropriate security bond amount. (ECF No. 169.)

On March 23, 2018, QuVa filed a Motion to Set the Required Bond Amount. (ECF No. 175). On April 6, 2018, Par filed an Opposition to QuVa's Motion to Set the Required Bond Amount. (ECF No. 178.) On April 27, 2018, this Court issued an Opinion and Order setting the bond amount at $18,400,000. (ECF No. 210; ECF No. 211 at 8.)

## II.  LEGAL STANDARD

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to the District's Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L.Civ.R. 7.1(i); *Dunn v. Reed Grp., Inc.,* No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan. 13, 2010). The comments to that Rule make clear, however, that "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L.Civ.R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003)). In that regard, the Third Circuit has held the scope of a motion for reconsideration is "extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they mat be used only to correct manifest errors of law or fact to present newly discovered evidence." *Id.* Accordingly, an order or judgment may only be altered or amended if the party seeking reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent

manifest injustice." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014).

A court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603-04 (3d Cir. 2008)). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its requests were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld Assey Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2011)).

### III. DECISION

QuVa argues this Court erred in its calculation of the differences in the bond amount projections between its expert, Dr. Mohan Rao, and Par's expert, Dr. Christine Meyer. (ECF No. 220 at 3-6.) QuVa contends the bond should be between two-and-a-half and five times the amount set by this Court, and that a failure to correct this error will result in manifest injustice to it. (*Id.* at 6-8.) Par counters QuVa fails to identify any newly discovered evidence supporting reconsideration nor any clear error of fact or law committed by this Court, and as such, its Motion for Reconsideration should be denied. (ECF No. 241 at 5-13.)

In determining the proper bond amount, this Court carefully considered the arguments presented by each party's expert, stating:

> The Court finds there are no grounds for waiving the bond requirement or imposing only a nominal amount. Nothing in the record suggests Par would experience financial hardship if it were required to post a bond even as high as QuVa requests. *See [Borough of Palmyra, Bd. of Educ. v.] F.C. Through R.C.*, 2 F. Supp. 2d [637,] 647 [(D.N.J. 1998)] (waiving the bond requirement

> when it would cause plaintiff financial hardship). Further, Par seeks to protect its business interests, not vindicate any public interest. . . .
>
> The Court also finds Dr. Rao is a credible expert witness and that his method of calculating QuVa's prospective lost profit is sound. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-94 (1993).[] However, this Court is also persuaded by Dr. Meyer's argument that Dr. Rao's estimates of QuVa's per-dose profit and prospective market share are inflated because they are supported only by the assertion of QuVa executive, Peter Jenkins. (ECF No. 178-2 ¶¶ 11-15.) Based on these factors, Dr. Meyer modified Dr. Rao's model to conclude QuVa stands to lose profits of $18,434,587.00. (*Id.* ¶ 17 n.24.)
>
> On the other hand, Par's argument that QuV[a] has at best a 10% chance of successfully launching its vasopressin products – and its actual profit loss is $1.8 million – is far less convincing. (*Id.*) The Court notes Par argued forcefully that in the absence of an injunction on QuVa's vasopressin products, Par's anticipated ▅▅ yearly revenue increase would become a ▅▅ decrease in annual revenue. (ECF No. 69-3 ¶¶ 11-13.) Par now contends QuVa cannot show "it has any reasonable likelihood of legally selling its compounded vasopressin product." (ECF No. 178 at 26.) The Court rejects this argument. A party cannot "prevail[] in one phase of a case on an argument and then rely[] on a contradictory argument to prevail in another phase." *Pegream v. Herdich*, 530 U.S. 211, 277 n.8 (2000). Therefore, the Court finds QuVa stands to lose a profit of $18.4 million and Par must post a bond for that amount.

(ECF No. 210 at 7-9.)

