NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
PAR PHARMACEUTICAL, INC. and              :
PAR STERILE PRODUCTS, LLC,                :
                                          :         Civil Action No. 3:17-cv-6115-BRM-DEA
            Plaintiffs,                   :
                                          :
      v.                                  :
                                          :
                                          :              **OPINION**
                                          :
QUVA PHARMA, INC., STUART                 :
HINCHEN, PETER JENKINS, MIKE              :
RUTKOWSKI, DONNA KOHUT,                   :
DAVID SHORT, STEPHEN RHOADES,             :
TRAVIS MCGRADY, and DAVID                 :
HARTLEY,                                  :
                                          :
            Defendants.                   :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following Motions to Dismiss: (1) Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC's (collectively, "Plaintiffs" or "Par") Motion to Dismiss Defendant QuVa Pharma Inc.'s ("QuVa") Counterclaim Six for failure to state a claim (ECF No. 66)[1]; (2) Defendants Donna Kohut ("Defendant Kohut"), David Short ("Defendant Short"), Travis McGrady ("Defendant McGrady"), and David Hartley's ("Defendant Hartley") Motion to Dismiss Par's First Amended Complaint (the "Amended Complaint") for lack of personal jurisdiction (ECF

_____
[1] Par's Motion to Dismiss QuVa's Counterclaim Six was opposed by QuVa, Defendant Hinchen, Defendant Jenkins, and Defendant Rutkowski. (ECF No. 102.)

No. 165)[2]; (3) Defendant Kohut's Motion to Dismiss Count Eight of Par's Amended Complaint for failure to state a claim (ECF No. 167)[3]; (4) QuVa, Defendant Stuart Hinchen ("Defendant Hinchen"), Defendant Peter Jenkins ("Defendant Jenkins"), Defendant Mike Rutkowski ("Defendant Rutkowski"), Defendant Kohut, Defendant Short, Defendant McGrady, and Defendant Hartley's Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of Par's Amended Complaint for failure to state a claim (ECF No. 168)[4]; and (5) Defendant Stephen Rhoades' ("Defendant Rhoades") Motion to Dismiss Par's Amended Complaint for lack of personal jurisdiction, lack of venue, and failure to state a claim (ECF No. 182).[5] Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, all motions are **DENIED**.

## I.    Procedural and Factual Background

### A. Procedural History

On August 14, 2017, Par filed a Complaint (the "Complaint") against QuVa, Defendant Hinchen, Defendant Jenkins, and Defendant Rutkowski asserting violations of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), the New Jersey Trade Secrets Act, N.J.S.A. 56:15-2 ("NJTA"), misappropriation of trade secrets under New Jersey law, unfair competition under

---

[2] Par opposed Defendants Kohut, Short, McGrady, and Hartley's Motion to Dismiss for lack of personal jurisdiction. (ECF Nos. 189 & 199.)

[3] Par opposed Defendant Kohut's Motion to Dismiss Count Eight of the Amended Complaint for failure to state a claim. (ECF No. 190.)

[4] Par opposed Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, McGrady, and Hartley's Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of the Amended Complaint. (ECF No. 191.)

[5] Par opposed Defendant Rhoades' Motion to Dismiss for lack of personal jurisdiction, lack of venue, and failure to state a claim. (ECF Nos. 192 & 200.)

New Jersey law against QuVa, breach of contract under New Jersey law against Defendants Hinchen, Jenkins, and Rutkowski, breach of fiduciary duty and the duties of loyalty and confidence under New Jersey law against Defendants Hinchen, Jenkins, and Rutkowski, and tortious interference with contractual relations under New Jersey law against QuVa. (ECF No. 1.) On October 13, 2017, QuVa, Defendant Hinchen, Defendant Jenkins, and Defendant Rutkowski filed an Answer to Par's Complaint (the "Answer"), in which they asserted various affirmative defenses and counterclaims. (ECF No. 48.) On November 17, 2017, Par filed a motion to dismiss Counterclaim Six of the Answer (ECF No. 66), which Quva and Defendants Hinchen, Jenkins, and Rutkowski opposed. (ECF No. 102).

On January 12, 2018, Par filed the Amended Complaint asserting the following causes of action: (1) a violation of the DTSA against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count One"); (2) a violation of the NJTA against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count Two"); (3) misappropriation of trade secrets under New Jersey law against Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades ("Count Three"); (4) unfair competition under New Jersey law against QuVa ("Count Four"); (5) breach of contract under New Jersey law against Defendant Hinchen ("Count Five"); (6) breach of contract under New Jersey law against Defendant Jenkins ("Count Six"); (7) breach of contract under New Jersey law against Defendant Rutkowski ("Count Seven"); (8) breach of contract under New Jersey law against Defendant Kohut ("Count Eight"); (9) breach of contract under New Jersey law against Defendant Short ("Count Nine"); (10) breach of contract under New Jersey law against Defendant Rhoades ("Count Ten"); (11) breach of contract under New Jersey law against Defendant McGrady ("Count Eleven"); (12) breach of contract under New Jersey law against Defendant Hartley ("Count Twelve"); (13) breach of fiduciary under New

Jersey law against Defendants Hinchen, Jenkins, and Rutkowski ("Count Thirteen"); (14) breach of the duty of loyalty under New Jersey law against Defendants Hinchen, Jenkins, Rutkowski, Short, Rhoades, McGrady, and Hartley ("Count Fourteen"); (15) breach of the duty of confidence under New Jersey law against Defendants Hinchen, Jenkins, Rutkowski, Kohut, Short, Rhoades, McGrady, and Hartley ("Count Fifteen"); and (16) tortious interference with contractual relations under New Jersey law against QuVa ("Count Sixteen"). (ECF No. 114.)

