| PAR PHARMACEUTICAL, INC., et.al., | : | |
| --- | --- | --- |
| | : | UNITED STATES DISTRICT COURT |
| Plaintiffs, | : | DISTRICT OF NEW JERSEY |
| | : | |
| v. | : | Civil Action No. 17-6115 (BRM) |
| | : | |
| QUVA PHARMA, INC., et. al., | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Defendants. | : | |

This matter comes before the Court on the following motions: (1) a motion by Defendants QvVa Pharma Inc. ("QuVa"), Stuart Hinchen, Peter Jenkins, Mike Rutkowski, Donna Kohut, David Short, Travis McGrady, David Hartley, joined by Defendant Stephen Rhoades, for "entry of a protective order to prevent Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC … from obtaining broad discovery prior to finalizing its identification of alleged trade secrets"; and (2) a motion by Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC (together, "Par") to compel discovery. As set forth below, Defendants' motion will be denied, and Par's motion will be granted in part and denied in part.

I. QuVa, et al.'s Motion for Protective Order

On August 14, 2017, Par filed its Complaint asserting claims for trade secret misappropriation, unfair competition, breach of contract, breach of fiduciary duty, breach of the duty of loyalty, breach of the duty of confidence, and tortious interference with contractual relations. ECF No. 1. After filing suit, Par moved for expedited discovery, which the Court granted. ECF No. 43. As part of expedited discovery, Par responded to Defendants' interrogatories, identifying certain trade secrets (designated Trade Secret Nos. 1–52) that Par alleges Defendants misappropriated. ECF No. 278-1, Ex. B at 36–69. Par's interrogatory responses further stated that Par "reserve[d] the right to change, add, or remove the identified trade secrets based on information or documents revealed or obtained through investigation or discovery." Id., Ex. A at 7. Defendants

objected to Par's reservation, noting that "Par is not entitled to include broad catch-all language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement." Id., Ex. C at 2-3.

During expedited discovery, Defendants produced documents to Par, some of which had been in the possession of one of Par's former employees who, at that time, was employed by QuVa. According to Par, when it reviewed Defendants' document production, Par learned of other trade secrets that Defendants allegedly misappropriated. As such, upon the commencement of full discovery, Par again responded to Defendants' interrogatories and identified not only the earlier-identified 52 trade secrets, but 16 additional trade secrets as well (designated Trade Secret Nos. 53-68). Defendants contend Par's assertion of additional trade secrets was improper.

The parties are presently engaged in full discovery, and Defendants are concerned that Par will use information obtained in discovery to improperly expand their trade secret list. *See* Snyder *et al.*, Trade Secret Law and Corporate Strategy §9.05[3], 178-79 (2018) ("More than one plaintiff has reviewed a defendant's internal documents only to claim information in those documents as plaintiff's trade secrets…"). Defendants point out that Par's discovery requests seek, among other things, all Par documents and information in Defendants' possession and full images of the electronic media that contain Par documents and information. *See*, *e.g.*, ECF No. 278-1, Ex. F at 8, 21. Concerned that Par may improperly claim that information found in Defendants' possession is a trade secret, and in light of the broad discovery the parties are undertaking, Defendants have filed this motion seeking the following, two-fold relief:

First, Defendants contend that Par should be held to its original designation of trade secrets made in response to QuVa's Interrogatory No. 1, dated October 30, 2017, plus certain trade secrets that were the subject of an earlier motion to strike that was denied by Judge Martinotti. Thus, Defendants ask that Par's June 20, 2018 list of alleged trade secrets Nos. 53, 54, 56, and 58-68 be

2

stricken, and that Par be precluded from further expansion of its identification of trade secrets based on documents produced during the discovery now underway. *See* Defendants' Proposed Order at ECF No. 277-1.

Second, Defendants seek a Protective Order directing that Defendants are not required to provide discovery to Par relating to non-trade secret topics (*i.e.*, topics that do not relate to items identified as Par trade secrets, including discovery related to Par's non-trade secret claims) until Par's trade secret list is deemed final. *Id.*

In support of their motion, Defendants cite a number of cases, primarily from outside of this District, that support the proposition that "[g]enerally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation." *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409(PGS), 2013 WL 5781183, at *4 (D.N.J. Oct. 25, 2013). Par also makes an analogy to patent cases, in which this District's Local Patent Rules require parties to delineate their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.

