**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
:
:
:
PAR PHARMACEUTICAL, INC. and              :
PAR STERILE PRODUCTS, LLC,                :
:          Case No. 3:17-cv-6115-BRM-DEA
Plaintiffs,              :
:
:
v.                          :
:              **OPINION**
:
QUVA PHARMA, INC., STUART                 :
HINCHEN, PETER JENKINS, MIKE              :
RUTKOWSKI, DONNA KOHUT,                   :
DAVID SHORT, STEPHEN RHOADES,             :
TRAVIS MCGRADY, and DAVID                 :
HARTLEY,                                  :
:
Defendants.              :
:
———————————————————:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion by Plaintiffs Par Pharmaceutical, Inc. and Par Sterile Products, LLC (collectively, "Par" or "Plaintiffs") for Partial Summary Judgment on Counts V through XIII of the First Amended Complaint. (ECF No. 477.) Defendants Peter Jenkins, Stuart Hinchen, Mike Rutkowski, Donna Kohut, David Short, Stephen Rhoades, Travis McGrady, and Mike Hartley (collectively, the "Individual Defendants") filed an Opposition to Plaintiffs' Motion. (ECF Nos. 483 & 484.)[1] Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the

———————————————
[1] Defendant Stephen Rhoades filed a separate Opposition. (ECF No. 483.)

reasons set forth below and for good cause shown, Par's Motion for Partial Summary Judgment is **DENIED**.

## I.       PROCEDURAL AND FACTUAL BACKGROUND

### A.       Par Purchases Company Founded by Jenkins and Hinchen

In 2007, Peter Jenkins ("Jenkins") and Stuart Hinchen ("Hinchen") co-founded JHP Pharmaceuticals, LLC ("JHP") by purchasing an existing sterile pharmaceutical manufacturing facility in Rochester, Michigan. (ECF No. 477-1 ¶ 1; ECF No. 484-1 ¶ 1.) Jenkins was JHP's Chief Development Officer, while Hinchen was the President and CEO. (*Id.* ¶¶ 2–3.) In February 2014, Par Pharmaceutical, Inc. acquired JHP for $490 million and renamed the company Par Sterile Products, LLC. (*Id.* ¶ 4.) Jenkins and Hinchen, as co-founders and part owners of JHP, each made over $20 million from the acquisition. (*Id.* ¶ 5.) They both assumed new roles at Par. (*Id.* ¶ 6.)

### B.       Par and the Individual Defendants Execute Non-Disclosure Contracts

In June 2014, both Jenkins and Hinchen left Par and entered into a "Separation Agreement and Release." (*Id.* ¶¶ 7, 15.) As part of the agreement, Jenkins and Hinchen promised to not "use, communicate, disclose or disseminate any Confidential Information in any matter whatsoever." (*Id.* ¶¶ 8, 16.) The term "Confidential Information" was defined as: "[A]ll information, data, agreements, documents, reports, 'know-how', interpretations, plans, studies, forecasts, projections and records (whether in written form, electronically stored or otherwise) containing or otherwise reflecting information concerning" Par. (*Id.* ¶¶ 9, 27.) Additionally, Jenkins and Hinchen agreed to return all Par property, which included "documents, records, and other data," to Par. (*Id.* ¶¶ 11, 19.)

Similar to Jenkins and Hinchen, the other Individual Defendants each held senior positions at Par and made similar promises regarding Par's confidential information. In March 2015, Mike

2

Rutkowski ("Rutkowski"), Donna Kohut ("Kohut"), David Short ("Short"), Stephen Rhoades ("Rhoades"), Travis McGrady ("McGrady"), and Mike Hartley ("Hartley") each executed an identical Trade Secret, Non-Disclosure and Restrictive Covenant Agreement" (collectively, the "NDAs") with Par in which they promised to not "divulge, disclose, or communicate to anyone or any entity . . . any of Par's Proprietary Information." (*Id.* ¶¶ 26–27, 37–38, 46–47, 65–66, 74–75; ECF No. 483 ¶¶ 56-57.) The term "Proprietary Information" was defined as: "Par's confidential and trade secret information, including formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identity of customers including customer lists." (*Id.* ¶¶ 28, 39, 48, 67, 76; ECF No. 483 ¶ 58.) These six Individual Defendants also promised to return all Par property, which included "all notebooks, documents, records and other data or information in whatever form and on whatever media," to Par upon departure. (*Id.* ¶¶ 29, 38, 47, 66, 75; ECF No. 483 ¶ 57.)