First, QuVa argues this Court relied on "incorrect assumptions in its calculation of the bond." (ECF No. 220 at 3.) QuVa argues this Court incorrectly found the only difference between the calculations of Dr. Meyer and Dr. Rao was QuVa's per-dose profit, but that the calculations further differed in their assumptions of "(1) QuVa's potential launch date for its premixed vasopressin products, and (2) the trial date." (*Id.* at 3-4.) QuVa notes Dr. Rao utilized ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ and an assumed trial date of October 2018 (Rao Decl. (ECF No. 176-1, Ex. 1) ¶ 2), whereas Dr. Meyer utilized ▅▅▅▅▅

6

■ and an assumed trial date of January 2019. (Meyer Decl. (ECF No. 178-2) ¶ 13). QuVa contends the "different date assumptions made by Dr. Rao and Dr. Meyer dramatically affect their lost profit calculations," as its estimated loss profits using Dr. Meyer's economic model ■. (ECF No. 220 at 5-6.)[2] QuVa claims Dr. Meyer's conclusion ■. (*Id.* at 5.)

QuVa bases it Motion for Reconsideration on "updated information" that purportedly demonstrates it ■ (*Id.*) ■ (Second Decl. of Peter Jenkins (ECF No. 220-1, Ex. A)), ■ However, there is no allegation such QuVa records were "not available when [this C]ourt [made its initial decision]" on the Motion to Set Bond. *AstraZeneca*, 769 F.3d at 848-49. Indeed, QuVa has failed to make such a showing.

Alternatively, even if these records did constitute "new evidence that was not available" at the time of the prior ruling, it would still be insufficient to compel this Court to grant QuVa's Motion for Reconsideration. *Id.* The evidence proffered by QuVa is inherently self-serving,

---

[2] ■ (ECF No. 178-2, Table 1), however, ■ (ECF No. 176-1, Ex. 1, Table 4), which is based on Peter Jenkins' March 23, 2016 Declaration (ECF No. 176-1, Ex. 2) calculates QuVa's lost profits – ■.

which is the exact reason why this Court ultimately chose to impose the bond figure as calculated by Dr. Meyer in its April 27, 2018 Order. Furthermore, QuVa has previously represented to this Court that its vasopressin product could have been ▮▮▮▮▮▮ (Transcript of Motion for Preliminary Injunction (ECF No. 187 at 83:5-7)) ▮▮▮ (ECF No. 176-1, Ex. 2 ¶ 3; ECF No. 186-1, Ex. A.) Accordingly, QuVa's argument that its vasopressin ▮▮▮▮▮▮" is not entirely reliable, if not completely dubious.

Additionally, QuVa's "new evidence" does not conclusively demonstrate that it could have successfully ▮▮▮▮▮▮. Specifically, the records do not include ▮▮▮▮▮▮. According to the Declaration of Dr. Michael Miller, each of these tests, among various others, is essential to conclusively establishing a launch date. (Miller Decl. (ECF No. 178-3, ¶¶ 5-30).) In the April 27, 2018 Opinion setting the bond amount, this Court found Dr. Miller to be a credible witness and accordingly relied on his assumptions, albeit indirectly, in setting the bond amount. (ECF No. 210 at 6-9.) Even when considering QuVa's new evidence, Dr. Miller's opinions remain unrebutted.

Finally, QuVa's contention that this Court's failure to "correct the bond amount will result in manifest injustice" to it is erroneous. (ECF No. 220 at 6-8.) QuVa's manifest injustice argument is premised on this Court having committed "error in [setting the bond too low]," which it has failed to demonstrate. *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). Indeed, QuVa has failed to identify or allege any other grounds on which this Court's bond order has resulted in a manifest injustice to it.

QuVa has identified no grounds on which to disturb this Court's findings that it has not provided a basis for its claim it could have ▮▮▮▮▮▮ and

8

that as such, the $18,400,000 bond amount is appropriate. (ECF No. 210 at 6-9.) QuVa has failed to demonstrate an intervening change in the controlling law, the availability of new evidence that was not available when the court issued the bond order, or the need to correct a clear error of law or fact or to prevent manifest injustice. *AstraZeneca*, 769 F.3d at 848-49. Accordingly, QuVa's Motion for Reconsideration is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, QuVa's Motion for Reconsideration (ECF No. 119) is **DENIED**.

**Date: January 11, 2019**               */s/ Brian R. Martinotti*
                                         **HON. BRIAN R. MARTINOTTI**
                                         **UNITED STATES DISTRICT JUDGE**