On March 12, 2018, Defendants Kohut, Short, McGrady, and Hartley filed a Motion to Dismiss the Amended Complaint in its entirety for lack of personal jurisdiction. (ECF No. 165.) On April 23, 2018, Par filed an opposition to this motion (ECF No. 189), for which it later provided a redacted version. (ECF No. 199). On March 12, 2018, Defendant Kohut filed a Motion to Dismiss Count Eight of the Amended Complaint. (ECF No. 167.) On April 24, 2018, Par filed an opposition to this motion. (ECF No. 190.) On March 12, 2018, Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, McGrady, and Hartley filed a Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of Par's Amended Complaint. (ECF No. 168.) On April 23, 2018, Par filed an opposition to this motion. (ECF No. 191.) On April 10, 2018, Defendant Rhoades filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction, lack of venue, and failure to state a claim. (ECF No. 182.) On April 23, 2018, Par filed an opposition to this motion (ECF No. 192), for which it later provided a redacted version. (ECF No. 200).

### B. Factual Background[6]

Plaintiff Par Sterile Products, LLC ("Par Sterile") is a Delaware limited liability company headquartered in Chestnut Ridge, New York. (ECF No. 114 ¶ 6.) Par Sterile is a wholly-owned,

---

[6] This Court has already laid out the factual background of this dispute in its March 1, 2018 Opinion granting in part and denying in part Par's Motion for a Preliminary Injunction. (ECF No. 157.) Accordingly, the facts are supplemented herein as necessary for these motions.

indirect subsidiary of Plaintiff Par Pharmaceutical ("Par Pharmaceutical").[7] (*Id.*) In 2014, Par Pharmaceutical acquired JHP Group Holdings, Inc., which was the parent company of JHP Pharmaceuticals, LLC ("JHP"), a Delaware limited liability company headquartered in Parsippany, New Jersey. (*Id.*) Thereafter, Par Pharmaceutical renamed JHP "Par Sterile." (*Id.*)

Par Sterile is a "specialty pharmaceutical company" that develops, manufactures, and sells sterile drug products, including Vasostrict® ("Vasostrict"). (ECF No. 114 ¶ 21.) Par asserts that Vasostrict is the first and only intravenous vasopressin injection with a New Drug Application ("NDA") approved by the Food and Drug Administration ("FDA"). (*Id.*) Vasostrict "increases blood pressure in adults with vasodilatory shock . . . who remain hypotensive despite the administration of fluids and catecholamines . . . [thereby] restoring blood pressure to safe levels[.]" (*Id.*) Vasopressin is the synthetic form of a polypeptide hormone secreted by the pituitary gland. (ECF No. 114 ¶ 22.) Prior to 2014, vasopressin was available for sale in the United States as an unapproved drug, as it had been marketed as a therapeutic agent prior to the enactment of the Food, Drug and Cosmetic Act of 1938 (the "FDCA"). (*Id.*) JHP, which was founded by Defendants Hinchen and Jenkins, was among the companies manufacturing and selling unapproved vasopressin injections in the United States. (*Id.*)

In September 2011, the FDA issued a Guidance stating that it would take steps to "encourage the manufacturers [of marketed unapproved drugs] to obtain the required evidence and comply with the approval provisions of the [FDCA] or remove the products from the market." (*Id.*) Thereafter, JHP, led by Defendants Hinchen and Jenkins, pursued the FDA's NDA process to seek approval to manufacture and sell a vasopressin injection pursuant to Section 505(b)(2) of the

_____

[7] Plaintiff Par Pharmaceutical is a New York corporation headquartered in Chestnut Ridge, New York and is a wholly-owned, indirect subsidiary of Endo International. (ECF No. 114 ¶ 7.)

FDCA, 21 U.S.C. § 355(b)(2). (ECF No. 114 ¶ 24.) On September 26, 2012, JHP submitted NDA No. 204485 to the FDA for its intravenous vasopressin injection, Vasostrict. (*Id.*)

On February 25, 2014, Par Pharmaceutical acquired JHP, which later became Par Sterile, through a reverse subsidiary merger for a total consideration of approximately $490 million. (ECF No. 114 ¶ 25.) Par Pharmaceutical "invested substantial amounts of time and money in its development program for [Vasostrict]" both before and after the acquisition of JHP in its efforts to satisfy the FDA's requirements for an NDA. (ECF No. 114 ¶ 26.) On April 17, 2014, Par Sterile received FDA approval to sell Vasostrict, which was the first and only FDA-approved intravenous vasopressin injection. (ECF No. 114 ¶ 27.) Par alleges it has "devoted significant time and resources researching, developing, and validating different formulations of [Vasostrict] and other sterile pharmaceutical products." (ECF No. 114 ¶ 28.)

Par's development of Vasostrict, as well as the work performed as part of NDA No. 204485 "has produced a substantial amount of highly sensitive and proprietary trade secret information" which is "critical to the significant value [the] products represent to Par." (ECF No. 114 ¶ 29.) These trade secrets include, among other things:

> technical know-how relating to chemical compositions and properties, batch quantities, assays, test methods and specifications, stability protocols, validation methods, quality control, research & development efforts to obtain increased shelf life under both refrigeration and room temperature storage conditions, as well as confidential information relating to the manufacture, packaging, distribution, marketing, and sale of [Vasostrict] and other sterile pharmaceutical products, including customer identities, industry competitive intelligence, strategic plans, results of operations, and short- and long-term business strategies and initiatives (collectively, the "Trade Secrets").

(*Id.*)

To protect the confidentiality of the Trade Secrets, Par implemented various security

measures and maintains certain Trade Secrets in the form of electronic records. (ECF No. 114 ¶¶ 30-31.) Par also implemented corporate policies and trainings to protect its Trade Secrets, which included information technology guidelines that "strictly limit the downloading, copying, or distribution of the company's confidential information by its employees" except as specifically authorized. (ECF No. 114 ¶ 32.)