In opposition to Defendants' motion, Par argues that although Defendants styled their motion as one for a protective order, what they actually seek is an order compelling Par to "finalize" its identification of trade secrets in order to limit Par to those that Par identified when it moved for a preliminary injunction. Par contends that "finalizing" its list of asserted trade secrets, limited to those identified as part of its application for preliminary relief has no support in law because no court has ever done what Defendants ask this Court to do. Par further argues Defendants' motion has no support as a matter of policy, since adopting Defendants' argument and granting Defendants' relief would reward a trade secret defendant for hiding its misappropriation.

In resolving the instant dispute, it is helpful to review the various policy considerations recognized by courts that have addressed the question of whether a plaintiff must identify asserted

3

trade secrets early in the litigation. Indeed, it is not uncommon for the parties in trade secret cases to experience a "discovery impasse" where defendants oppose discovery until the plaintiff has identified in sufficient detail the trade secrets underlying its claims. *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007). As one sister district court has noted, courts generally have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its alleged trade secrets: (1) "a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure"; (2) "the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating"; and (3) a plaintiff that is required to identify the trade secrets at issue without knowing which of those secrets have been misappropriated is placed in somewhat of a "Catch-22" in that "[s]atisfying the requirement of detailed disclosure of the trade secrets without knowledge [of] what the defendant is doing can be very difficult" because "if the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret, [and] [i]f instead it is too specific, it may miss what the defendant is doing." *Id.*

On the other hand, courts have identified other policies which support delaying certain discovery until the trade secret plaintiff has sufficiently described the trade secrets at issue: (1) "lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor"; (2) "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant," therefore, "requiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery"; (3) "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated"; (4) "requiring the plaintiff to state its

4

claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives." *Id.* at 680-81. These considerations are helpful to the Court here.

As noted above, Defendants' motion relies primarily on case law that stands for the proposition that a plaintiff in a trade secret case must identify the trade secrets at issue early in the litigation. In the present case, Par has, at the earliest stages of this litigation, identified numerous trade secrets upon which it contends its claims are based. Indeed, Par identified 52 such trade secrets prior to receiving any discovery from Defendants and several more trade secrets after receiving early discovery. Thus, the issue on this motion is not whether Par has identified allegedly misappropriated trade secrets. Rather, the issue is whether that identification should be fixed and final at this early stage in the litigation. The Court concludes that it should not.

To the extent that Defendants contend that the authorities they rely on "demand finality" in trade secret disclosures, those authorities generally do not support the blanket prohibition sought here to preclude Par's ability to supplement its list of trade secrets as discovery proceeds. Many courts do, in fact, permit trade secret plaintiffs to amend or supplement their trade secret disclosures based on information gained through discovery, although often upon a showing of good cause. *See*, *e.g.*, *Morgardshammar, Inc. v. Dynamic Mill Servs. Corp.*, No. 09-379, 2009 WL 10685154, at *3 (W.D.N.C. Nov. 19, 2009) ("If subsequent discovery reveals additional trade secrets that may have been misappropriated, Plaintiff may amend the list to identify them."); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 12-220, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) (allowing the plaintiff to amend or supplement its list of trade secrets upon a showing of good cause).

Ultimately, the Court must balance two competing considerations. On the one hand, requiring a plaintiff to identify all trade secrets relevant to its claims prior to reviewing its opponent's documents minimizes the potential for abuse. On the other hand, requiring the same could serve to reward a defendant who may be skilled at hiding its misappropriation. Under the

5

facts of the present case, a balancing of these considerations weighs against granting Defendants' motion. Prior to any discovery, Par had identified numerous trade secrets that were allegedly misappropriated, thus the Court sees little risk that Par is simply fishing for discovery in order to develop a cause of action. Further, completely restricting Par's ability to amend its trade secret list could deprive Par of obtaining complete relief should it uncover additional trade secrets improperly in Defendants' possession. Moreover, as Judge Martinotti has found enough evidence of potential wrongdoing to issue a preliminary injunction, to the extent that there exist competing policies on the issue, the Court weighs them against Defendants. Consequently, for the reasons above, Defendants' motion will be denied.

II. <u>Par's Motion to Compel</u>

Par has moved to compel the following discovery:

Request for Production ("RFP") No. 1: "All documents related to or referencing Par."

RFP No. 2: "All documents that constitute or are related to information that originated from Par."

RFP No. 82: "A full and complete forensic image (using an industry-standard tool like FTK or EnCase and using a write-blocker) of all media (e.g., computers, tablets, phones, mobile devices, compact discs, USB devices, PDAs, and/or other digital storage media) that has been used to copy, download, store, transmit, transfer, access, or otherwise interact with documents that contain or reflect information that originated from Par."