### C.     The Individual Defendants Quit Par

Jenkins and Hinchen incorporated QuVa in Delaware in July 2015, where Jenkins became QuVa's Chief Development Officer and Hinchen became QuVa's Chief Executive Officer. (*Id.* ¶¶ 80-82.) Rutkowski, who was Par's Senior Vice President and General Manager of the Rochester facility, left Par in April 2017 to become QuVa's Vice President and General Manager of the Bloomsbury, New Jersey facility. (*Id.* ¶¶ 23, 83.) Kohut, who was a Par consultant for facilities, left Par in 2015 to become QuVa's Vice President of Operations. (*Id.* ¶¶ 33, 84.) Short, who was Par's Senior Director of Quality Systems, left Par in October 2015 to become QuVa's Vice President of Quality. (*Id.* ¶¶ 43, 85.) Rhoades, who was Par's Manager of Sterility Assurance, left Par in October 2015 to become QuVa's Director of Quality/Sterility Assurance. (*Id.* ¶¶ 53, 86;

ECF No. 483 ¶¶ 53, 86.) McGrady, who was Par's Manager of Deviations & Lot Distributions, left Par in February 2016 to become QuVa's Director of Quality Systems. (*Id.* ¶¶ 62, 87.) Finally, Hartley, who was Par's Director of Technical Services, left Par in March 2016 to become QuVa's Director of Facility Engineering. (*Id.* ¶¶ 71, 88.)

### D.    The Individual Defendants Taking of Documents

Par outlines several instances where the Individual Defendants took documents from Par that Par considered confidential. These allegations include:

- Jenkins took a confidential Par spreadsheet about approval authority to QuVa and then circulated the Par document via email on QuVa's computer network. (ECF No. 477-1 ¶ 90.)

- Hinchen took three confidential Par documents—one about the company's strategy, one about a laboratory construction, and one about operations—to QuVa and then circulated the Par documents via email on QuVa's computer network. (*Id.* ¶¶ 91–93.)

- Rutkowski, while still employed as Par's Senior Vice President and General Manager, emailed Kohut (QuVa's then-COO) six confidential Par documents—one with backorder data, one with operations data, three with quality/compliance measures, and one with operational information—and similarly disclosed Par confidential information to Kohut in the body of two emails. (*Id.* ¶¶ 94–99.) Rutkowski also downloaded ten confidential Par documents from his Par computer to hard drives he then took to QuVa. (*Id.* ¶¶ 100–10.)

- Kohut circulated two confidential Par documents with operational information via email on QuVa's computer network. (*Id.* ¶¶ 111–12.) Kohut also downloaded 115 confidential Par documents to multiple hard drives and then took the hard drives to QuVa. (*Id.* ¶ 113.)

Documents that Kohut stole include at least 6 confidential Par documents related to Par's vasopressin products. (*Id.* ¶ 114.)

- Short, while employed by Par but also working with Jenkins and Hinchen to create QuVa, created a PowerPoint presentation outlining the structure for a sterility assurance department, and then sent the presentation from his personal email account to Jenkins. (*Id.* ¶ 115.)

- Rhoades took two confidential Par documents—one was Par's confidential Aseptic Process Simulation ("APS") Master Plan processes and the other was about gowning—to QuVa, and then circulated the Par documents via email on QuVa's computer network. (*Id.* ¶¶ 119–20.) Rhoades also downloaded 382 confidential Par documents to a hard drive and then took the hard drive to QuVa. (*Id.* ¶ 121–27.) Documents that Rhoades stole include at least 32 confidential Par documents related to Par's vasopressin products, including the "Master Batch Record" for one of Par's vasopressin products, which was labeled: "Confidential and Proprietary . . . Not to be used without written permission of JHP Pharmaceuticals, LLC." (*Id.* ¶ 129.)

- McGrady took a confidential Par document about operational effectiveness to QuVa and then circulated the document via email on QuVa's computer network. (*Id.* ¶ 116.)

- Hartley took two confidential Par documents—one about a product quote and the other about pesticides—to QuVa and uploaded them to the QuVa computer network. (*Id.* ¶¶ 117–18.)

For the purposes of this Opinion, the Court notes that the Individual Defendants do not

dispute that they took or disseminated any of the above documents, but they do object to the information contained in those documents and the characterization of that information. (*See* ECF No. 484-1 ¶¶ 90-118, ECF No. 483 ¶¶ 119-20, 129.)