As the founders of JHP and as executives at Par Sterile, Defendants Hinchen and Jenkins had detailed knowledge of and access to Par's Trade Secrets. (ECF No. 114 ¶ 34.) Additionally, Defendants Hinchen and Jenkins were also parties to employment agreements in which they agreed not to "directly or indirectly, disclose, reveal, divulge, publish or otherwise make known to any Person or use any Confidential Information[8] for any purpose or reason whatsoever," except as discharging their duties as employees of Par. (*Id.*)

On June 6, 2014, Defendant Jenkins resigned his employment with Par Sterile. (ECF No. 114 ¶ 35.) As part of his resignation, Defendant Jenkins "received a substantial severance payment" and also executed a "Separation Agreement and Release" in which he acknowledged his access to Par's Confidential Information and agreed that he "shall not . . . directly or indirectly, use, communicate, disclose or disseminate any Confidential Information" nor "solicit, hire, induce or attempt to induce . . . any director, officer, employee, contractor, consultant or agent" of Par for one year. (ECF No. 114 ¶ 35.) On June 11, 2014, Defendant Hinchen resigned his employment with Par Sterile and similarly received a "substantial severance payment" and executed an identical

---

[8] The employment agreement defines "Confidential Information" as "all information, data, agreements, documents, reports, 'know-how,' interpretations, plans, studies, forecasts, projections, and records . . . containing or otherwise reflecting information [including] . . . operating procedures, techniques, systems, processes and methods, all intellectual property, product and service information . . . and . . . other commercial 'know-how,' trade secrets and information not available to the public generally." (ECF No. 114 ¶ 34.)

Separation Agreement and Release. (ECF No. 114 ¶ 36.) Par alleges that, around the time of their respective resignations, Defendants Hinchen and Jenkins began planning to launch a new company, using Par's Confidential Information, that would compete with Par for business from hospitals and other healthcare providers using a "compound manufacturing" model. (ECF No. 114 ¶ 37.) "Compounding by an outsourcing facility is a practice in which a person combines, mixes, or alters ingredients of a drug to create a medication under the supervision of a licensed pharmacist." (*Id.*)

Par contends that, relying on its Confidential Information, Defendants Hinchen and Jenkins began soliciting Defendants Short and Kohut, who in turn assisted Defendants Hinchen and Jenkins in "creating numerous aspects of their competing business" using Par's Confidential Information. (ECF No. 114 ¶ 38.) On July 29, 2015, Defendants Hinchen and Jenkins formally incorporated QuVa in Delaware and subsequently announced their acquisition of a drug compounding facility in Sugar Land, Texas and a manufacturing facility in Bloomsbury, New Jersey. (ECF No. 114 ¶ 39.) On or about August 31, 2015, QuVa hired Defendant Kohut as its Vice President of Operations. (*Id.*) On or about October 8, 2015, QuVa hired Defendant Short as its Vice President of Quality. (*Id.*)

Par alleges QuVa is "pursuing a strategy of rapid growth to become a major competitor in the sterile drug manufacturing market by . . . poaching experienced employees of Par Sterile," specifically those with "intimate knowledge of the Trade Secrets and other confidential information regarding sterile manufacturing, [Vasostrict], and Par's other sterile products." (ECF No. 114 ¶ 41.) In doing so, QuVa solicited, induced, and ultimately hired the following Par employees: Defendant Rhoades, Par Sterile's Manager of Sterility Assurance, on or about October 26, 2015; Defendant McGrady, Par Sterile's Manager of Deviation and Lot Disposition, on or

about February 15, 2016; Defendant Hartley, Par Sterile's Director of Technical Services, on or about March 14, 2016; Ahmed Soliman ("Soliman"), Qualitest Pharmaceutical's Manager of Analytical Research & Development, on or about April 1, 2016; Guy Thompson ("Thompson"), Par Sterile's Supervisor of the Microbiology Lab, on or about November 14, 2016; Defendant Rutkowski, Par Sterile's Senior Vice President and General Manager of the Rochester, Michigan facility, on or about April 17, 2017; Ashley Short ("Short"), Par Sterile's Quality Control Chemist II, on or about May 8, 2017; and Chinnasamy Subramaniam ("Subramaniam"), Par Sterile's Manager of Analytical Research & Development, on or about June 28, 2017. (ECF No. 114 ¶ 42.) Par alleges that, after joining QuVa, these former employees "aided and abetted QuVa's strategy by breaching their own employment agreements with Par." (ECF No. 114 ¶ 43.) Defendants Kohut, Short, and Rhoades each had detailed knowledge of and access to Par's Trade Secrets, and each was also party to the same Separation Agreement and Release as Defendants Hinchen and Jenkins. (ECF No. 114 ¶ 44.)

Par alleges Defendants Kohut, Short, and Rhoades each breached their non-disclosure agreements by utilizing Par's Trade Secrets to benefit QuVa. (ECF No. 114 ¶ 45.) Par further claims that Defendants Kohut, Short, Rhoades, McGrady and Hartley, as well as non-party Soliman, breached the non-solicitation provisions in their respective employee agreements: Defendant Kohut by soliciting Defendant McGrady on or about January 21, 2016, Defendant Hartley on or about February 1, 2016, Subramaniam on January 25, 2016, and Soliman on or about April 7, 2016; Defendant Short by soliciting Defendant McGrady on or about January 21, 2016, Subramaniam on January 25, 2016, Defendant Hartley on or about February 1, 2016, Soliman on or about April 7, 2016, and Thompson on or about February 8, 2016; Defendant Rhoades by soliciting Defendant McGrady on or about January 21, 2016, Defendant Hartley on or about

February 1, 2016, and Thompson on or about February 8, 2016; Defendant McGrady by soliciting Soliman on or about April 1, 2016; and Defendant Hartley by soliciting Defendant Rutkowski on or about September 17, 2016. (ECF No. 114 ¶ 46.)

In June 2017, Par learned that, on or about April 19, 2017, QuVa submitted a letter to the FDA requesting that vasopressin be added to the bulk drug substances list under Category 1 pursuant to the FDA's "Interim Policy on Compounding Using Bulk Drug Substances under Section 503B of the Federal Food, Drug, and Cosmetic Act" (the "Interim Policy").[9] (ECF No. 114 ¶ 47.) On July 1, 2017, in response to QuVa's April 19, 2017 letter, the FDA added vasopressin to its Bulk Drug Substances List under Category 1 pursuant to Section 503B of the FDA. (ECF No. 114 ¶ 48.)