RFP No. 83: "A full and complete forensic image (using an industry-standard tool like FTK or EnCase and using a write-blocker) of all media (e.g., computers, tablets, phones, mobile devices, compact discs, USB devices, PDAs, and/or other digital storage media) that has been issued to or used by Rhoades, Rutkowski, Hartley, and Kohut."

At issue are two categories of documents: (1) Par's documents and information in Defendants' possession, and (2) forensic images of all of Defendants' media that contain or may have contained Par's information. Defendants characterize these demands as "overbroad," and argue that Par is simply seeking "to rifle through Defendants' files in search of documents that it

can later claim are allegedly misappropriated trade secrets." ECF No. 292 at 1. The QuVa Defendants and Defendant Rhoades oppose Par's motion. Separately, Rhoades has moved for a protective order against the forensic imaging sought by Par. *See* ECF No. 281.

As to the first category of documents (*i.e.*, Par's documents and information in Defendants' possession), Defendants argue that Par's motion is unnecessary and premature. Defendants assert that they are willing and able to provide the discovery Par seeks once Par finalizes its identification of the allegedly misappropriated trade secrets. For the reasons stated above denying QuVa's motion for a protective order in that regard, Par's motion with respect to this first category (RFP Nos. 1 and 2) of documents will be granted.

As to the second category of materials (*i.e.*, forensic imaging), Par argues that forensic imaging is necessary to "show when and how Defendants used, distributed and/or destroyed Par's information." ECF No. 280 at 10. Without full forensic images, Par argues that it will not have complete information about when and how the media and files were stolen, accessed, copied, used, accessed, and/or shared, *i.e.*, the kinds of usage data that show the extent of misappropriation and the persons involved. Specifically, Par contends the following can be obtained only through forensic imaging: (1) deleted and partially overwritten documents, which could be evidence of spoliation or intent to conceal; (2) the "log file" that shows user-initiated activities such as a "manual defrag to hide illicit file downloads or deletions"; and (3) items that keyword searches would miss.

Defendants oppose Par's motion. First, Rhoades objects to Par's request for a forensic image of Rhoades' wife's laptop. Rhoades admits that a thumb drive containing Par information was inserted once into that laptop, but Rhoades contends he complied with his obligation to turn over the information on the thumb drive. Rhoades contends that Par's request to examine his wife's personal computer, which would give Par access to correspondence with friends, family, on-line

banking information, tax returns, and other private data and passwords, would result in the needless access to her personal and private information.

Second, the QuVa Defendants object to the request for forensic imaging as "overly broad, intrusive, expensive, vastly disproportional to the needs of this case, and against the weight of the case law." ECF No. 292 at 11. They point out that on its face, "RFP No. 82 apparently demands production of forensic images of QuVa's server, and all of the seven individual Defendants' QuVa-issued laptop computers," while "RFP No. 83 seeks a forensic image of all computers, phones, or digital media ever used by Defendants Kohut, Hartley, Rhoades, and Rutkowski, regardless of subject matter." *Id.* Defendants argue that these requests amount to "a request to subvert regular discovery (at its earliest stages) so that Par can conduct its own search of all of Defendants' computers." *Id.* Quoting a Connecticut state court, Defendants contend that "[i]n the pre-electronic age, this would be the equivalent of requesting the opposing party to deliver all its filing cabinets to the adversary's office and allow unrestricted access to every single letter or document filed therein." *Squeo v. Norwalk Hosp. Ass'n*, Civ. No. 095012548, 2010 WL 5573755, at *2 (Conn. Super. Ct. Dec. 14, 2010) (sustaining objections to production of phone and computer).

Contrary to Par's contention that the forensic imaging it requests is "routine," Defendants contend that forensic imaging is a "rare, last resort remedy reserved for discovery violations," and should not be permitted in the absence of any credible allegation of discovery misconduct. ECF 292 at 12. In this regard, QuVa notes that Par points only to a single alleged discrepancy between Defendants' document production and that of Mr. Tim Wood, a third party who was a long-time consultant to Par and Par's predecessor, and later a consultant for QuVa. QuVa also notes that Par omits the fact that it was QuVa, and not Par, that sought discovery from Mr. Wood. Defendants contend that they are "willing and able" to search for the requested documents through keyword and manual searching of files, computers and media, and after Par has reviewed Defendants'

production, Par could raise any apparent deficiencies with counsel and investigate any alleged "holes" in Defendants' production through normal discovery channels.

The QuVa Defendants also contend that "Par also grossly minimizes the expense, burden, and intrusiveness of its request for forensic images of Defendants' computers," which QuVa contends outweigh any alleged benefit of production. Additionally, QuVa cites privilege and privacy concerns, and, in particular, points out that Par and QuVa are competitors and the forensic imaging would give Par access to large amounts of QuVa's highly sensitive business information.