### E.    Procedural History

On January 12, 2018, Par filed the First Amended Complaint against Defendants. (ECF No. 114.) Counts V through XIII of the First Amended Complaint asserted breach of contract claims against the Individual Defendants. (*Id.* ¶¶ 107-205.)

On January 16, 2018, Defendants filed a Motion to Strike Undisclosed Trade Secrets (ECF No. 115), which the Court denied on February 8, 2018 (ECF Nos. 136 & 137.) On March 1, 2018, the Court granted in part Plaintiffs' Motion for Preliminary Injunction (ECF No. 68), and ordered that Defendants were "enjoined from marketing and releasing their planned vasopressin product."

On May 25, 2018, Defendants filed a Notice of Appeal, notifying the Court that they were appealing to the United States Court of Appeals for the Third Circuit the Court's March 1, 2018 Order grating in part Par's Motion for Preliminary Injunction. (ECF No. 233.)

On April 25, 2019, the Third Circuit issued a mandate affirming this Court's March 1, 2018 Order and remanding to the Court to "conduct further fact-finding on the proper length of the injunction and, if need be, to consider the other alleged trade secrets." (ECF No. 397-1 at 13.) In response, Defendants asked this Court to lift the injunction. (ECF No. 405.)

On January 29, 2020, this Court, on remand, ordered that the preliminary injunction be lifted while the bond remain in place. (ECF Nos. 474 & 475.)

On March 11, 2020, Par filed a Motion for Partial Summary Judgment on Counts V through XIII of the First Amended Complaint against the Individual Defendants. (ECF No. 476.) On May 18, 2020, the Individual Defendants filed an Opposition to Par's Motion. (ECF Nos. 483 & 484.)

On June 19, 2020, Par filed a Reply to the Individual Defendants' Opposition. (ECF Nos. 487 & 488.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden

of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III.   DECISION

#### A.   Breach of Contract Claims

Plaintiffs move for partial summary judgment against the Individual Defendants on Counts V through XII of the First Amended Complaint (the "Breach of Contract Claims"). (ECF No. 477 at 12.) To prove a breach of contract claim, a plaintiff must show that "(1) a valid agreement existed, (2) defendant materially breached the terms of the agreement, and (3) plaintiff suffered damages as a result of the breach." *Allia v. Target Corp.*, No. 07-4130, 2010 WL 1050042, at *13 (D.N.J. Mar. 17, 2010).

Plaintiffs first contend they have valid contracts with each Individual Defendant. (ECF No. 477 at 14.) These contracts required the Individual Defendants to not "divulge, disclose, or communicate to anyone or any entity" any of Par's "Proprietary Information" or "Confidential Information."[2] (*Id.* at 6-7.) Defendants argue contracts are invalid because the confidentiality provisions are overbroad and unenforceable. (ECF No. 484 at 11.)[3]

---

[2] The Separation Agreement defines "Confidential Information" as "all information, data, agreements, documents, reports, 'know-how', interpretations, plans, studies, forecasts, projections and records (whether in written form, electronically stored or otherwise) containing or otherwise reflecting information concerning" Par. (*See, e.g.* ECF No. 477-1 ¶ 8.) The NDA defines "Proprietary Information" as "confidential and secret information, including without limitation formulas, formulations, processes, methods of manufacture, research and development including protocols and/or records, results, data, product pricing information, financial information, product pricing, marketing information, and the identity of customers including customer lists." (*See, e.g.* ECF No. 477-1 ¶ 28.)

[3] The contracts of Hinchen and Jenkins contain a New Jersey choice-of-law provision. (ECF No. 477-1 ¶¶ 12, 20.) The other Individual Defendants' contracts contain a New York choice-of-law provision. (*Id.* ¶¶ 30, 41, 51, 60, 69, 78.) Both Plaintiff and Defendant agree the pertinent law of the two states is substantially similar as to the enforcement of post-employment restrictive covenants. (*See* ECF No. 477 at 12, n.2; ECF No. 484 at 11, n.1.) For the purposes of this opinion, the Court will analyze the breach of contract claims against Hinchen and Jenkins under New Jersey law and the breach of contract claims against the other Individual Defendants under New York law.