The FDA's action prompted Par to launch an investigation into whether QuVa and/or any of its agents or employees had improperly disclosed or used any of Par's Trade Secrets or other confidential information. (ECF No. 114 ¶ 49.) Upon reviewing its internal emails, Par learned that Defendant Rutkowski began disclosing Par's confidential information to QuVa by email as early as June 2016, ten months before he resigned from Par Sterile. (ECF No. 114 ¶ 50.) Specifically, on June 28, 2016, Defendant Rutkowski sent to Defendant Kohut, who was then employed by QuVa, a Par backorder detailing certain Trade Secrets in the form of confidential business information. (ECF No. 114 ¶ 51.) On March 9, 2017, Defendant Rutkowski provided Defendant Kohut with Par Trade Secrets concerning how to pass an FDA facility inspection, to which Defendant Kohut replied "[a]ppreciate the tip." (ECF No. 114 ¶ 53.) This email followed an earlier

---

[9] The "Interim Policy" is "intended to provide guidance to the pharmaceutical industry regarding the submission and review of nominations of substances to be included on the FDA's list of bulk drug substances that may be used in compounding conducted by outsourcing facilities under section 503B of the FDCA." (ECF No. 114 ¶ 47.)

email from Defendant Rutkowski, in which he congratulated QuVa on opening an operational facility by stating "Way to go team![]" (*Id.*)

Additionally, on March 13, 2017, Defendants Rutkowski and Kohut had a conversation over e-mail in which they discussed "their joint efforts to recruit Par Sterile employees [to] QuVa while [Defendant] Rutkowski was still employed by Par Sterile." (ECF No. 114 ¶ 54.) In that conversation, Defendants Rutkowski and Kohut discussed their failed efforts to bring a Par employee to QuVa, with Defendant Rutkowski stating "I spoke to him but he elected to go elsewhere. Not much else I can do." (*Id.*) Also on March 13, 2017, Defendant Rutkowski sent Defendant Kohut an internal Par PowerPoint presentation containing Par Trade Secrets. (ECF No. 114 ¶ 55.) On March 15, 2017, Defendant Rutkowski sent Defendant Kohut three more internal Par PowerPoint presentations – each containing proprietary Trade Secrets including, among other things, supply chain metrics, monthly finances, and future business plans concerning vasopressin – to which Defendant Kohut replied "I'll steal with pride just like you taught me." (ECF No. 114 ¶ 56.)

Defendant Rutkowski improperly downloaded numerous Par documents to a personal hard drive within days of leaving Par Sterile. (ECF No. 114 ¶ 57.) Specifically, on April 3, 2017, Defendant Rutkowski downloaded a terabyte of confidential Par data concerning FDA regulations and inspections, accounting documents, and various personnel documents, in violation of its computer usage policies. (*Id.*)

Defendants Hinchen, Jenkins, Rutkowski, Kohut, Short, and Rhoades had daily access to Par's Trade Secrets and were involved in developing certain Trade Secrets and confidential information. (ECF No. 114 ¶ 59.) Par asserts that the aforementioned Defendants, as well as Soliman "have assumed roles at QuVa similar to their prior roles at Par Sterile" and that it would

have been impossible for them to "perform any work for QuVa regarding a vasopressin or other sterile drug product that would directly compete with . . . [Vasostrict] . . . without using Par's Trade Secrets." (ECF No. 114 ¶ 60.) Par further alleges that the other former Par employees working for QuVa – Soliman, Thompson, Short, and Subramaniam – have each assumed roles at QuVa similar to the roles they performed at Par and that "QuVa has not taken the steps necessary to prevent these former Par Sterile employees from disclosing or using Par's Trade Secrets[.]" (ECF No. 114 ¶ 61.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

#### A. Par's Motion to Dismiss QuVa's Counterclaim Six

On October 13, 2017, Defendants QuVa, Jenkins, Hinchen, and Rutkowski filed the Answer to Par's original complaint, which contained Counterclaim Six, asserting unfair competition under New Jersey law. (ECF No. 48 at 64-66.) On November 17, 2017, Par filed a Motion to Dismiss Defendants' Counterclaim Six for failure to state a claim. (ECF No. 66.) Thereafter, on January 12, 2018, Par filed its Amended Complaint. (ECF No. 114.)

An amended complaint supersedes the original complaint such that any pending motions addressing the original complaint may be deemed moot. *See West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Here, Defendants' Counterclaim Six was filed in the Answer to the original complaint, which was superseded by the Amended Complaint. Accordingly, Par's Motion to Dismiss Defendants' Counterclaim Six is **DENIED AS MOOT.**[10]

#### B. Defendants Kohut, McGrady, Hartley, and Short's Motion to Dismiss for Lack of Personal Jurisdiction

On March 12, 2018, Defendants Kohut, McGrady, Hartley, and Short (the "Added Defendants") filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction, asserting that this Court lacks general and specific personal jurisdiction over the Added Defendants. (ECF No. 166 at 7-17.) On April 23, 2018, Par filed an opposition to this motion (ECF No. 189), for which it later provided a redacted version. (ECF No. 199). Par counters, *inter alia*, that this Court has specific personal jurisdiction over the Added Defendants as they purposefully

---

[10] This Court notes that the dismissal of Par's Motion to Dismiss is without prejudice, and Par is free to file a Motion to Dismiss should Defendants file an answer to the Amended Complaint re-asserting such counterclaim.

directed their activities at New Jersey, and that the Added Defendants' denials of misconduct do not deprive this Court of personal jurisdiction. (ECF No. 199 at 9-17).

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent allowed under the Fourteenth Amendment of the United States Constitution. *N.J. Ct. R.* 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996).

Personal jurisdiction may be either general or specific. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). However, "[s]ince *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdictional theory.'" *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 925).

There is a three-prong test to determine whether specific personal jurisdiction exists. *Sandy Lane*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it

otherwise "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "At the threshold, the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Sandy Lane*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Physical entrance is not required, but only the "deliberate targeting of the forum." *Id.* This Court has specific personal jurisdiction over the Added Defendants as each of the three prongs of the specific jurisdiction inquiry is satisfied.