In response to Defendants' arguments, Par states that Par documents and information should not exist on any of Defendants' media devices and if Defendants' theft and misappropriation of Par material is so pervasive as to implicate dozens of media devices, Defendants have only themselves to blame for any logistical burdens associated with collecting multiple media devices to image and produce. In any event, Par points out that, contrary to Defendants' argument, Par has no interest in forensic images of servers, routers, and other generic computer equipment. Rather, the requests seek images of "all media (*e.g.*, computers, tablets, phones, mobile devices, compact discs, USB devices, PDAs, and/or other digital storage media) that has been used to copy, download, store, transmit, transfer, access, or otherwise interact with documents that contain or reflect information that originated from Par." Further, Par contends that any of Defendants' concerns regarding confidentiality are addressed by the parties' Discovery Confidentiality Order, and that the parties can similarly agree on a protocol for privileged documents.

Both Par and Defendants cite federal and state case law from across the country in which courts have either permitted or not permitted the type of discovery Par seeks. As the Sixth Circuit noted, [t]o be sure, forensic imaging is not uncommon in the course of civil discovery." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Nevertheless, "[c]ourts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection

between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *Id.* Further, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Id.*

The issue of forensic data collection is discussed in Comment 8.c. of the Sedona Principles:

> Forensic data collection requires intrusive access to desktop, server, laptop, or other hard drives or media storage devices, and is sometimes appropriate when key employees leave employment under suspicious circumstances, or if theft or misappropriation of trade secrets or confidential information may be involved. However, making a forensic copy of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence. While creating a forensic copy clearly is appropriate in some circumstances, particularly when there is unique ESI that can only be found--or an issue that can only be resolved--through a forensic examination of the system, including logs, registry keys, and tables, it should not be required unless circumstances specifically warrant the additional cost and burden and there is no less burdensome option available. When ordered, it should be accompanied by an appropriate protocol or other protective measures that take into account any applicable privacy rights and privileges, as well as the need to avoid copying ESI that is not relevant.

The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production, 19 Sedona Conf. J. 1, 140–41 (2018). Notably, Comment 5.g. to the Sedona Principles cautions that "[c]ivil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail."

Par points to a limited subset of information that it contends would not be available through electronic document production -- (1) deleted and partially overwritten documents, which could be evidence of spoliation or intent to conceal; (2) the "log file" that shows user-initiated activities such as a "manual defrag to hide illicit file downloads or deletions"; and (3) items that keyword searches would miss. As to third category, this applies in in every case in which keyword searches are done, as there always exists the possibility that even the most well-crafted keyword search may miss

10

items. Further, Par does not explain how at this point in the case the forensic artifacts such as "log files" constitute evidence so essential for Par's proofs that it would justify the extremely broad discovery Par seeks so early in discovery.

Importantly, the Court notes that Par seek full-blown imaging of the media and the devices at issue, thus giving Par access to every bit of ESI on these devices, whether relevant or not to this matter. Par has not requested a targeted collection of data, has not suggested a protocol or any other protective measures to avoid copying ESI that is not relevant, has not offered a method to avoid copying irrelevant, potentially competitively or personally-sensitive information that may be contained on the target devices, or, alternatively, has not explained why these are may not be viable options. Given the breadth of the request and the seemingly narrow categories of information sought from the vast amount of information at issue, the Court finds that the forensic imaging Par seeks is not warranted at this stage of discovery. The Court will deny Par's motion as to Par's requests seeking to compel forensic imaging from the QuVa Defendants and Rhoades without prejudice to Par renewing its requests later in discovery if such imaging is warranted under the circumstances at that time.

For the reasons above,

**IT IS** on this 27th day of February 2019

**ORDERED** that QuVa's motion for a Protective Order [277] is denied without prejudice; and it is further

**ORDERED** that Par's motion to compel [279] is granted in part and denied in part; and it is further

**ORDERED** that, the Court having denied Par's motion to compel forensic imaging, Rhoades' motion for a Protective Order [281] is denied as moot; and it is further

**ORDERED** that the joint proposed Scheduling Order to be submitted by the parties should

11

include a date by which Defendants will respond to RFP Nos. 1 and 2; and it is further

**ORDERED** that the parties are to submit the joint proposed Scheduling Order within 14 days of the date of this Order; and it is further

**ORDERED** that the Clerk is to terminate the motions at ECF Nos. 277, 279 and 281.

    *s/ Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**United States Magistrate Judge**