To be enforceable, post-employment restrictive covenants must be "reasonable in view of all the circumstances of the particular case." *Diversant, LLC v. Carino*, No. 18-3155, 2018 U.S. Dist. LEXIS 165012, at *23 (D.N.J. Sept. 24, 2018) (quoting *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 56 (N.J. 1970)). Under New Jersey law, a restrictive covenant is enforceable only to the extent that it "(1) protects the legitimate interests of the employer, (2) imposes no undue hardship on the employee, and (3) is not injurious to the public." *Id.* (citing *Cmty. Hosp. Grp., Inc. v. More*, 869 A.2d 884, 897 (N.J. 2005). The parties here primarily disagree on whether the confidentiality provisions protect Par's "legitimate interests."

"Employers have a right to contractually protect their confidential information." *Nat'l Repographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 226 (D.N.J. May 13, 2009) (citing *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 892-93 (N.J. 1988); *Whitmyer Bros v. Doyle*, 274 A.2d 577, 581 (N.J. 1971)). However, the parties disagree on which standard the Court should apply to determine whether the documents at issue are "confidential" and therefore within the legitimate interests of the employer. Therefore, the Court will begin its analysis here.

### 1.    Claims Under New Jersey Law

Par contends the appropriate standard for determining confidentiality is laid out in *Lamorte Burns & Co. v. Walters*, which states that information is considered "legally protectable as confidential" where "[t]he specific information [was] provided to defendants by their employer, in the course of employment, and for the sole purpose of servicing plaintiff's customers." *Lamorte Burns & Co v. Walters*, 770 A.2d 1158, 1167 (N.J. 2001). Conversely, Defendants argue this Court should adopt the multi-prong test laid out in *Richards Mfg. Co. v. Thomas & Betts Corp.*, which laid out several factors to use in determining whether an employer had a legally protectible interest in certain information, including: "(1) the degree to which the information is generally known in

10

the industry; (2) the level of specificity and specialized nature of the information; (3) the employer/employee relationship and circumstances under which the employee was exposed to the information; and (4) whether or not the information is 'current.'" *Richards Mfg. Co. v. Thomas & Betts Corp.*, No. 01-4677, 2005 U.S. Dist. LEXIS 22479, at *17-18 ("*Richards Mfg. I*"). In response, Par states that this opinion was vacated by the Third Circuit in *Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754 (3d Cir. 2009) ("*Richards Mfg. II*"). The Third Circuit, Par argues, states that the determination of confidentiality should solely be governed by the *Lamorte Burns* rule. (ECF No. 487 at 6.)

Par mischaracterizes the Third Circuit's holding. While the Third Circuit did vacate *Richards Mfg. I*, it did so on the basis that the *Richards Mfg. I* court inappropriately utilized case law dealing with restrictive covenants—where there was no evidence that the employee had "any forward-looking contractual obligations." *Richards Mfg.*, 342 F. App'x at 759. Additionally, while the Third Circuit did adopt the *Lamorte Burns* rule, it noted several factors courts should use to analyze the third prong of the framework; i.e. to determine whether the allegedly misappropriated information was for the sole purpose of furthering the employer's interests. *Id.* Those factors include: (1) whether the information was generally available to the public; (2) whether an employee would have been aware of the information if not for his employment with plaintiff; (3) whether the information gave employee a competitive advantage vis-à-vis employer; and (4) whether employee knew that employer had an interest in protecting the information to preserve its own competitive advantage. *Id.* Notably, "these four factors are not to be treated as essential elements of a cause of action for the misappropriation of confidential information." Finally, the Third Circuit emphasized that, in considering these factors, a Court "is asked only to determine

whether there are genuine issues of material fact in dispute as to whether the information at issue is confidential and proprietary. *Id.*

Par contends they are entitled to summary judgment because the Individual Defendants do not dispute they received from Par the allegedly misappropriated documents during the course of their employment for the "purposes of fulfilling those roles." (ECF No. 487 at 6-8.) The Individual Defendants, however, contend there is a genuine dispute of material fact as to the confidentiality of the documents each received. (ECF No. 484 at 20.) The Court will address these arguments as they pertain to each Individual Defendant below.

### a.    Hinchen

First, Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Hinchen because Hinchen breached his non-disclosure obligations. (ECF No. 477 at 16.) Specifically, Par argues they have satisfied the *Lamorte Burns* rule with respect to Hinchen because he admits he obtained a document from Par titled "Rochester Dashboard December 2013_Manufacturing" ("December 2013 Dashboard") which contained "corporate information." (ECF No. 487 at 7 (citing ECF No. 477-1 ¶ 91).)