The Added Defendants purposefully directed their activities at the forum state, New Jersey. QuVa consulted Defendants Kohut, McGrady, Hartley, and Short – all former Par employees with knowledge of Par's Trade Secrets – for assistance in establishing QuVa's Bloomsbury, New Jersey facility. (ECF No. 114 ¶¶ 41-61.) Specifically, Par alleges the Added Defendants misappropriated Par's Trade Secrets by implementing QuVa's Aseptic Process Simulation ("APS") and Environmental/Personnel Monitoring Master ("EM") Plan. (Par's Brief in Support of Motion for Preliminary Injunction (ECF No. 69 at 11, 14).)



(Lustberg Decl. (ECF No. 193-1, Ex. 14).) Similarly, ████████████████████████████████████████ ████████████████████████████ (ECF No. 193-1, Ex. 4.) ████████████ ████████████████████████████████, as Par has alleged that compounded sterile drug products are produced as the Bloomsbury, New Jersey facility as well. (ECF No. 114 ¶ 39.)

Additionally, each of the Added Defendants sufficiently directed activities towards New Jersey such that this Court has specific personal jurisdiction over each Added Defendant.

Defendant McGrady's express job responsibilities included ████████████ ████████████████████████████████████████████████████████████ ████████████████████ (McGrady Decl. (ECF No. 166-5 ¶ 7).) Moreover, Defendant McGrady noted that he is a ████████████████████████████████████████████████ ████████████████████████████████████ (ECF No. 166-5 ¶¶ 7-8.)

Next, the Added Defendants concede that Defendant Hartley, QuVa's Director of Facility Engineering, was ████████████████████████████████████████████████ (Hartley Decl. (ECF No. 166-3 ¶ 7).) Defendant Hartley ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ . (ECF No. 166-3 ¶ 8.)

Defendants Kohut and Short worked closely with Defendant Hartley in overseeing the New Jersey facility. Specifically, Defendant Kohut concedes she ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ . (Kohut Decl. (ECF No. 166-2) ¶ 7.) Meanwhile, Defendant Short noted he ████████████████████████████████ ████████████████████████████████████████████████ (Short Decl. (ECF No. 166-4) ¶ 7.) Defendant Short also ████████████████████ as QuVa's Vice President of Quality and further provided ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ (*Id.*)

Finally, the Added Defendants also solicited Par personnel to operate QuVa's New Jersey facility, in alleged violation of their respective employment agreements. Defendant Hartley

solicited Defendant Rutkowski, the General Manager of QuVa's New Jersey facility who allegedly spent months sending Par's confidential information to Defendant Kohut before leaving Par. (ECF No. 114 ¶¶ 46-58.) Defendant Kohut admits she ████████████████████████████████ ███████████████████████ (ECF No. 166-2 ¶ 7), while Defendant Short claimed ████████████ ████████████████████████████████████████████████████ (ECF No. 166-4 ¶ 7). Additionally, Defendants Kohut and Short each solicited Subramaniam – a Par Sterile executive who became QuVa's Director of Quality Control in New Jersey – to QuVa. (ECF No. 114 ¶¶ 46, 62.) Accordingly, the Added Defendants' solicitation of employees to and involvement in the development of QuVa's New Jersey branch constitute purposeful activities directed at New Jersey sufficient to satisfy the first prong of the specific personal jurisdiction inquiry.

Second, Par's claims against QuVa and the Added Defendants arise out of Defendants' purposeful activities aimed at New Jersey. The Added Defendants availed themselves of New Jersey law by utilizing Par's Trade Secrets in developing QuVa's New Jersey facility and by soliciting Par's employees to work at QuVa's New Jersey facility, in alleged violation of their employment agreements. The fact that the Added Defendants performed some of this supervision and solicitation outside of New Jersey is not dispositive. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997) (holding "even a single contact can be sufficient" to confer personal jurisdiction); *see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (holding "telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction"). As such, the litigation "arise[s] out of or relate[s] to" the Added Defendants' purposeful conduct aimed at New Jersey, and accordingly, the second prong of the specific personal jurisdiction inquiry is satisfied. *Sandy*

*Lane*, 496 F.3d at 317 (citations omitted).

Finally, this Court's exercise of jurisdiction "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). In evaluating the fairness of exercising personal jurisdiction over a defendant, courts consider

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Each of these considerations weigh in favor of exercising personal jurisdiction over the Added Defendants. The Added Defendants were regular visitors to New Jersey in their efforts to develop the Bloomsbury facility, the Added Defendants have not alleged that litigating this matter in New Jersey would create an undue burden upon them, and New Jersey has a cognizable interest in adjudicating this dispute as a substantial amount of the alleged illicit conduct took place in New Jersey and was directed towards a New Jersey based facility.

Next, this Court is not persuaded by the Added Defendants' argument that there is no personal jurisdiction pursuant to the "*Calder* effects test." *See Calder v. Jones*, 465 U.S. 783, 787 (1984); *see also IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60 (3d Cir. 1998). The *Calder* effects test is only applied when the defendant did not intentionally expressly aim tortious conduct at the forum State, and such is not the case here, as discussed *supra*. *IMO Indus.*, 155 F.3d at 264. Furthermore, the Added Defendants' denial of misconduct does not deprive this Court of personal jurisdiction over them. "The Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for lack of jurisdiction due to merits-related defects *in only narrow categories of cases*." *Davis v. Wells Fargo*, 824 F.3d 333, 349-50 (3d Cir. 2016) (emphasis added). "[A] suit may sometimes be

dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). Par's claims do not fall into these narrow categories such that an evaluation on the merits is necessary for determining personal jurisdiction, as its claims are neither insubstantial nor frivolous. On the contrary, this Court has already determined that Par has a substantial likelihood of success on the merits of its claim when it granted, in part, Par's Motion for a Preliminary Injunction. (ECF No. 157 at 10-22.)