However, Par merely states the document was given to Hinchen "for the purposes of fulfilling his job." (*Id.*) This conclusory statement falls below the standard taught by *Richards Mfg. II*, where a plaintiff must show the allegedly confidential information was for the "sole purpose of furthering of the employer's interests." While the Third Circuit has stated the four factors for determining this are not to be treated as essential elements, Par does not put forth evidence to satisfy any of the factors. Indeed, while Par indicates the type of information included in the documents Hinchen received[4], it does not state whether that information was generally available

---

[4] (*See* ECF No. 477-1 ¶ 91.)

to the public, whether Hinchen would have been aware of the information but for his employment, whether the information gave Hinchen a competitive advantage, or whether Hinchen knew Par had an interest in protecting the information. In fact, Hinchen objects to Par's characterization of the December 2013 Dashboard, stating that the document included "performance metrics that were publicly posted on site noticeboards which were visible to staff and visitors." (ECF No. 484-3 ¶ 2.) Additionally, Hinchen states he forwarded the December 2013 Dashboard to Donna Kohut in 2015 to "use as a format for her monthly reports" because he considered any information contained in the document to be "non-confidential and/or obsolete." (*Id.*)

Overall, because Par failed to produce any evidence to satisfy the third prong of the *Lamorte Burns* framework, the Court cannot grant summary judgment. *See Celotex*, 477 U.S. at 322-23 ("There can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

Additionally, insofar as Par may satisfy the third prong of the *Lamorte Burns* framework, Defendants have produced evidence to create a genuine dispute of material fact as to whether the document was issued for the "sole purpose" of furthering Par's interests. (*See* ECF No. 484-3 § 2.) Specifically, Hinchen objects to Par's characterization of the December 2013 Dashboard, stating that the document included "performance metrics that were publicly posted on site noticeboards which were visible to staff and visitors." (ECF No. 484-3 ¶ 2.) Additionally, Hinchen states he forwarded the December 2013 Dashboard to Donna Kohut in 2015 to "use as a format for her monthly reports" because he considered any information contained in the document to be "non-confidential and/or obsolete."

As such, even if this Court were to determine Par initially put forth evidence to satisfy the *Lamorte Burns* framework, Defendants have produced evidence to create a genuine dispute of material fact as to the third prong of the framework. Accordingly, Par's Motion for Summary Judgment as it pertains to Hinchen is **DENIED.**

### b.        Jenkins

Next, Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Jenkins because Jenkins also breached his non-disclosure obligations. (ECF No. 477 at 14.) Specifically, Par argues they have satisfied the *Lamorte Burns* rule with respect to Jenkins because he admits he obtained and disclosed "a confidential Par Excel spreadsheet that contained information about Par's approval authorities." (*Id.*)

Par states the document was confidential "as a matter of law" because Jenkins obtained the document "from Par during the course of employment with Par." (*Id.*) Once again, this statement ignores the standard set forth in *Richards Mfg. II*, where a plaintiff must show the allegedly confidential information was for the "sole purpose of furthering the employer's interests." Indeed, Par does not cite to evidence to satisfy any of the *Richards Mfg. II* factors. Additionally, Jenkins objects to Par's characterization of the Excel spreadsheet, stating that the document is an "authorities matrix" which is used to organize information "concerning the delegated authority among management of a company. (ECF No. 484-3 at 44.) Further, Jenkins states he sent the Excel sheet to Don Alvarez "for use as a template" because he "did not consider the document to contain any confidential or proprietary information." (*Id.*)

Overall, because Par failed to produce any evidence to satisfy the third prong of the *Lamorte Burns* framework, the Court cannot grant summary judgment. *See Celotex*, 477 U.S. at 322-23 ("There can be 'no genuine issue as to any material fact,' since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

Additionally, insofar as Par may satisfy the third prong of the *Lamorte Burns* framework, Defendants have produced evidence to create a genuine dispute of material fact as to whether the document was issued for the "sole purpose" of furthering Par's interests. (*See* ECF No. 484-3 § 2.)