Finally, the fact that the Added Defendants acted as employees of QuVa does not insulate them from this Court's jurisdiction. Citing *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 845-50 (3d Cir. 2003), the Added Defendants assert "Par improperly attempts to conflate personal jurisdiction over QuVa, the Added Defedants' employer, with personal jurisdiction over the Added Defendants." (ECF No. 166 at 15.) "Although it is true that 'jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him [or her],'" *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 F. App'x 186, 189 (3d Cir. 2013) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), the Supreme Court has rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton*, 465 U.S. at 781 (citing *Calder*, 465 U.S. at 789). Thus, where a defendant "was personally involved in committing various torts . . . [his or] her actions would subject [him or] her to jurisdiction even under the fiduciary shield doctrine." *Schley v. Microsoft Corp.*, 08-cv-3589, 2008 WL 5075266, at *13 (D.N.J. Nov. 24, 2008).

The fiduciary shield doctrine does not apply in this context as Par asserts claims for breach

of contract against the Added Defendants for their alleged disclosure of Par's Trade Secrets and solicitation of Par employees. These counts are exclusive to the Added Defendants as no such contracts exist between QuVa and Par. Moreover, the Added Defendants' reliance on *MoneyGram* is inapposite as, unlike here, the individual defendants in that matter never "signed the [subject] Agreement in their individual capacities." *MoneyGram*, 65 F. App'x at 849. Accordingly, Par may not avail itself of the shielded fiduciary defense.

As the Added Defendants purposefully directed their activities at the forum State, the litigation arises out of or relates to at least one of these direct activities, and the exercise of this Court's jurisdiction comports with the notions of fair play and substantial justice, the Added Defendants' Motion to Dismiss the Amended Complaint for lack of personal jurisdiction is **DENIED**.

### C.  Defendant Kohut's Motion to Dismiss for Failure to State a Claim

On March 12, 2018, Defendant Kohut filed a Motion to Dismiss Count Eight of the Amended Complaint, alleging breach of contract under New Jersey law, asserting that the restrictive covenant she executed was not a valid and enforceable contract (ECF No. 167.) On April 23, 2018, Par filed an Opposition to Defendant Kohut's Motion arguing that it will demonstrate, through discovery, that there is sufficient consideration backing Defendant Kohut's employment agreement (the "Kohut Agreement") such that it constitutes an enforceable contract. (ECF No. 190.)

"To prevail on a breach of contract claim [under New Jersey law], a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." *EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 113 A.3d 325, 345 (N.J. App. Div. 2015). The general

requirements for a valid contract include, among other things, valid consideration. *See Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. App. Div. 2002) (holding that, "[a]s a basic premise," no contract is enforceable without the flow of consideration).

Defendant Kohut contends that the promise of "continuing employment" in the Kohut Agreement does not constitute valid consideration. (ECF No. 167-1 at 6-10.) Defendant Kohut asserts that, because she was merely a consultant and not an employee, "continuing employment" cannot be read to mean "continuing consultancy," and accordingly, no valid contract exists as it lacks consideration.[11] (*Id.* at 8.) This Court is unpersuaded by Defendant Kohut's arguments.

In ruling upon a motion to dismiss, a court "must consider the complaint in its entirety," including "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under New Jersey law, "[w]here a contract is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *Cty. of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998). This principle has been applied in determining motions to dismiss whereby the existence of valid consideration is at issue. *See New Jersey Citizen Action, Inc. v. Cty. of Bergen*, 919 A.2d 170, 177-78 (N.J. App. Div. 2007). New Jersey law requires a court "to endeavor to find a fair and reasonable interpretation of the covenant, rather than render it completely void." *In re The Score Board, Inc.*, 238 B.R. 585, 593 (D.N.J. 1999). A court "must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain." *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp. 2d 459, 464 (D.N.J. 2013). "The

---

[11] Defendant Kohut asserts that the difference between "continuing employment" and "continuing consultancy" in this context is critical as there are substantial discrepancies in the tax and insurance implications of maintaining an employee versus maintaining an independent contractor. (ECF No. 167-1 at 8-10.)

court's role is to consider what is written in the context of the circumstances at the time of the drafting and to apply a rational meaning in keeping with the expressed general purpose." *Ciolino v. Ameriquest Transp. Servs., Inc.*, 751 F. Supp. 2d 776, 778-79 (D.N.J. 2010).

As a consultant for Par, Defendant Kohut signed the Kohut Agreement which contained clauses relating to Trade Secrets, Confidential Information, and non-solicitation. (ECF No. 114 ¶ 160.) The Kohut Agreement provided that Defendant Kohut would not "divulge, disclose, or communicate to anyone . . . either during or after the termination of your employment with Par, any of Par's Proprietary Information." (*Id.* ¶ 161). The Kohut Agreement further provided Defendant Kohut may not "induce, solicit, encourage or attempt to solicit, induce or encourage any employee of Par to leave his/her employment with Par . . . or . . . hire, attempt to hire, assist in the hire of, or attempt to assist in the hire of an employee of Par." (*Id.* ¶ 162). Par adequately pled that Defendant Kohut knowingly and improperly violated both these clauses in the Kohut Agreement and that Par suffered damages as a result. (*Id.* ¶¶ 165-169.) Although the Kohut Agreement may be ambiguous as to the exact relationship between Par and Defendant Kohut, such ambiguity does not rise to the level of significance so as to find a want of consideration. On the contrary, determining that the Kohut Agreement lacked consideration altogether would lead to the sort of drastic result New Jersey law seeks to avoid in contract interpretation at the motion to dismiss phase. *See New Jersey Citizen Action*, 919 A.2d at 177-78; *see also The Score Board*, 238 B.R. at 593.

When considering "the relations of the parties, the attendant circumstances, and the objects they were trying to attain," *A.D.L.*, 975 F. Supp. 2d at 464, it is evident that the parties understood there to be some enforceable agreement to which they were bound. At the very least, Par should be afforded the opportunity to demonstrate, at the discovery phase, that Defendant Kohut intended

to assume the benefits and obligations contained in the contract notwithstanding a clerical, typographical error in describing her relationship to Par.