As such, even if this Court were to determine Par initially put forth evidence to satisfy the *Lamorte Burns* framework, Defendants have produced evidence to create a genuine dispute of material fact as to the third prong of the framework. Accordingly, Par's Motion for Summary Judgment as it pertains to Jenkins is **DENIED.**

## 2.      Claims Under New York Law

It is undisputed that New York law governs the contracts of the remaining Individual Defendants. (*See* ECF No. 477 at 12, n.2; ECF No. 484 at 11, n.1.) While the standard for forming and enforcing restrictive covenants is largely the same under New York and New Jersey law, there are key differences. Importantly, the *Lamorte Burns* standard is unique to New Jersey law, and may only be applied to the breach of contract claims against Hinchen and Jenkins. As such, to the extent Par uses the *Lamorte Burns* standard to argue they are entitled to summary judgment on the breach of contract claims against the remaining Individual Defendants, such argument is inapplicable. Rather than using the *Lamorte Burns* standard, New York courts require a plaintiff to show there is "no genuine issue of material fact as to whether [a defendant] retained confidential information" after leaving their position in violation of a confidentiality provision. *Nostrum Pharms., LLC v. Dixit*, No. 13-8718, 2016 U.S. Dist. LEXIS 133844, at *30 (S.D.N.Y. Sept. 23, 2016). Further, "merely identifying a category of information as 'confidential' does not, in and of itself, bestow upon it the status of a trade secret or confidential customer information." *Addison*

*Hospitality Grp. LLC v. Kaciupski*, 2018 WL 2766891, at *14 (N.Y. Sup. Ct. June 6, 2018).

Therefore, the Court must determine if Par has put forth sufficient evidence to demonstrate there is no genuine dispute of material fact that the information the remaining Individual Defendants procured was confidential.

### a.    Rutkowski

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Rutkowski because Rutkowski breached his non-disclosure obligations "eighteen times." (ECF No. 477 at 17.)

The first two alleged breaches occurred on June 28, 2016, when Rutkowski disclosed to a QuVa employee a Par Excel spreadsheet that contained information about Par's backorder data. (*Id.*) The third alleged breach occurred on October 25, 2016, when Rutkowski disclosed to a QuVa employee information about Par's performance, yield information, onsite challenges, absorption issues, and unit count at the Rochester facility. (*Id.*) Next, the fourth breach occurred on March 13, 2017, when Rutkowski disclosed to a QuVa employee a Par PowerPoint presentation that contained information about Par's operations. (*Id.*) The fifth, sixth, and seventh alleged breaches occurred on March 15, 2017, when Rutkowski disclosed to a QuVa employee (Kohut) three Par PowerPoint Presentations that contained information about Par's quality measures, compliance, operations, and personnel. (*Id.*) The eighth alleged breach occurred on December 17, 2015, when Rutkowski disclosed to a QuVa employee a Word document that contained information about Par's operations. (*Id.* at 18.) Finally, the ninth through eighteenth breaches occurred when Rutkowski downloaded Par documents to his personal hard drives as he was leaving Par, and then took the hard drives with him to QuVa. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against Rutkowski because: (1) the documents Rutkowski misappropriated fell under the Employee Handbook's definition of "Confidential Information," and (2) because the documents were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 18.)

First, as explained above, the *Lamorte Burns* framework is inapplicable here because Rutkowski's restrictive covenant contained a New York choice-of-law provision. Additionally, simply meeting the definition of "Confidential Information" under the Employee Handbook does not mean that the information Rutkowski took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

Additionally, while Rutkowski does not dispute that he sent the alleged documents, he objects to Par's characterization of the documents. With regards to the first two alleged breaches, Rutkowski claims the backorder reports are for a single day, and "were distributed to numerous individuals at Par without any indication that they contained confidential information." (ECF No. 484-1 ¶ 94.) Additionally, with regards to alleged breaches three through seven, Rutkowski contends that none of the information contained in those e-mails or PowerPoints was marked confidential, and he did not consider any of the information to be confidential. (*See id.* ¶¶ 95-97, ECF No. 484-3 at 7.) Further, with regards to alleged breach eight, Rutkowski claims the organizational announcement was sent to all Rochester employees with the instruction that they should "share" it and does not contain any confidential information. (*Id.* ¶ 99.) Moreover, with regards to alleged breaches nine through eighteen, Rutkowski claims he inadvertently downloaded the documents in the presence of a Par employee and did not access or use the documents at QuVa. (*Id.* ¶ 100.) Ultimately, Rutkowski states Par did not ask him to "return or destroy any of these documents at any time." (ECF No. 484-3 at 7.) Finally, he states they any of the information he

received or disseminated would have had "any value to a competitor at the time it was drafted or when [he] left Par in April 2017. (*Id.* at 8.)

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information Rutkowski took was in fact confidential. As such, the Court must deny summary judgment on the breach of contract claim against Rutkowski. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to Rutkowski is **DENIED.**

### b.    Kohut

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Kohut because Rutkowski breached her non-disclosure obligations "117 times." (ECF No. 477 at 19.)