Defendant Kohut also contends the Kohut Agreement is not "ancillary to employment" or to any other contract, and as it cannot stand alone, the restrictive covenant is void. (ECF No. 167-1 at 10-12.) This argument presupposes that the Kohut Agreement lacks consideration entirely, a proposition which this Court has rejected. As Par has adequately pled the existence of a valid contract between Defendant Kohut and Par, Defendant Kohut's failure to perform a defined obligation under the contract, and damages resulting from the breach, Defendant Kohut's Motion to Dismiss Count Eight of the Amended Complaint is **DENIED**.

### D. Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, McGrady, Hartley, and Short's Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen

On March 12, 2018, Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, McGrady, Hartley, and Short filed a Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of the Amended Complaint asserting that Par has failed to state a claim as Texas law governs Par's Trade Secret misappropriation claims. (ECF No. 168-1 at 10-16.) On April 23, 2018, Par filed an Opposition to Defendants' Motion to Dismiss asserting that it adequately alleges that New Jersey law has the most significant relationship to the litigation and that Defendants' Motion to Dismiss is premature. (ECF No. 191 at 5-10.)

In resolving choice-of-law disputes, New Jersey follows the "most significant relationship" test. *Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (2008)). "This is a two-part test." *Mansicalo*, 709 F.3d at 206. The first part of the choice-of-law inquiry is to determine whether or not an actual conflict exists between the laws of the potential forums. *Id.* (citing *Lebegern v. Forman*, 471 F.3d 424,

429-30 (3d Cir. 2006)). "Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Mansicalo*, 709 F.3d at 207 (quoting *Camp Jaycee*, 962 A.2d at 461). "In determining the choice of law for trade secrets cases, the place of the alleged misappropriation is controlling." *Quintiles IMS Inc. v. Veeva Sys. Inc.*, No. 17-cv-177, 2017 WL 4842377, at *5 (D.N.J. Oct. 25, 2017) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). Meanwhile, in the case of other intentional torts, the analysis considers the place where the injury occurred and the place where the conduct causing the injury occurred. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 267 (3d Cir. 2000).

Defendants contend Texas law should apply to the trade secrets claims (ECF No. 168-1 at 10-16) whereas Par contends New Jersey law should apply. (ECF No. 191 at 5-10). There is an apparent conflict between the laws of Texas and New Jersey.[12] First, the Texas Uniform Trade Secrets Act ("TUTSA") expressly preempts state common law trade secret claims and related torts. *Tex. Civ. Prac. & Rem. Code Ann.* § 134A.007(a); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 17-cv-444, 2018 WL 315753, at *2-3 (W.D. Tex. Jan. 4, 2018). Meanwhile, it is questionable as to whether the New Jersey Trade Secrets Act ("NJTSA") preempts common law claims. *See SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*, 2012 N.J. Super. Unpub. LEXIS 2704, at *18-19 (N.J. Super. Ct. Ch. Div. Dec. 7, 2012) (holding that the rights and remedies afforded under the NJTSA are "cumulative" rather than "restrictive" of the remedies afforded under common law, while noting this to be a case of first impression). Second, TUTSA preempts "all claims based on the alleged improper taking of confidential business information" regardless

_____

[12] This Court notes that it is not necessary to determine whether there is an actual dispute between Texas and New Jersey law. As discussed below, Defendants' choice-of-law argument supporting its Motion to Dismiss is premature given the lack of factual record available. Nevertheless, this Court determines that an apparent conflict does exist.

of whether such information qualifies as a trade secret pursuant to the statutory definition. *Embarcadero*, 2018 WL 315753, at *3. Meanwhile, New Jersey common law affords protection for "confidential" information, which may not qualify as a trade secret. *See SCS Healthcare,* 2012 N.J. Super. Unpub. LEXIS 2704, at *17-18.

Par has adequately pled that New Jersey has the most significant relationship to the alleged tortious conduct so as to withstand Defendants' Motion to Dismiss. Among other things, the Amended Complaint alleges that Par's Trade Secrets were misappropriated in an effort to open QuVa's New Jersey facility, Par's employees were solicited to work in New Jersey in a violation of the various employment agreements, and the named Defendants regularly traveled to New Jersey in conducting these activities. (ECF No. 114 ¶¶ 8-16, 39, 118, 136.) Accepting Par's allegations as truth at the motion to dismiss stage, it is evident that New Jersey has the most significant relationship to the tortious conduct alleged. Indeed, outside of the residences of the various individual defendants, an overwhelming amount of the conduct took place in, or was aimed at New Jersey.

Nevertheless, Defendants' choice-of-law argument is premature. A choice-of-law analysis is "premature" at the pleading stage when a court "does not have sufficient facts to thoroughly analyze the various considerations required to adequately address a choice-of-law determination." *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-cv-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013). "At the motion to dismiss stage, 'it can be inappropriate or impossible for a court to conduct [a choice of law] analysis . . . when little or no discovery has taken place.'" *Quintiles*, 2017 WL 4842377, at *4 (quoting *In re Samsung DLP Television Class Action Litig.*, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009)). A choice-of-law analysis is only appropriate at the motion to dismiss stage when "there is no dispute about the facts relevant" to

the analysis. *Bedi v. BMW of N. Am., LLC*, No. 15-cv-1898, 2016 WL 324950, at *4 (D.N.J. Jan. 27, 2016). This is a case-specific analysis. *See Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 490-91 (D.N.J. 2009).

Defendants have provided this Court with no evidence supporting its assertion that Texas has a more significant relationship to this litigation than New Jersey or Michigan. It is "inappropriate and impossible" for the Court to determine "each forum's contacts to the litigation" based solely on a defendant's motion. *Krys v. Aaron*, 106 F. Supp. 3d 472, 479 (D.N.J. 2015). Where a defendant fails to carry its burden of proving that dismissal is appropriate based on the pleadings, courts should abstain from performing a full choice-of-law analysis. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Here, Defendants' bald assertions merely create a question of fact as to the location where the allegedly tortious conduct took place, and as such, any dispositive choice-of-law determination cannot be made absent a complete factual record. *See Quintiles*, 2017 WL 4842377, at *5.