The first alleged breach occurred on December 2, 2015, when Kohut disclosed to a QuVa employee a Par spreadsheet that contained information about Par's operations. (*Id.*) The second alleged breach occurred on March 13, 2017, when Kohut disclosed to a group of QuVa employees a Par PowerPoint presentation that contained information about Par's operations. (*Id.*) Finally, third through 117th breaches occurred when Kohut downloaded Par documents to her personal hard drives and then took the hard drives with her from Par to QuVa. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against Rutkowski because: (1) the documents Kohut misappropriated fell under the NDA's definition of "Proprietary Information," and (2) because the documents were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 19-20.)

18

Again, as stated above, the *Lamorte Burns* framework is inapplicable here. Additionally, simply meeting the definition of "Proprietary Information" under the NDA does not mean that the information Kohut took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

Further, while Kohut does not deny sending or downloading the above documents, she objects to Par's characterization of the documents. With regards to the first alleged breach, Kohut states the Excel spreadsheet was not marked as confidential, was not treated as confidential at JHP, and does not contain any information confidential to Par. (ECF No. 484-1 ¶ 111.) With regards to the second alleged breach, Kohut again claims the PowerPoint was not marked as being confidential, nor did it contain any information confidential to Par. (*Id.* ¶ 112.) Finally, with regards to alleged breaches three through one-hundred seventeen, Kohut states she did not take any of the contained documents to QuVa, nor were they ever used or disclosed. (*Id.* ¶ 113.) Additionally, Kohut contends that 103 of the documents were JHP documents related to consulting work she started in 2007. (*See* ECF No. 484-3 at 34.) Finally, Kohut contends that while four of the documents are marked as confidential, none of the 115 documents contain any confidential information to Par. (*Id.*)

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information Kohut took was in fact confidential. As such, the Court cannot grant summary judgment on the breach of contract claim against Kohut. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to Kohut is **DENIED.**

### c.     Short

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Short because Short breached his non-disclosure obligations "by creating and then disclosing to Jenkins a PowerPoint presentation about the organization and staffing of a quality operations department." (ECF No. 477 at 20.)

The first and only alleged breach occurred on January 3, 2015, where Short created and then emailed to Jenkins a PowerPoint presentation describing the organization and staffing of a quality operations department. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against Short because: (1) the PowerPoint Short misappropriated fell under the NDA's definition of "Proprietary Information," and (2) because the document were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 20.)

Again, as stated above, the *Lamorte Burns* framework is inapplicable here. Additionally, simply meeting the definition of "Proprietary Information" under the NDA does not mean that the information Short took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

Further, while Short does not deny creating or sending the PowerPoint, he objects to Par's characterization of the it. Specifically, Short contends the information contained in the PowerPoint presentation does not contain any information confidential to Par. (ECF No. 484-1 ¶ 115.) Rather, Short claims the information is generic in nature and was derived from Mr. Short's personal experience. (*Id.*) Finally, Short contends he made the slides "in about one hour over a weekend, and was not compensated for his time." (*Id.*)

20

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information contained in Short's PowerPoint was in fact confidential. As such, the Court cannot grant summary judgment on the breach of contract claim against Short. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to Short is **DENIED.**

### d.     McGrady

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to McGrady because McGrady breached his non-disclosure obligations by disclosing to a QuVa employee "a confidential Par Word document that contained information about Par's operational effectiveness program." (ECF No. 477 at 22.)

The first and only alleged breach occurred on December 14, 2016, when McGrady disclosed to a QuVa employee a Word document that contained information about Par's operational effectiveness program. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against McGrady because: (1) the Word document McGrady disclosed fell under the Employee Handbook's definition of "Confidential Information," and (2) because the document were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 22.)

Again, as stated above, the *Lamorte Burns* framework is inapplicable here. Additionally, simply meeting the definition of "Proprietary Information" under the NDA does not mean that the information Short took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

21

Further, while McGrady does not deny he sent the Word document, he objects to Par's characterization of the document. Specifically, McGrady contends the Word document served as a "project plan template" that Par used to memorialize project plans relating to its Operational Effectiveness Program. (ECF No. 484-3 at 21.) Therefore, McGrady claims, the document only "contained generic headings and information prompts." (*Id.*) As such, McGrady stated he did not believe that the document revealed "any Par secret or confidential information and such information certainly would not have any value to a competitor at the time the document was created." (*Id.*)

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information contained in McGrady's Word document was in fact confidential. As such, the Court must deny summary judgment on the breach of contract claim against McGrady. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to McGrady is **DENIED.**

### e.      Hartley

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Hartley because Hartley breached his non-disclosure obligations twice. (*See* ECF No. 477 at 23.)