As Par has adequately pled that New Jersey has the most significant relationship to the alleged tortious conduct and the Added Defendants' motion is premature, Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, McGrady, and Hartley's Motion to Dismiss Counts Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of the Amended Complaint is **DENIED**.

### E. Defendant Rhoades' Motion to Dismiss

On April 10, 2018, Defendant Rhoades filed a Motion to Dismiss arguing this Court lacks personal jurisdiction over him, this Court should dismiss the Amended Complaint for lack of venue, and Texas, Michigan, or New York law should apply to the trade secret misappropriation claims against him, and accordingly, such claims should be dismissed. (ECF No. 182.) On April 23, 2018, Par filed an Opposition to Defendant Rhoades' Motion to Dismiss asserting that

Defendant Rhoades consented to jurisdiction and venue, this Court has specific personal jurisdiction over Defendant Rhoades, venue is proper in New Jersey, and all trade secrets claims were adequately pled under New Jersey law. (ECF No. 191.)

**a. Personal Jurisdiction Over Defendant Rhoades**

The three-part inquiry for determining whether specific personal jurisdiction over a defendant exists requires this court to assess whether the defendant "purposefully directed" activities at the forum and if the litigation arises out of or relates to one of those activities. *Sandy Lane*, 496 F.3d at 317 (citations omitted). If these conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

Par adequately pled that Defendant Rhoades purposefully directed activities at the forum and that the litigation arises out of such activities. In this Court's opinion partially granting Par's Motion for a Preliminary Injunction, this Court has already determined that Par is likely to succeed on its misappropriation claim because, among other reasons, Defendant Rhoades disclosed the APS Plan, a Trade Secret, to QuVa. (ECF No. 157 at 19.) ██████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████     ███████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████. (ECF No. 193-1, Ex. 14.) Par further alleged that Defendant Rhoades misappropriated confidential Par documents instrumental in creating QuVa's EM Plan. (*Id.*)

Defendant Rhoades conceded that he traveled to New Jersey monthly to ████████████

█████████████████████ (Rhoades Decl. (ECF No. 184) ¶ 27.) Furthermore, as QuVa's Director of

Corporate Sterility Assurance, Defendant Rhoades was tasked with ████████████████ ████████████████████████████ (*Id.* ¶ 12.) Defendant Rhoades' attempts to invoke the fiduciary shield doctrine to insulate himself from personal jurisdiction fails for the same reasons as with the other individual defendants, as he undertook actions in an individual capacity. *See Schley*, 2008 WL 5075266, at \*13. As such, Defendant Rhoades purposefully directed activities towards New Jersey and this litigation arises from such activity. Accordingly, this court has specific personal jurisdiction over Defendant Rhoades.[13]

### b. Venue in New Jersey

Venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred. 18 U.S.C. § 1391(b)(2). Venue "does not require that a majority of the events took place in the District, nor that the challenged forum be the best venue." *On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*, No. 06-cv-3951, 2007 WL 1234978, at \*6 (D.N.J. Apr. 25, 2017). Rather, the court need only "'preserve the element of fairness [by ensuring] that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 556 (D.N.J. 2018) (quoting *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Furthermore, a plaintiff's choice of venue is a "paramount concern." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 529 (D.N.J. 2000).

---

[13] Even if this Court found that it did not have specific personal jurisdiction over Defendant Rhoades, Defendant Rhoades waived any argument he could have made concerning personal jurisdiction by participating in the preliminary injunction hearing. *See Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) (a party who voluntarily participates in a preliminary injunction hearing is deemed to have waived the defense of lack of personal jurisdiction); *see also In re Asbestos Prod. Liab. Litig.*, 661 F. App'x 173, 177 (3d Cir. 2016) (a party waives its jurisdictional defense when it "actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum").

There are sufficient allegations in the Amended Complaint to determine that venue is proper in New Jersey. A substantial portion of the events giving rise to Par's claims against Defendant Rhoades took place in New Jersey. Par alleged that, during his monthly trips to New Jersey, Defendant Rhoades misappropriated its Trade Secrets in New Jersey and violated his employment agreement in an effort to staff the New Jersey facility. (ECF No. 184 ¶¶ 12, 27.) Furthermore, a defendant bears the burden of demonstrating improper venue in connection with a motion to dismiss, *Myers v. Am. Dental Ass'n*, 695 F.2d 724-25 (3d Cir. 1982), and Defendant Rhoades has fallen short of making such a demonstration. Although Defendant Rhoades' conduct spanned multiple states, he fails to assert that his conduct did not have a substantial relationship to New Jersey. Accordingly, venue is proper in this district.

### c. Choice-of-Law

Defendant Rhoades' choice-of-law argument is identical to that made by Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, McGrady, and Hartley. For the same reasons as discussed above, Defendant Rhoades' argument is erroneous.

As this Court has personal jurisdiction over Defendant Rhoades, venue is proper in New Jersey, and Par has adequately pled that New Jersey has the most significant relationship to the alleged tortious conduct, Defendant Rhoades' Motion to Dismiss is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Par's Motion to Dismiss QuVa's Counterclaim Six (ECF No. 66) is **DENIED AS MOOT**; Defendants Kohut, Short, McGrady, and Hartley's Motion to Dismiss for lack of personal jurisdiction (ECF No. 165) is **DENIED**; Defendant Kohut's Motion to Dismiss Count Eight of the Amended Complaint (ECF No. 167) is **DENIED**; Defendants QuVa, Hinchen, Jenkins, Rutkowski, Kohut, Short, McGrady, and Hartley's Motion to Dismiss Counts

Three, Four, Thirteen, Fourteen, Fifteen, and Sixteen of the Amended Complaint (ECF No. 168) is **DENIED**; and Defendant Rhoades' Motion to Dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim (ECF No. 182) is **DENIED**.

**Date: January 11, 2019**                    */s/ Brian R. Martinotti*
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**