The first alleged breach occurred on March 18, 2016, when Hartley used his personal email to send to the QuVa computer network a Par PDF that contained information about a product quote. (*Id.*) Additionally, the second alleged breach consists of Hartley's possession of a Par PDF about pesticides, which was produced in this litigation as his custodial document. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against Hartley because: (1) the PowerPoint Short misappropriated fell under the NDA's definition of "Proprietary Information," and (2) because the document were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 23.)

Again, as stated above, the *Lamorte Burns* framework is inapplicable here. Additionally, simply meeting the definition of "Proprietary Information" under the NDA does not mean that the information Short took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

Further, while Hartley does not dispute that he sent the PDF or possessed the document, he objects to Par's characterization of the documents. First, Hartley contends the PDF from the first alleged breach is "an email from a third party vendor containing a generic product quote." (ECF No. 484-1 ¶ 117.) Additionally, he states the PDF was not marked confidential and did not contain any information confidential to Par. (*Id.*) Additionally, regarding the second alleged breach, Hartley contends he was not even aware he had the document in his possession, and did not use it at QuVa. (*Id.* ¶ 118.) Further, the document contained information that is "dictated by Federal statute", and Hartley stated he "would expect all pharmaceutical companies to have similar" documents. (*Id.* at 28-29.) Even still, Hartley argues, the document does not contain any information confidential to Par. (*Id.*)

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information contained in Hartley's documents was in fact confidential. As such, the Court must deny summary judgment on the breach of contract claim against Hartley. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of

material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to Hartley is **DENIED.**

### f.    Rhoades

Par contends they are entitled to summary judgment on the breach of contract claims as they pertain to Rhoades because Rhodes breached his non-disclosure obligations "nearly 400 times." (ECF No. 477 at 21.)

The first alleged breach occurred on February 3, 2016, when Rhoades disclosed to an outside consultant a Par Word document that contained Par's APS Master Plan. (*Id.*) The second alleged breach occurred on January 5, 2016, when Rhoades disclosed to a QuVa employee a Par PowerPoint presentation that contained a Par training program. (*Id.*) Finally, the third through 384th alleged breaches occurred when Rhoades downloaded confidential Par documents to his personal hard drives when leaving Par and then took the hard drives to QuVa. (*Id.*)

Par argues they are entitled to summary judgment on their breach of contract against Rhoades because: (1) the documents Rhoades misappropriated fell under the Employee Handbook's definition of "Confidential Information," and (2) because the documents were confidential as a matter of law under the *Lamorte Burns* framework. (ECF No. 477 at 23.)

Again, as stated above, the *Lamorte Burns* framework is inapplicable here. Additionally, simply meeting the definition of "Proprietary Information" under the NDA does not mean that the information Short took was confidential as a matter of law. *See Addison Hospitality Grp. LLC*, 2018 WL 2766891, at *14.

Further, while Rhodes does not deny he disclosed or retained the above documents, he objects to Par's characterization of the documents. Specifically, with regards to the first alleged breach, Rhoades contends the APS Master Plan was created by a third-party consultant who copied

master plans from other companies. (ECF No. 483-9 at 40.) Further, with regards to the second alleged breach, Rhoades claims the information contained in the PowerPoint is "generic, publicly available information." (ECF No. 483 ¶ 120.) Finally, with regards to the remaining breaches, Rhoades argues that several of the documents Par claims are confidential were created by Rhoades prior to his employment with Par, and that he did not view the remaining documents as confidential. (*Id.* at 42.)

Overall, based on the evidence both Par and Defendants have produced, there exists a genuine dispute of material fact as to whether the information contained in Rhoades's documents was in fact confidential. As such, the Court must deny summary judgment on the breach of contract claim against Rhoades. *See Nostrum Pharm., LLC*, 2016 WL 5806781, at *9-10 (denying summary judgment where plaintiff did not satisfy the "burden of showing that there is no genuine issue of material fact as to whether [d]efendant retained [c]onfidential [i]nformation"). Accordingly, Par's Motion for Summary Judgment as it pertains to Rhoades is **DENIED.**

**IV.    CONCLUSION**

For the reasons set forth above, Par's Motion for Summary Judgment is **DENIED.** An appropriate order will follow.

Date: October 22, 2020                          */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**

25